

Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6797
+1 212 698 3500  Main
+1 212 698 3599  Fax
www.dechert.com

**ANDREW J. LEVANDER**

Andrew.Levander@dechert.com
+1 212 698 3683  Direct
+1 212 698 0483  Fax

April 18, 2024

**VIA ELECTRONIC MAIL AND ECF FILING (PUBLIC VERSION)**

Honorable Paul A. Engelmayer
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *Jane Street Group LLC v. Millennium Management LLC*, 24 C 2783 (PAE)

Dear Judge Engelmayer:

Pursuant to the Court's April 17, 2024, Order to Show Cause, Defendant Millennium Management LLC ("Millennium") respectfully submits this letter-brief as well as the Declaration of Michael Asmar ("Asmar Decl.") in response to Plaintiff Jane Street Group LLC's ("Jane Street") application for a temporary restraining order ("TRO"), preliminary injunction and expedited discovery (the "Motion").

Two Jane Street traders elected to exercise their right to change employers.  They brought their substantial skill to Millennium, and like many entrepreneurs before them have started to build a successful business.  Jealous of that success, Jane Street has filed a baseless lawsuit to try to threaten them and Millennium into staying on the sidelines while Jane Street continues to reap billions in profits.  Ultimately, Millennium will show that this suit, and the pending motion, are not only without merit but anticompetitive.  For now, the issue before the Court is limited to determining whether to grant relief before the Defendants can even been heard.  The motion is utterly unwarranted and untimely and should be denied on numerous grounds.

The Motion fails all of the requisite requirements for the issuance of a temporary restraining order. Wholly apart from its lack of merit, it is evident that there is no emergency since Jane Street has been aware of the salient facts for many weeks.  Jane Street points to no cognizable irreparable harm that would occur during the short time between the hearing and the date on which a preliminary injunction could be heard.  And the Motion elides the purpose of a TRO, which is to maintain the status quo pending a fair opportunity to litigate, not to render a preemptory judgment on the merits.  Such relief is particularly fraught when an employer seeks to curtail the employment opportunities of individuals, here, Mr. Schadewald and Mr. Spottiswood.  This is simply not the sort of case in which a temporary restraining order is appropriate.  But if the Court were to grant one, a substantial bond would be



required under Fed. R. Civ. P. 65(c) to secure the rights of Millennium, a mandatory legal obligation that Jane Street completely ignores.

Given these deficiencies, the Court need not delve deeply into the trade secret merits, but even a cursory review of Jane Street's submission shows that this case is wholly unsupported. Defendants adamantly deny any misuse of anything approaching a trade secret of Jane Street. Indeed, Jane Street's submissions fail to answer the fundamental question: what is the purported trade secret that is the basis of Jane Street's claims?  The first order of business in a trade secret case is for the plaintiff to engage in an identification process, itemizing the alleged trade secrets.[1] Here, the identification of the relevant trade secrets is little more than handwaving and conclusory obfuscation. The knowledge that options trading in India is profitable is hardly a secret and has been widely reported in the industry and financial press. The tactic of capitalizing the words "Trading Strategy" over and over in a brief does not convert that phrase into something protectible under federal law. If there is a confidential strategy at issue, Jane Street has not said what it is. That is fatal to the trade secret claim and certainly to the extant motion.

The proper course here is to schedule a prompt preliminary injunction hearing, so that the parties can present their evidence. Millennium agrees that a modicum of discovery is necessary before the hearing, but there is no reason why the parties cannot get that done and present the issue in an orderly fashion to the Court within the next two months. The only question at issue now is whether in the absence of any identification, let alone proof, of a trade secret theft, the Court should curtail competition and grant Jane Street a victory before trial. The Court should reject that baseless and belated request and set the case down for a preliminary injunction hearing.

I.     **Jane Street Is not Entitled to a Temporary Restraining Order**

A temporary restraining order "is an extraordinary remedy that will not be granted lightly." *Jackson v. Johnson*, 962 F. Supp. 391, 392 (S.D.N.Y. 1997). The standard for an entry of a TRO is essentially the same as for a preliminary injunction. *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016). The movant must show (1) irreparable harm in the absence of an injunction pending resolution of the action, (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party, and (3) that injunctive

---

[1] The Federal Judicial Center publishes the Trade Secret Case Management and Judicial Guide (2023), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4360102. Chapter 4 of the Guide strongly recommends a formal "identification" process to delineate the trade secrets early in a case. This is done by requiring the plaintiff to provide a numbered list of trade secrets prior to the start of discovery and permitting amendment upon cause. The parties and the Court would benefit immensely from following that procedure here.



relief is in the public interest. *See N. Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 883 F.3d 32, 37 (2d Cir. 2018). Jane Street falls woefully short of establishing any of these elements.

