# Exhibit 1
# FILED UNDER SEAL



250 Vesey Street
New York, NY 10281

T +1 (646) 759 6000
F +1 (646) 759 6001
janestreet.com

July 18, 2018

Douglas L. Schadewald
101 W 24th Street, Apt 24A
New York, NY 10011

**Re: Notice, Non-Interference and Restricted Trading Agreement**

Dear Doug:

This letter is the notice, non-interference and restricted trading agreement ("Agreement") between you and Jane Street Group, LLC ("Jane Street" or the "Company"). This Agreement is a condition of your employment with Jane Street, as provided in your written employment offer dated July 11, 2018 (the "Employment Letter"). It is effective as of your employment start date.

As you know, Jane Street trades and makes markets in securities and other financial products throughout the world. In carrying out this business, Jane Street develops and employs proprietary trading strategies and techniques that use Company Confidential Information as defined in the Employee Agreement on Intellectual Property (the "IP Agreement"). These strategies and techniques are essential to the profitable operation of Jane Street and its affiliates (the "Jane Street Group") and provide the Jane Street Group a significant competitive advantage over other firms pursuing similar strategies. Jane Street acknowledges and recognizes your extensive prior experiences in trading ▇▇▇▇▇▇▇▇ and ▇▇▇▇▇▇▇▇

In consideration of your employment with Jane Street and your access to Company Confidential Information, in addition to the specific consideration provided below, you and Jane Street agree as follows.

1. **Garden Leave**

    1.1   **Duration; Election Period.** You or Jane Street may end your employment for any reason by giving the other at least two weeks' written notice of the termination of your employment. If Jane Street terminates your employment, Jane Street may elect, at its option, to extend this notice period from two weeks to 3 months, 6 months, or 12 months, by including such election of extension in the written notice of termination to you. If you terminate your employment with Jane Street, Jane Street may extend the notice period from two weeks to 3 months, 6 months, or 12 months by providing you written notice of this election within 10 days after Jane Street receives your written notice of termination (the "Election Period").

    1.2   **Responsibilities during Garden Leave.** During the notice period determined by Jane Street, you will be placed on paid leave ("Garden Leave"). While on Garden Leave, you will remain

employed by Jane Street but will not be expected or required to come in to the office or to perform services for Jane Street, other than such limited services as may be reasonably and specifically requested by the Company to aid in the transition of your employment duties or to fulfill your responsibilities under this Agreement or the IP Agreement.

1.3   **Pay During Garden Leave.** Your pay during Garden Leave will be at the annual rate of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and will be paid in semi-monthly installments in accordance with Jane Street's regular payroll practices. Your eligibility for employee benefits during Garden Leave will be determined in accordance with the general terms of Jane Street benefit plans. In the event you violate the restrictions of this Agreement, you will not be entitled to any further payment and agree to reimburse to Jane Street the payments that have already been made during the Garden Leave, without limiting in any way the availability of injunctive relief or other remedies.

1.4   **Restrictions During Garden Leave.** You agree that, while on Garden Leave, you will continue to owe a duty of loyalty to Jane Street and you will not directly or indirectly in any capacity (whether as employee, consultant, owner, principal, agent, partner or otherwise) engage or participate in, or provide services to, any Competing Business. For purposes of this agreement, "Competing Business" means any person or entity (whether operating independently or as part of a group of affiliated entities) engaged in a business related to the trading of securities or other financial products (including equities, bonds, options, futures, ETFs, currencies, and commodities) anywhere in the world, or the development of software, systems or techniques to support or enhance such trading. For the avoidance of doubt, while on Garden Leave, and provided that you do not violate the IP Agreement or sections 2 or 3 below, and that you do not directly or indirectly in any capacity engage or participate in, or provide services to, any Competing Business, you may

a) meet with potential new employers or investors to discuss any future employment or business opportunities and enter into agreements with regard thereto; and
b) manage your own personal business and investment opportunities, subject to your complying with all applicable provisions of Jane Street's personal trading and other compliance policies.

2.   **Non-interference**

2.1   **Non-Interference Restrictions.** During your employment (including Garden Leave) and thereafter for the duration of the Non-Interference Restricted Period, you agree that you will not directly or indirectly in any manner or capacity, (a) induce any "Jane Street Person" (as defined below) to end his or her employment with the Jane Street Group; (b) solicit for employment or in any other manner be involved in the solicitation of any Jane Street Person as an employee or consultant; or (c) become partners or co-owners with any Jane Street Person in any Competing Business (co-owners, for this purpose, would not include ownership of less than 5% of the shares of a publicly traded company). This section 2.1 shall not be violated by the mere act of general advertising or general solicitation not specifically targeted at Jane Street Persons.

2.2   **Jane Street Person.** A "Jane Street Person" is anyone employed within the Jane Street Group within 9 months before the date of the conduct prohibited by the non-interference restrictions set forth in section 2.1.

