**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE STREET GROUP, LLC,<br>*Plaintiff*,<br><br>*v.*<br><br>MILLENIUM MANAGEMENT LLC, DOUGLAS SCHADEWALD, and DANIEL SPOTTISWOOD,<br><br>*Defendants.* | Case No. 24-CV-02783<br><br>Hon. Paul A. Engelmayer<br><br>**Oral Argument Requested**<br><br>**Under Seal** |

**DEFENDANT DANIEL SPOTTISWOOD'S DECLARTION IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

I, DANIEL SPOTTISWOOD, pursuant to 28 U.S.C. § 1746 and upon penalty of perjury, hereby declare as follows:

1. I am employed as an Associate Portfolio Manager at Defendant Millennium Management, LLC ("Millennium"). I submit this declaration in support of Defendants' opposition to Plaintiff's motion for a temporary restraining order. This declaration is based upon my personal knowledge.
2. Before my employment at Millennium, I was employed as a trader at Plaintiff Jane Street Group, LLC ("Jane Street").
3. I understand that Jane Street has asserted claims against me relating to my employment at Millennium.
4. I have reviewed Plaintiff's Complaint, Order to show cause for a temporary restraining order and the supporting documents, including the Declaration of Jeff Nanney of April 16,

2024, filed by Jane Street against me, in this action. I have also reviewed the declaration of Douglas Schadewald dated April 18, 2024, and, to my knowledge, fully agree with his statements in response to certain untrue allegations made by Jane Street about India options trading at Jane Street and Millennium, and well as the descriptions of our trading strategies at Millennium and the options market more generally.

5. I submit this affidavit to respond to certain untrue allegations made by Jane Street and to provide additional facts for the Court's consideration.

**<u>My Employment at Jane Street.</u>**

6. I graduated from Duke University in 2020 with a bachelor's degree in statistics and computer science.

7. After graduating, I had offers from two leading trading firms: Citadel Securities and Jane Street. I chose Jane Street over Citadel Securities in part because the former did not have any non-compete restrictions. In fact, Jane Street distinguished itself from other competitors for not imposing non-compete restrictions, and its senior traders and recruiters emphasized this as a point of pride during the internship.

8. When I accepted the position, on August 17, 2020, Jane Street and I executed an agreement titled "Confidentiality and Intellectual Property Agreement" (the "Spottiswood Agreement"). In Section 3, the Spottiswood Agreement expressly excludes from the scope of Jane Street's confidential information, all the general skills, knowledge and experience I would gain from working at Jane Street, as well as information publicly available or readily ascertainable from public sources:

> 3. **General Knowledge.** The general skills, knowledge and experience gained during Employee's employment with Company, information publicly available, generally known or readily ascertainable from public sources within the industry or trade in which Company competes, and information disclosed to Employee by a third party not in a relationship of confidentiality with Company, is not considered Company Confidential Information. Excluded from Company Confidential Information, is information known by Employee prior to his or her employment by the Company.

9. I have always complied with my obligations under the Spottiswood Agreement.

10. I do not agree that Jane Street limited access to "internal documents to only people reasonably expected to contribute to such documents." Mot. 11. For instance, I was asked to share recaps on India option trades with about 300 people on the "options-desk-recaps" email list, many, if not most, of whom did not do any options trading in India, were not reasonably expected to contribute to our recaps and did not have any direct connection to the India options desk. Plts. Ex. E. Likewise, some of my former colleagues may have involved interns on India-related projects. Plts. Ex. P.

11. My manager at Jane Street was Douglas Schadewald. I began at Jane Street trading S&P 500 index options within Mr. Schadewald's group. I became comfortable in high stress situations taking phone calls from the CBOE options pit and also worked on related research and statistical analysis.

12. In 2022, Mr. Schadewald asked if I was willing to redirect my focus from S&P 500 options to Asia options markets and, eventually, relocate to Jane Street's office in Hong Kong. I agreed to this because I was excited about doing something more entrepreneurial and appreciated the increased responsibility and opportunity. I shifted my focus to Asia options markets in August 2022.

13. On January 30, 2023, I moved permanently to Hong Kong. For approximately the first two to three months, I was the sole full-time manual trader of India [REDACTED] For the next couple of months, I led a small team of around two or three manual India [REDACTED]



traders, and desk operatives and software developers who worked on India [redacted] part-time.

14. After July 2023, when the India [redacted] desk I led generated around [redacted] senior partners granted us larger risk constraints and we sized up our trades. In addition, other traders and developers were shifted over to prioritize the efforts. Over time, the team grew to approximately 20-25 people.

15. I believe that trading, especially manual trading, is principally a "people" business. Trading firms compete to hire the best traders because the difference between a strong trader and an average trader—even within the same firm using the same tools and systems—is very substantial.

16. Traders wear a variety of hats at Jane Street, but India options trading specifically required strong live trading skills like the ability to make fast-paced trading decisions.

17. In 2023, to the best of my knowledge, the trades I made were some of the most profitable, if not the most profitable, at the firm. During my tenure at Jane Street, I was many times asked to spend more of my time live trading because of my ability to trade effectively. [redacted] As one example of my impact: I spent January 22, 2024, to January 26, 2024, on vacation. During this time, Jane Street had a [redacted] that may have been avoided with the presence of more experienced traders.

**<u>Departure from Jane Street.</u>**

18. Beginning in November of 2023, I initiated numerous conversations with many of the partners and senior traders at the firm to discuss my prospects at the firm and the year-end

compensation. They stressed that the Jane Street compensation methodology is intended to reduce individual risk and reward individuals based on the results of collective efforts and merit—but not so much for the achieved results of one's contributions. I also expressed that I did not see myself living in Hong Kong long-term.

19. In the last week of my tenure at Jane Street, I spoke with both the head of the Hong Kong office, Jeff Nanney, and one of Jane Street's founders, Rob Granieri, about my thought process and relative disappointment in how things had ultimately turned out. They expressed understanding of my desire to explore a more entrepreneurial path where I would have more direct exposure to, and reward for, my contributions, as well as more flexibility surrounding my hours and location. They did not compromise on the items that I raised, but I was told I would be missed. So, I understood my departure from Jane Street to be amicable.

20. I expressed that I was likely to continue working at a trading firm. Given that my most recent and successful experience was focused on India, it was reasonable, if not obvious, for me to keep trading India [redacted] Shortly after leaving, I called Jeff Nanney to inform him that I had accepted an offer at Millennium. Mr. Schadewald worked at Millennium by that time. Jeff Nanney was disappointed but did not express any concerns.

21. I am surprised, and deeply saddened, that my former colleagues, whom I respect and for whom I worked day and night, [redacted] are now calling into question my personal integrity to prevent

me from pursuing an opportunity at a competitor that they were unwilling to provide at Jane Street.

**Conclusion:**

22. At Millennium, I have not used, and do not intend to use, any trade secrets, confidential information, or proprietary information of Jane Street. Rather, I am trading based on, and intend to continue to trade based on, "general skills, knowledge, and experience," information that I knew prior to being employed by Jane Street, and "information publicly available, generally known or readily ascertainable from public sources"—as I am permitted to do under Section 3 of Spottiswood Agreement.

[**signature page below]**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Greenwich, Connecticut, on April 18, 2024.

By: ____________________ 4/18/2024

Daniel Spottiswood