# EXHIBIT N



Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6797
+1 212 698 3500  Main
+1 212 698 3599  Fax
www.dechert.com

**ANDREW J. LEVANDER**

Andrew.Levander@dechert.com
+1 212 698 3683  Direct
+1 212 698 0483  Fax

April 5, 2024

**VIA ELECTRONIC MAIL**

Deborah Brown
Quinn Emmanuel
51 Madison Avenue
New York, NY 10010-1601
deborahbrown@quinnemanuel.com

   Re: Millennium Management LLC's Employment of Doug Schadewald and Daniel Spottiswood

Dear Ms. Brown:

I write in response to your letter of April 3, 2024, to Millennium Management LLC ("Millennium") in relation to Doug Schadewald and Daniel Spottiswood, former employees of Jane Street Group, LLC ("Jane Street").  Your concern that Millennium is aware that Messrs. Schadewald and Spottiswood are "improperly using" Jane Street's information is unfounded and any tortious interference claim against Millennium would be entirely without merit.

At the outset, let me state that nothing prevented former Jane Street employees from seeking attractive opportunities elsewhere, and Millennium has acted appropriately in recruiting them. Millennium expects that its employees will abide by their obligations to their prior employers, including in respect of confidentiality and intellectual property.  Likewise, Millennium takes its legal obligations very seriously. In competing to attract the best talent, Millennium takes care to avoid potential violations of the agreements between another firm and its employees or former employees and has no use or desire for anyone else's confidential information or intellectual property.  Millennium ensures not only that its employees understand their obligations of confidentiality to Millennium, and that they are expected to respect their obligations to former employers as well.  Millennium took such steps in the case of Mr. Schadewald and Mr. Spottiswood, and they have confirmed that they have not been using confidential information or trade secrets of Jane Street in their work for Millennium.

Your letter asserts that Jane Street has "significant concerns" that Millennium is "improperly using Jane Street's confidential and proprietary information and trade secrets."  In support of this serious but wholly unsupported accusation, you point only to the fact of their hiring and certain undisclosed data. We are not aware of any non-competes covering these individuals, but please



Page 2

advise us if we have missed something in that regard.  Jane Street certainly has no right to demand that they refrain from plying their trade as options traders.  Contrary to Jane Street's apparent perspective, signing on as an employee at Jane Street does not preclude future employment in the industry.  New York law clearly establishes that former employers cannot unreasonably restrain former employees, as "'the possible loss of livelihood [is] a result strongly disfavored by public policy in New York.'"  *Int'l Bus. Machines Corp. v. Visentin*, No. 11 CIV. 399 LAP, 2011 WL 672025, at *21 (S.D.N.Y. Feb. 16, 2011) (quoting *Estee Lauder Cos. V. Batra*, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006)); *Long Island Minimally Invasive Surgery, P.C. v. St. John's Episcopal Hosp.*, 164 A.D.3d 575, 577 (2d Dep't 2018) (relying on *BDO Seidman v. Hirshberg*, 93 N.Y.2d 389, 390-91 (1999) and finding employer's restriction unenforceable because it "effectively barred him from performing surgery, his chosen field of medicine").

The second piece of "evidence" you cite is a vague allusion to "a review of data and reports for certain markets," but you provide no detail on what those data and reports are or why these materials indicate that the individuals have been engaging in improper conduct.  We have undertaken a preliminary review of their trading and communications and are unaware of any improper conduct.  Assuming your allegations are based on Mr. Schadewald's past work in the Indian options market, they lack credibility: Mr. Schadewald is just one of many traders working in a highly liquid, public market which has grown exponentially in the last ten years.  *See* "Eighty Percent of the World's Stock Options Aren't Traded Where You Think," Wall Street Journal (Mar. 11, 2024).[1]  The Indian market has long been recognized as presenting particularly compelling opportunities for arbitrage, given its inefficiencies.  *See* Joshi, et al., "An empirical analysis of market efficiency in Indian options market," Indian Institute of Management Bangalore, 2011.[2]  In fact, Millennium has been trading in that market for years.

