

Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6797
+1 212 698 3500  Main
+1 212 698 3599  Fax
www.dechert.com

**ANDREW J. LEVANDER**

Andrew.Levander@dechert.com
+1 212 698 3683  Direct
+1 212 698 0483  Fax

April 26, 2024

**VIA ECF FILING**

Honorable Paul A. Engelmayer
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *Jane Street Group LLC v. Millennium Management LLC*, 24 C 2783 (PAE)

Dear Judge Engelmayer,

Defendants Millennium Management LLC ("Millennium"), Douglas Schadewald, and Daniel Spottiswood (together, "Defendants") jointly submit this letter in response to the Court's April 24, 2024 Memo Endorsement Order (Dkt. 59).  Given the significant differences between the parties with respect to case management, Defendants respectfully provide this separate letter to explain their position as reflected in more detail in the the attached proposed Case Management Order ("CMO").

A week ago, Jane Street argued before this Court that a resolution of this case on an expedited basis was "critical to Jane Street's business" because "every day that the defendants are using this strategy, it has the possibility of extinguishing" the trading opportunity. Apr. 19, 2024 Hr'g Tr. 18:21-24.  The Court rejected Jane Street's application for a temporary restraining order while setting the matter for a trial on injunctive relief the week of July 15.  Then, late Tuesday afternoon—despite nothing changing in the interim—Jane Street reversed position completely, withdrawing for the moment its request for a preliminary and permanent injunction and arguing without further explanation that the case is now too complex to be tried in July and that it would be prejudiced if required to proceed with the very trial it demanded the prior Friday.

Jane Street essentially seeks to force Defendants to live with this litigation looming over them for a full year, apparently calculating that they can chill Defendants' trading for a much longer period by forgoing expedited discovery.  Jane Street's proposed CMO also



Judge Engelmayer
April 26, 2024
Page 2

lacks any specific mechanism for identification of the purported trade secrets at issue, despite counsel's express representation in court last week that Jane Street was willing to "provide something [under seal] with much more definition so that there would be fair notice." Apr. 19, 2024 Hr'g Tr. 21:23-22:1 ("THE COURT: In other words, if it were granted, you would presumably under seal provide something with much more definition so that there would be fair notice. MS. BROWN: We could do that, your Honor."); *see also id*. at 22:12-13 ("we would be prepared to put something in under seal"). Under Jane Street's proposal, it would only identify the trade secrets at issue in response to an interrogatory, to be served within 30 days of entry of the CMO—which means that even if Defendants served an interrogatory on Jane Street immediately after the Court's entry of the CMO, Defendants might not learn of the alleged trade secret until five or six weeks after Jane Street initially filed the Complaint, assuming that Jane Street's answer to the interrogatory was sufficiently detailed and specific.

Jane Street's new approach to this litigation is neither fair nor justified. Jane Street's lawsuit has tarnished the reputations, and put at significant risk the livelihoods, of two traders who have not done anything wrong and who are eager to clear their names. And the lawsuit has cast a shadow on Millennium. Jane Street's withdrawal of its injunctive relief request, however, means Mr. Schadewald and Mr. Spottiswood must work under the cloud of litigation for more than a year and without any certainty as to what they are allowed to do in the interim. Jane Street's proposal would even require Defendants to provide trading data next month, before Jane Street even discloses the alleged trade secret(s) that forms the entire basis of their suit or any other written discovery. This asymmetry would allow Jane Street to define its alleged "trade secret" to fit Millennium's trading data—thus leading to a renewed request for a preliminary injunction, as Jane Street has expressly reserved.

This gamesmanship is directly at odds with Jane Street's promise to provide the Court and Defendants with fair notice of its purported trade secret. Jane Street should be required to immediately identify the trade secrets it claims are at issue in their Complaint with specificity. That critical step will determine whether Defendants file an Answer with Counterclaim, move to dismiss, or move for judgment on the pleadings. Defendants have therefore proposed a Case Management Order that requires identification of the trade secrets by Tuesday, April 30, 2024, whereupon Defendants would file any response to the Complaint no later than May 6, 2024 and then the parties would proceed, on an expedited basis, to a fact hearing on liability the week of July 15, 2024 or some date thereafter



convenient for the Court. Finally, the Court should reject Jane Street's attempt to nullify the jury waiver Jane Street agreed to in Mr. Schadewald's Confidentiality and Intellectual Property Agreement.

### I.    Jane Street Must Identify Its Purported Trade Secrets Immediately

The most important step a court can take in the efficient management of a trade secret case is to ensure that there is an early and robust "identification" process for delineating the trade secrets in dispute. The Court recognized this at Friday's hearing, securing an agreement from Jane Street's counsel in response to the Court's suggestion that Jane Street provide "something with much more definition so that there would be fair notice." April 19, 2024 Hr'g Tr. 21:23-22:1. Indeed, courts in this Circuit have regularly dismissed federal and state trade secret misappropriation claims for failure to give the defendant "sufficient notice of the contours of the claim for misappropriation." *Aira Jewels, LLC v. Mondrian Collection, LLC*, No. 23-CV-04510 (JLR), 2024 WL 1255798, at *3-4 (S.D.N.Y. Mar. 25, 2024) (noting a plaintiff claiming violation under the Defend Trade Secrets Act cannot "get away with nebulous descriptions at the highest level of generality"); *see also Sapir v. Rosen*, No. 20-CV-6191 (RA), 2021 WL 4482277, at *7 (S.D.N.Y. Sept. 30, 2021) (dismissing DTSA claim where description of alleged trade secret was "so general that the Court [was] unable to infer either the existence or the protectability of any trade secret").