    A.    <u>**Jane Street's Delayed Filing Seeks to Upend the Status Quo**</u>

It is a basic axiom of equity, that equity will not aid those who sleep on their rights. Here, Mr. Schadewald told Jane Street that he planned to trade in the Indian options market before he even left the company in early February. Declaration of Douglas Schadewald ("Schadewald Decl.") ¶¶ 65-69. Both Schadewald and Spottiswood began working for Millennium in February 2024. Schadewald Decl. ¶ 70; Asmar Decl. ¶ 14. They have been trading actively since then, and Jane Street, which no doubt watches the trading activity like a hawk, has been well aware of that fact for many weeks. Tellingly, Jane Street alleges that a third-party broker temporarily stopped processing Jane Street orders in the Indian options market on March 6, 2024 (and again on March 28, 2024), blaming that on the Defendants. Mot. at 7. Jane Street provides no explanation why it waited over two months to bring this Motion. The delay is fatal. Even a three-week delay between the onset of the alleged harm and the filing of a TRO constitutes a "lack of immediacy." *See Hopkins Hawley LLC v. Cuomo*, No. 20-CV-10932 (PAC), 2021 WL 8200607, at *1 (S.D.N.Y. Jan. 8, 2021).

Moreover, instead of seeking to maintain the status quo, Jane Street seeks to upend it. But the purpose of a TRO is "to preserve an ***existing situation*** in *statu[s] quo*" until the Court can hold a preliminary injunction hearing. *See Torres v. MMS Grp., LLC*, No. 22-CV-6142 (DEH), 2023 WL 8437739, at *1 (S.D.N.Y. Nov. 14, 2023) (citing *Pan Am. World Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL-CIO*, 306 F.2d 840, 842 (2d Cir. 1962) (emphasis added). A TRO is not appropriate where a plaintiff seeks to disrupt the status quo in order to remedy alleged existing and ongoing harms. *See, e.g.*, *Goldstein v. Hochul*, No. 22-CV-8300 (VSB), 2022 WL 20305832, at *2 (S.D.N.Y. Oct. 3, 2022). The status quo is market competition with Schadewald and Spottiswood engaged in active trading. Schadewald Decl. ¶¶ 70-74; Asmar Decl. ¶¶ 18-20. A TRO would reverse the status quo. As in *Goldstein*, where plaintiff's TRO was denied in part because it would have "alter[ed] the status quo" that had been in place for a month, the TRO should be denied here. *Goldstein*, 2022 WL 20305832, at *2.

    B.    <u>**Jane Street Cannot Establish Likelihood of Success on the Merits**</u>

To establish the right to a temporary restraining order, Jane Street must show that it is likely to succeed on the merits of its Defense of Trade Secrets Act ("DTSA") and misappropriation claims. To assess a DTSA claim, courts in the Second Circuit often look to New York trade secret law, since the elements of misappropriation and for determining whether something is a trade secret are "fundamentally the



Page 4

same" under New York law and the DTSA. *See Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020); *see also ExpertConnect, LLC v. Fowler*, No. 18-CV-4828 (LGS), 2019 WL 3004161, at *4 n.1 (S.D.N.Y. July 10, 2019).

Under New York law, "a plaintiff claiming misappropriation of a trade secret must prove: (1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means. *See Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 421 (S.D.N.Y. 2021) (citing *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990)).

New York considers the following factors in determining whether something is a trade secret: (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Compare Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407 (1993) (adopting Restatement of Torts § 757, comment *b*), *with* 18 U.S.C. § 1839(3) (information is a trade secret if (1) "the owner . . . has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information").

Of course, it is impossible to apply this standard unless the plaintiff makes a clear statement of what it claims is the trade secret. Here, Jane Street is intentionally coy about its claim. The lack of clarity is a feature, not a bug, of Jane Street's claim. Careful parsing of the trade secret allegations show that they are empty air.

    1.    <u>Trading Options in India Is not a Trade Secret</u>

According to Jane Street, it "dedicated years of time and capital to identify a latent economic opportunity in a specific market and to research, analyze, and develop a confidential and innovative trading strategy to profit from its discovery (the "Trading Strategy"). Compl. ¶ 2. But despite Jane Street's lofty talk of intellectual property, heuristics, and signals—jargon designed to obscure the truth—the Trading Strategy amounts to this: trading options in India.