2.3   **Non-Interference Restricted Period.** The "Non-Interference Restricted Period" will be 2 years after the end of any Garden Leave.

3. **Restricted Trading Activity**

    3.1    **Trading Activity Restrictions.** During any Garden Leave and thereafter for the Trading Activity Restricted Period, you agree that you will not be involved directly or indirectly in any manner or capacity in strategies involving the trading of single stock equities or single stock equity options ("Covered Equities Trading"). For the avoidance of doubt, "Covered Equities Trading" does not include the trading of ▮▮▮▮ and ▮▮▮▮

    3.2    **Association with Business that engages in Covered Equities Trading.** If you are associated with a business that engages in Covered Equities Trading, you will not be considered to be involved in such process in violation of section 3.1 if

        a) you are not personally involved, directly or indirectly, in any strategies or methodologies related to Covered Equities Trading, or consulting or advising regarding such activity; and
        b) you do not directly or indirectly manage any person or business unit engaged in Covered Equities Trading.

If any time through the end of any Trading Activity Restricted Period you become associated with a business that is engaged in Covered Equities Trading, you agree promptly to notify Jane Street of the association and, at Jane Street's request, to provide Jane Street an affidavit attesting to facts sufficient for Jane Street to reasonably determine the applicability of this section.

    3.3    **Trading Activity Restricted Period; Election Period.** Jane Street will determine, at its option, whether to impose a Trading Activity Restricted Period to end 1 year after any Garden Leave by providing you written notice of this election (a) during the Election Period if you terminate employment or (b) in the notice of termination if Jane Street terminates your employment.

    3.4    **Payment for Trading Activity Restricted Period.** You will be paid ▮▮▮▮ the Trading Activity Restricted Period, as further consideration for the continuation of such restrictions following your Garden Leave. Payments owed under this section will be made, less applicable taxes, no less frequently than on a quarterly basis during the Trading Activity Restricted Period. In the event you violate the restrictions of this Agreement, you will not be entitled to any further payment and agree to reimburse to Jane Street the payments that have already been made, without limiting in any way the availability of injunctive relief or other remedies.

4.    **Acknowledgements.** You understand that the provisions of this Agreement may limit your ability to earn a livelihood in a business similar to the Jane Street Group's, but nevertheless believe that you will receive remuneration and other benefits from your employment with Jane Street, including training and access to Company Confidential Information, that are sufficient to justify the restrictions contained in this Agreement. Further, given your education, skills and abilities, you do not believe the restrictions in this Agreement would prevent you from earning a living. You agree that the scope and durations of the restrictions contained in this Agreement are reasonable and fair, given the nature of Jane Street's business and what you will receive and learn in connection with your employment at Jane Street. You also acknowledge that Jane Street's business is international and that the restrictions set forth in this Agreement are reasonable in geographic scope even though not limited to any particular area or market.

5. **Governing Law.** This agreement is governed by New York law, without regard to conflicts of law principles.

6. **Enforcement**

    6.1 **Remedies.** You acknowledge and agree that the restrictions contained in this Agreement are reasonable and necessary to protect the business and interests of the Company and that any violation of these restrictions would cause the Company substantial irreparable injury. Accordingly, you agree that a remedy at law for any breach of your obligations in this Agreement would be inadequate and that the Company, in addition to any other remedies available, will be entitled to obtain preliminary and permanent injunctive relief from a court of competent jurisdiction to secure specific performance of your obligations and to prevent a breach or contemplated or threatened breach of this Agreement without the necessity of proving actual damage and without the necessity of posting bond or security, which you expressly waive.

    6.2 **Blue Penciling; Severability.** If any part of this Agreement is determined to be invalid or unenforceable for any reason, the remainder of the Agreement shall be unaffected thereby and shall remain in full force and effect to the fullest extent permitted by law, and the affected provisions shall be deemed modified to the extent necessary to be valid and enforceable. If the Garden Leave period or Trading Activity Restriction Periods are reduced as a result of any modification, the specific monetary consideration (section 1.3 for Garden Leave, section 3.4 for Restricted Trading Activity) will be reduced accordingly, without limiting in any way the availability of injunctive relief or other remedies.

7. **Prospective Employment.** So long as you remain subject to restrictions under sections 1, 2, or 3 of this Agreement, you agree to provide a copy of this Agreement to a prospective employer before accepting an offer of employment, except that you may redact any financial information, such as any amounts that will or have been paid to you under this Agreement.

8. **Notices.** All required or permitted notices under this Agreement shall be in writing and shall be effective upon personal delivery or upon deposit in the United States Postal Office, by registered or certified mail, postage prepaid, or by overnight mail via Federal Express addressed to the other party at the following addresses:

    If to Jane Street:    Director of Human Resources
                          Jane Street Group, LLC
                          250 Vesey Street, 6th Floor
                          New York, New York 10281

    If to you:            At the address shown in Jane Street's records.