Obviously, skill in options trading is not limited to Jane Street.  Mr. Schadewald trained at Barclays for many years prior to joining Jane Street and is well versed in the various well known options trading techniques that he and Mr. Spottiswood employ.  Indeed, far from a trade secret, their option trading techniques are literally as well as figuratively textbook techniques that are the subject of numerous books and courses.  Thus, unless you are willing to provide additional information to us (or if preferable to Messrs. Schadewald and Spottiswood and their attorneys) regarding what the data, markets and trading strategies are that you believe justify your accusation, there is no way for us to investigate the matter further.  If you truly believe that you

---

[1] https://www.wsj.com/finance/stocks/eighty-percent-of-the-worlds-stock-options-arent-traded-where-you-think-35a46ddc

[2] https://repository.iimb.ac.in/handle/2074/18226



have sufficient evidence to bring a court case, please provide the information to us so that we can evaluate it.

The rest of your letter is untethered from the facts and the law.  You say that a cessation of trading activity is necessary to prevent "grave and imminent harm" to Jane Street, but we do not know what you are referring to or why you think that trading activity is proprietary to Jane Street.  While lauding Jane Street's intellectual property rights, you provide no information at all as to what that has to do with Mr. Schadewald or Mr. Spottiswood.  You demand that they stop using trading strategies "researched, developed and implemented for and by" Jane Street, but they cannot cease what they have never begun.  In fact, they are using common trading strategies (as opposed to the use of sophisticated automated computer programmed trades) based entirely on their know-how and readily available information and data sources.  Nothing about their trading relies on or touches upon trade secrets proprietary to Jane Street.

You threaten – in bold and italics for effect – legal action, yet it is plain that Jane Street lacks a Rule 11 basis to proceed.  As I am sure you are aware, any action brought under the DTSA is subject to 18 U.S.C. 1836(b)(3)(D), which provides for an award of fees "if a claim of the misappropriation is made in bad faith, which may be established by circumstantial evidence." *See Northstar Healthcare Consulting, LLC v. Magellan Health, Inc.,* No. 1:17-CV-1071-ODE, 2020 WL 10486256, at *35 (N.D. Ga. Feb. 20, 2020) (granting $1.3 million in attorney's fees to party baselessly accused to have alleged DTSA and Georgia Trade Secrets Act).  The Second Circuit has defined bad faith as a claim that is "(1) meritless; and (2) brought for improper purposes such as harassment or delay." *Kerin v. United States Postal Service*, 218 F.3d 185, 190 (2d Cir. 2000) (Equal Access to Justice Act case).

Here, it appears that Jane Street is more concerned about restraining the lawful right of former employees to ply their chosen profession and thus is engaging in anti-competitive conduct.  The lack of support in your letter strongly suggest that it was written precisely to harass and delay.  Please retain any emails or other documents relating to this dispute, so that we can investigate Jane Street's knowledge and motives should this matter proceed to litigation.  The FTC and courts have taken a dim view of overbearing employers trying to prevent lawful competition by former employees.  *See FTC Cracks Down on Companies That Impose Harmful Noncompete Restrictions on Thousands of Workers*, https://www.ftc.gov/news-events/news/press-releases/2023/01/ftc-cracks-down-companies-impose-harmful-noncompete-restrictions-thousands-workers; *Am. Broad. Companies, Inc. v. Wolf*, 52 N.Y.2d 394, 404 (1981) ("the general public policy favoring robust and uninhibited competition should not give way merely because a particular employer wishes to insulate himself from competition").  Notably, such conduct can



Page 4

raise antitrust concerns. *See, e.g., U.S.* v. *Am. Tobacco Co.,* 221 U.S. 106, 181-83 (1911) (holding several tobacco companies violated Sections 1 and 2 of the Sherman Act due to the collective effect of six of the companies' practices, one of which was the "constantly recurring" use of non-compete clauses); *Newburger, Loeb & Co., Inc.* v. *Gross,* 563 F.2d 1057, 1082 (2d Cir. 1977) ("When a company interferes with free competition for one of its former employee's services, the market's ability to achieve the most economically efficient allocation of labor is impaired.")

With respect to the request in your letter that we confirm that the individuals are not involved in improper activity, you have that confirmation. To the extent that Jane Street is assuming the worst based on a lack of knowledge, it would be better to engage in a dialogue. Perhaps we can reassure Jane Street that Mr. Schadewald and Mr. Spottiswood are engaged in ordinary options trading without the use of any strategies invented at Jane Street. If you would like to discuss this matter further, we can set up a call on Monday, but otherwise, Millennium is fully prepared to defend against Jane Street's baseless charges.

Yours Truly,

*/s/ Andrew J. Levander*

Andrew J. Levander