As the Federal Judicial Center's Trade Secret Case Management Judicial Guide (the "Judicial Guide") provides, trade secrets identification "should be early" and "depends on the needs of the case." The growing consensus is for courts to require pre-discovery identification of trade secrets. *See* Judicial Guide, Ch. 4 (2023) (excerpt attached). Indeed, some jurisdictions refuse to allow discovery to proceed at all until the identification process has been completed.

Here, it is essential that Defendants are put on notice of the *res* of the dispute—the claimed trade secrets. The Court observed during the hearing that referring to "the trading strategy" is insufficient. The Complaint refers to seven code-named strategies, which have no meaning whatsoever to Millennium and which the individual Defendants have unequivocally denied using at Millennium. It should be no difficulty at all for Jane Street to produce a disclosure, with numbered paragraphs, identifying each trade secret with particularity, so that Defendants and the Court know what Jane Street claims is in dispute and so that Defendants can prepare a defense.



Yet, under Jane Street's proposed CMO, it would only identify the trade secrets at issue through the written discovery process. An interrogatory answer, which can be amended at any time, is subject to gamesmanship, delay, and amendment without notice. On the other hand, the identification process described in the Judicial Guide locks in the plaintiff to describing what is in dispute, subject to a good-cause exception for after-discovered evidence. This more structured procedure has proven effective in many cases, is required in some states, and is strongly recommended by the Federal Judicial Center.

Jane Street has stated in open court that it can readily identify its claim of trade secrets with detailed specificity. *See* April 19, 2024 Hr'g Tr. 21:12-22. It should be directed to make the necessary disclosures. It either knows the alleged trade secrets at issue or it doesn't. If it doesn't, then there is no case and Defendants deserve to know that now—not five or six weeks from now, and certainly not after Defendants have had to provide trading data to Jane Street, which could allow Jane Street to attempt to fashion its "trade secret" in response to Defendants' data.

Accordingly, Defendants respectfully request that the Court require Jane Street to identify the trade secrets that allegedly justify this action on an attorney's eyes only and client representative basis on or before April 30, 2024, subject to amendment upon good cause.

## II.     The Court Should Decide Liability on an Expedited Basis During the July Fact Hearing

Assuming Jane Street produces its trade secret disclosure early next week, Defendants anticipate that they will file an Answer with a counterclaim seeking a declaratory judgment and/or a motion to dismiss or for judgment on the pleadings soon thereafter. Rule 57 of the Federal Rules of Civil Procedure provide that "the court may order a speedy hearing of a declaratory judgment action." That hearing should take place during the week that the Court has already reserved in July or thereafter at its earliest convenience.

Defendants have therefore proposed a case management order that would facilitate a bifurcated hearing solely on liability the week of July 15, 2024. A bifurcated hearing addresses Jane Street's concern that it would be "highly prejudiced if unable to collect a full and complete record" on damages prior to a full trial on the merits. *See* Dkt. 58, Joint Letter at ECF 2. It would also allow an early resolution of this case, thus allowing Schadewald and Spottiswood to clear their names and conduct their investment activity on behalf of Millennium without the specter of unwarranted scrutiny by Jane Street.



Bifurcating the proceedings further serves judicial economy. As the Second Circuit has recognized, bifurcation is "appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue. . . ." *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999). Defendants expect that the fact hearing will make a damages assessment either entirely unnecessary or severely limit its scope.

To be clear, Defendants' position does not preclude discovery relevant to damages. As is always the case in bifurcating the determination of any damages, the parties will conduct discovery that is relevant to both issues. The Case Management Order should therefore provide that the July fact hearing will decide liability, and that Jane Street's damages claims are bifurcated.

### III.     This Case Should Be Heard by the Court, Not by a Jury

Despite the express jury waiver in Mr. Schadewald's Confidentiality and Intellectual Property Agreement and its willingness last week to put liability issues before the Court, Jane Street now wants this dispute to be tried by a jury. The Court should find that this dispute is to be heard and decided by the Court.

Section 9 of Mr. Schadewald's Confidentiality and Intellectual Property Agreement (the "Agreement") could not be clearer. It provides that both Mr. Schadewald and Jane Street "irrevocably waive any and all right to trial by jury in any such proceeding" with respect to any matter arising out of that Agreement. Dkt. 57-001, Ex. A at ¶ 9. Section 10 further provides that in the event of a related dispute with a non-party to the Agreement, Jane Street may seek resolution of the dispute "in a single proceeding in the same court," defined as a "Consolidated Court Proceeding," which Jane Street has done in this litigation. Section 10 then states that "[f]or purposes of this Section of the Agreement each party irrevocably waives any and all right to plead or contend lack of personal jurisdiction … in the court in which the Consolidated Court Proceeding is being heard; ***and they each irrevocably waive any and all right to trial by jury in any such proceeding***." Dkt. 57-001, Ex. B at ¶ 10 (emphasis added). Moreover, at last week's hearing, Jane Street confirmed that this dispute arises out of the Agreement. April 19, 2024 Hr'g Tr. 19:24-20:9 ("We believe Millennium was fully aware of the IP and confidentiality agreements that were in place with Mr. Schadewald when they hired him"); *see also id.* at 10:10-23 (discussing Jane Street's heavy reliance on its IP and confidentiality agreements).



Judge Engelmayer
April 26, 2024
Page 6

Jane Street would have this Court empanel a jury to hear its claims against Mr. Spottiswood (though Spottiswood is accused of the same conduct as Schadewald) and Millennium—despite Jane Street's clear and express jury waiver and agreement to consolidate related disputes in a single court proceeding. The Court should hold Jane Street to the express contractual language in Mr. Schadewald's Confidentiality and Intellectual Property Agreement and confirm that this case will be decided by the Court.

Respectfully submitted,

*/s/ Andrew J. Levander*

Andrew J. Levander

/Enclosures