Page 5

Of course, trading options in India is not a trade secret. The industry is well aware of this market—articles, academic studies, and even the Indian securities regulator have written specifically about the Indian options market and the arbitrage opportunities it presents. For example, numerous news articles have covered the Indian options market and the enormous amount of options trading done by investors in India. The Wall Street Journal reported in March of this year that "India accounted for a staggering 78% of equity options contracts traded worldwide in 2023, according to data from the Futures Industry Association (FIA), a global derivatives markets policy advocacy organization."[2] *See also* Schadewald Decl. ¶¶ 75-94; Asmar Decl. ¶¶ 6-9, 21-24. Such extraordinary—and highly publicized—facts are not lost on professional traders.

Moreover, contrary to Jane Street's assertion that it was the only one in on the secret, Millennium was working on entering the Indian options market for months before hiring Schadewald. Aware of the opportunities in India, Millennium set up legal, technical and regulatory structures to trade in India, all the way back in 2016. Asmar Decl. ¶ 5.

Indeed, despite Jane Street's careful redactions of every mention of "Indian options" in the Complaint, this market is so well-established that Jane Street itself is publicly soliciting applications for an "India Options Trader"[4] and an "India Fundamental Analyst."[5] Schadewald Decl. ¶ 51. None of Jane Street's other options trader job listings specify the specific country the trader will work. If there ever was a secret about the existence of this multi-trillion market, it is certainly out now.

> 2. Defendants' Remaining Allegations Are Too Vague to Support Trade Secret Liability

As Millennium previously informed Jane Street, and as the Complaint acknowledges, Schadewald and Spottiswood are manually trading options in the India market. That means that they are applying their own judgment and expertise to interpret market trends and employing basic options trading techniques

---

[2] *See* Megha Mandavia, *Eighty Percent of the World's Stock Options Aren't Traded Where You Think*, WALL ST. J. (Mar. 11, 2024), https://www.wsj.com/finance/stocks/eighty-percent-of-the-worlds-stock-options-arent-traded-where-you-think-35a46ddc;
*see also* Menaka Doshi, *Could A Hot India Options Trade Burn India's Stock Market?*, BLOOMBERG.COM (Jan. 4, 2024), https://www.bloomberg.com/news/newsletters/2024-01-04/could-a-hot-options-trade-burn-india-s-stock-market.

[4] "India Options Trader," JANE STREET, https://www.janestreet.com/join-jane-street/position/6604332002/.
[5] "India Fundamental Analyst," JANE STREET, https://www.janestreet.com/join-jane-street/position/6753758002/.



to place bets on where the market will go. Schadewald Decl. ¶¶ 27-28, 70-101. This is options trading 101: techniques that Schadewald used before he even joined Jane Street, and techniques that many other Millennium traders use when trading options. Asmar Decl. ¶¶ 22-23. There is nothing "secret" about these techniques—in fact, these techniques appear in books and articles and are employed all over the trading industry.[6]

Because Schadewald and Spottiswood are using "generic trading strategies that [are] public knowledge used widely within the industry," there can be no misappropriation. *See* Schadewald Decl. ¶¶ 27-28, 70-101; Asmar Decl. ¶¶ 22-23; *Titan Capital Group v. Raghavan*, 862 N.Y.S.2d 818 at *6 (Sup. Ct. 2008); *Ashland*, 82 N.Y.2d at 407–08; *Starlight Limousine Service*, 713 N.Y.S.3d at 196. Were Jane Street allowed to prevail here, it would amount to extending trade secret protection to a former employee's own experience and judgment—an area that courts have steadfastly refused to recognize as trade secrets. *See Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 309 (1976) (former employee's "knowledge of the intricacies of [former employer's] business operation" is not a protectable interest sufficient to justify enjoining the employee "from utilizing his knowledge and talents in this area"); *Matec SLR v. Gramercy Holdings I, LLC*, No. 20-CV-4136 (AJN), 2021 WL 1226956, at *4 (S.D.N.Y. Mar. 31, 2021) ("[T]rade secret protection does not extend to the general knowledge and experience of a departing employee."); *Production Resource Grp., LLC v. Oberman*, No. 03-CV-5366 (JGK), 2003 WL 22350939, at *13-14 (S.D.N.Y. Aug. 27, 2003) ("skillful variations of general processes known to the particular trade" are not trade secrets). Jane Street agreed with this premise when it had Schadewald sign the 2023 Schadewald Agreement. *See* Schadewald Decl. ¶ 34 (noting that agreement excluded "information, knowledge or data that constitutes general skills, knowledge and experience" from the definition of "Confidential Information").