Any notice delivered in accordance with the terms hereof shall be deemed received on the third day following the date of mailing, or the day following dispatch by overnight mail. Either party may change the address or other information to which notices to such party may be given hereunder by serving a proper notice of such change of address or other information to the other party.

9. **Arbitration.**

   9.1   **General.** You and the Company agree to use final and binding arbitration to resolve any dispute (an "Arbitrable Dispute") between you and the Company (or any affiliate of the Company). Arbitrable Disputes includes any matters relating to this Agreement and your employment with and/or termination of employment from the Company, including without limitation disputes about this Agreement, the IP Agreement, or the Employment Letter (or alleged violations of any of these agreements), and any claims arising federal, state or local law (including claims of discrimination), but does not limit the right of the Company to obtain injunctive relief as described below in section 9.3.

   9.2   **Arbitration Forum.** Any arbitration pursuant to this Section 9 or the IP Agreement will take place in New York, New York, under the auspices of JAMS, in accordance with the JAMS Employment Arbitration Rules and Procedures then in effect, and before one arbitrator selected in accordance with such rules as modified in the next sentence. The parties agree that JAMS will be asked to propose only arbitrators who are former federal or New York state court judges, and the Company and you shall use only a former federal or New York state court judge to conduct the arbitration.

   9.3   **Injunctive Relief.** Notwithstanding anything to the contrary contained herein, the Company shall have the right to seek injunctive or other equitable relief from a court of competent jurisdiction to enforce this Agreement and the IP Agreement, as provided in section 6 above. For purposes of seeking injunctive relief, the Company and you hereby consent to the jurisdiction of any state or federal court sitting in the County of New York, State of New York.

   9.4   **Fees and Expenses.** In any arbitration pursuant to this Section 9, except as otherwise required by law, each party shall be responsible for the fees and expenses of its own attorneys and witnesses, and the fees and expenses of the arbitrator shall be divided equally between the parties.

10. **Section 409A.** The intent of the parties is that payments and benefits under this Agreement comply with, or be exempt from, Internal Revenue Code Section 409A and the regulations and guidance promulgated thereunder (collectively "Code Section 409A") and, accordingly, to the maximum extent permitted, this Agreement shall be interpreted to be in compliance therewith. A termination of employment shall not be deemed to have occurred for purposes of any provision of this Agreement providing for the payment of any amounts or benefits upon or following a termination of employment that are considered "nonqualified deferred compensation" under Code Section 409A unless such termination is also a "separation from service" within the meaning of Code Section 409A and, for purposes of any such provision of this Agreement, references to a "termination," "termination of employment" or like terms shall mean "separation from service." For purposes of Code Section 409A, your right to receive any installment payments pursuant to this Agreement shall be treated as a right to receive a series of separate and distinct payments. In no event shall you, directly or indirectly, designate the calendar year of payment, except as permitted under Code Section 409A. The Company does not guarantee the tax treatment of any payments or benefits under this Agreement, including without limitation under the Internal Revenue Code or any federal, state, local or foreign tax laws or regulations.

10.  **General Terms.** This Agreement, together with the IP Agreement and the Employment Offer, is the entire agreement between you and the Company with respect to its subject matter and supersedes any prior agreement or understandings (whether oral or written). This Agreement may not be changed except by a written agreement signed by both you and the Company. The captions of the sections of this Agreement are for convenience of reference only and in no way define, limit or affect the substance of any section of this Agreement. This Agreement shall survive termination of your employment with the Company.

11.  **Sunset.** Jane Street may elect to sunset some or all of the restrictions in this Agreement during the course of your employment at Jane Street, in accordance with the terms of this paragraph. "Sunsetting" means lifting some or all of the restrictions in sections 1, 2, and 3 above. All of these restrictions will sunset as of the fourth (4th) anniversary of your start date with Jane Street, provided that, at such time, (1) you remain an active employee of Jane Street and (2) Jane Street has not affirmatively elected to continue the Agreement by delivering written notice to you. For any election to be effective under this paragraph, Jane Street must deliver the notice to you either by e-mail to your Jane Street email address, or by mail in accordance with the provisions in paragraph 8, within the 30-day period preceding the 4th start date anniversary. In the notice, Jane Street must specify which, if not all, of sections 1, 2, or 3, will continue past the 4th anniversary date. For the avoidance of doubt, any sunsetting of this Agreement will have no effect on the continued applicability and enforceability of the IP Agreement.

Sincerely,

_/s/ Sandor Lehoczky_
Sandor Lehoczky

Agreed and Accepted:

_/s/ Douglas Schadewald_
Douglas Schadewald