Further, notably absent from the Complaint is any allegation that Schadewald and Spottiswood improperly retained Jane Street's confidential and proprietary information. TROs are typically granted where a former employee has emailed proprietary customer lists, uploaded confidential information to a private file-sharing service, or improperly retained confidential material. *See, e.g.*, *DeWitt Stern Grp., Inc. v. Eisenberg*, No. 13-CV-3060 (RWS), 2013 WL 2420835, at *3 (S.D.N.Y. June 4, 2013) (granting preliminary injunction; employee forwarded confidential information and trade secrets to personal email and direct competitor); *In re Cross Media Marketing Corp.*, No. 06-CV-4228 (MBM), 2006 WL 2337177, at *1, 5 (Aug. 11, 2006) (temporary injunction to halt online auction of misappropriated, protected customer list); *CrossBorder Solutions, Inc. v. Macias, Gini, & O'Connell, LLP*, No. 20-CV-4877 (NSR), 2022 WL 562934, at *1-2 (S.D.N.Y. Feb. 23, 2022) (theft of "a highly

---

[6] *See, e.g.*, Jeff Kohler, *Implied Volatility: Buy Low and Sell High*, INVESTOPEDIA (April 22, 2022), https://www.investopedia.com/articles/optioninvestor/08/implied-volatility.asp.


confidential customer list and related information"). Neither the Complaint nor the Motion even come close to making such allegations. Schadewald and Spottiswood are careful and decent people trying to earn a living. They went through detailed Millennium training and other procedures to ensure they knew their obligations, and there is no evidence of any impropriety whatsoever. Asmar Decl. ¶ 17.

### C. Jane Street Cannot Establish That It Will Suffer Irreparable Harm Without a TRO

Even if Jane Street were able to get past laches, its failure to allege trade secrets with particularity, and the total lack evidence in support of its claim, this motion would founder for another reason: Jane Street cannot establish that in the absence of a TRO, it will suffer irreparable harm. "Demonstrating irreparable harm is 'the single most important prerequisite for the issuance of' a temporary restraining order." *Bullion Shark LLC v. Flip A Coin LLC*, No. 223CV6529NJCARL, 2023 WL 8455669, at *3 (E.D.N.Y. Dec. 6, 2023) (quoting *Faively Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). "Irreparable harm requires an 'injury that is neither remote nor speculative, but actual and imminent.'" *Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 570 (S.D.N.Y. 2016) (quoting *N.Y. ex rel. Schneiderman v. Actavis PLC,* 787 F.3d 638, 660 (2d Cir. 2015)).

Jane Street's allegations of irreparable harm simply are not credible and are belied by its delay in seeking a TRO (*see supra* I.A.). Jane Street alleges that it is at risk of harm to its "reputation and goodwill" with "counterparties, investors, prime brokers, and employees" without specifying how the alleged misappropriation hurts its standing with those relationships. Mot. at 22. Jane Street further asserts that in the absence of a TRO, the sense of "trust and loyalty" at Jane Street will deteriorate. Mot. at 23. These are boilerplate allegations with no support.

The reality is that Jane Street is not afraid of the loss of its trade secrets—it is afraid of competition. Two of its valuable traders left Jane Street in February 2024 and joined Millennium. They began trading in the same market and have relied on well-known options trading strategies and techniques, as well as their own judgment. As a result of their efforts, they generated about $4 million in profit since they started trading in February until now, a small fraction of what Jane Street earned during the period. *See* Asmar Decl. ¶ 21; Schadewald Decl. ¶¶ 77, 112. Plainly, Millennium, Schadewald, and Spottiswood are not capturing Jane Street's claimed lost profits of ███████████. *See* Schadewald Decl. ¶ 112. In fact, publicly available trading data shows there were fewer trading days and less volatility in March than February. *See* Schadewald Decl. ¶ 113.

In any case, courts act cautiously when competition and the right to earn a living are at stake—interests that generally benefit the public. Even in instances where a court finds that a party has misappropriated


proprietary information, courts have declined to find irreparable harm where the only possible injury is that the moving party will face competition from a competing product. While Millennium categorically denies any such injury in this case, Jane Street, in the hypothetical case that it prevails on the merits, would be fully compensable by money damages. *See Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 120 (2d Cir. 2009) (vacating injunction in the absence of irreparable harm where there was no danger that alleged misappropriator would disseminate proprietary information); *Bullion Shark LLC*, 2023 WL 8455669, at *3.

### D. Balance of the Equities

The balance of the equities tips conclusively in Millennium's favor. Jane Street's lawsuit is nothing but an anti-competitive ploy to keep market share to itself and to mask its weakened performance in March 2024 due no doubt in part to the loss of two valuable traders. Courts have long rejected such transparent bids to forestall competition and this Court should as well. *Consol. Brands, Inc. v. Mondi*, 638 F. Supp. 152, 158 (E.D.N.Y. 1986) (denying temporary injunction where injunctive relief "would have a marked and obvious effect on the individual defendants' ability to earn a living" and "would also inhibit free trade and the potential for competition").

As the traders point out forcefully, a TRO here is particularly suspect because it would essentially function as a non-compete clause. Jane Street apparently had such an agreement with Schadewald earlier in his career, but intentionally let it lapse. Jane Street may regret that decision now, but it cannot use a court of equity to create such an agreement from whole cloth. New York takes a strong stance against unreasonable non-competition clauses and so a temporary restraint here is against public policy. *See, e.g.*, *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 389 (1999).

In contrast, if a TRO is entered, the harm to Millennium would be enormous. Trades that are on the books could not be easily unwound. The investment in the Indian options business related to the traders' activity would be wasted, and it would be impossible to determine what profits would have been lost pending the preliminary injunction hearing. Asmar Decl. ¶ 24. The balance of harms counsels strongly against the grant of a TRO.

### II. If the Court Is Inclined to Enter a TRO, It Should Order a Substantial Bond to Protect Millennium

In the unlikely event the Court determines that Jane Street is entitled to a TRO, Jane Street must be required to post a substantial bond adequate to compensate for the harm to Millennium's business in the event the TRO is found to have been granted improperly. The Federal Rules require that "no restraining order or preliminary injunction shall issue except upon the giving of security by the


applicant." Fed. R. Civ. P. 65(c). This Rule allows a TRO or preliminary injunction "to become effective only upon the applicant's posting of an amount that the district court determines adequate." *See Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004). District courts have "wide discretion" regarding the amount of the bond. *Id.* The purpose of a bond is to assure "the enjoined party that it may readily collect damages from the funds posted in the event that it was wrongfully enjoined . . . without regard to the possible insolvency of the assured," as well as to "provide[] the plaintiff with notice of the maximum extent of its potential liability." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011).

The non-movant may submit information and affidavits to demonstrate proof of the harm stemming from issuance of a wrongful injunction. *See Sanofi-Synthelabo v. Apotex Inc.*, 488 F. Supp. 2d 317, 349 (S.D.N.Y. 2006), *aff'd,* 470 F.3d 1368 (Fed. Cir. 2006). And a substantial bond is required where the non-movant will suffer "potential lost profits, lost market share and associated costs" in the event of wrongful restriction. *Id.* (requiring plaintiff to post $400 million bond).

Here, Millennium will suffer significant damages in the event a TRO is wrongfully issued,[7] including lost profits related to trading in the Indian options market and harms related to loss of goodwill from investors stemming from an improper TRO. Asmar Decl. ¶ 24. Depending on the length of time of the wrongful injunction, which could last for weeks or even months, the amount of damages to Millennium could be substantial. Given the run rate of the team's trading profits, the likely time to decision on the preliminary injunction, potential for losses in unwinding positions, and reputational harm, a bond of no less than $20M would be appropriate here. In the event the Court grants Jane Street's TRO and it is later found to be improper, Millennium will provide an accounting of the actual damages it suffered under the injunction. *See Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1056 (2d Cir. 1990). Millennium would also be entitled to an award of its attorneys' fees under the DTSA. 18 U.S.C. § 1836(b)(3)(D).

Respectfully submitted,

/s/ *Andrew J. Levander*

Andrew J. Levander

---

[7] The Court is not bound to follow contractual waivers of Rule 65(c)'s security requirement, *see Marsh USA Inc. v. Schuhriemen*, 183 F. Supp. 3d 529, 538 (S.D.N.Y. 2016), but in any event Millennium was not a party to any agreement with Jane Street waiving an injunction bond and is thus entitled to one under Fed. R. Civ. P. 65(c).