**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

| | |
|---|---|
| **Case:** | <u>Jane Street Group, LLC v. Millennium Management LLC</u>, No. 24-cv-02783 |
| **Date:** | May 13, 2024 |
| **Re:** | Joint Letter Re: Parties' Views On Court's Questions [Dkt. 66] |

## JANE STREET'S STATEMENT

**I.  THE SCHADEWALD IP AGREEMENT DOES NOT PRECLUDE JANE STREET FROM DEMANDING A JURY TRIAL IN THIS CASE**

Jane Street and Doug Schadewald entered into an IP confidentiality agreement in which they agreed to waive a trial by jury for "any matter arising out of this Agreement." Dkt. 8-1 ("Schadewald IP Agreement") § 9. Although this provision waives the right to a trial by jury for a breach of the IP Agreement against Mr. Schadewald, it does not waive a right to a jury for any other claims against Mr. Schadewald, and certainly does not waive the right to a jury for any claims—contract or otherwise—against Mr. Spottiswood and Millennium.[1]

**1. <u>This dispute is premature.</u>** As a threshold matter, the Court need not address this question at this early stage. Given the stakes in depriving a party of its jury trial right, the Court may deny any demand to strike without prejudice, subject to renewal at a later date. Your Honor faced this exact issue in *Taupita Inv., Ltd. v. Benny Ping Wing Leung*, 2017 WL 3600422 (S.D.N.Y. 2017) (Engelmayer, J.), where the parties cross-moved to dismiss multiple claims and cross-claims asserted against each other, and the defendants also sought to strike the plaintiffs' jury demand based on an asserted contractual waiver. *Id.* *1, *13. The Court denied the motion without prejudice, recognizing it could be revisited after summary judgment:

> The motion presents a substantial question, which turns on whether defendants have the right to enforce this [jury waiver] provision, and how the provision applies in the context of this multi-party, multi-claim litigation. The Court's judgment is that this issue is better resolved following discovery and resolution of any motions for summary judgment, at which point it will be more clear which, if any, parties and claims are headed for trial.

*Id.* at *13. Courts faithfully follow *Taupita*'s direction, denying motions to strike jury demands without prejudice, particularly "given the complex nature of the issue[s] and the lack of prejudice to Defendants." *Savage v. Sutherland Glob. Servs., Inc.*, 521 F. Supp. 3d 308, 319 (W.D.N.Y. 2021) (citing *Taupita*); *see also Performing Arts Ctr. of Suffolk Cnty. v. Actor's Equity Ass'n*, 2024 WL 1530838, at *10 (E.D.N.Y. 2024) ("because ... it is unclear what, if any claims, will proceed to trial, the Court need not yet decide this issue. [Defendants] have not identified any prejudice ....") (citing *Taupita*). So too here, there is no need for the Court to determine the potential scope of the waiver or who can invoke it prior to summary judgment. Also, given that Defendants' proposed case schedule does not distinguish between a jury or bench trial, there is no prejudice to Defendants from allowing the jury demand to remain through discovery. *See Price v. Cushman & Wakefield, Inc.*, 2009 WL 3075599, at *8 (S.D.N.Y. 2009) ("[d]iscovery may well yield additional evidence that will inform" scope of an asserted contractual waiver).

---

[1] In the Amended Complaint, Jane Street asserts seven counts: (1) breach of contract against Mr. Schadewald; (2) breach of contract against Mr. Spottiswood; and (3) various tort claims against Millennium (five torts), Mr. Schadewald (four torts), and Mr. Spottiswood (four torts).

**2. Millennium and Mr. Spottiswood do not have standing to enforce the jury trial waiver.** Neither Millennium nor Mr. Spottiswood are parties to the Schadewald IP Agreement, so neither has standing to enforce its jury waiver. Absent a special relationship between a party and non-party (such as agency), third parties cannot enforce such waivers. *See, e.g.*, *Paracor Fin., Inc. v. General Elec. Cap. Corp.*, 96 F.3d 1151, 1166 (9th Cir. 1996) (denying enforcement of jury waiver by non-signatory non-agent officers of signatory principal); *Redzepagic v. Hammer*, 2017 WL 780809, at *10 n.13 (S.D.N.Y. 2017) (denying enforcement by non-signatories); *U.S. ex rel. Charles T. Driscoll Masonry Restoration, Co. v. Travelers Cas. & Sur. Co. of Am.*, 2017 WL 3701218, *7-8 (N.D.N.Y. 2017) (similar). Mr. Schadewald did not sign his IP Agreement as Millennium's agent, and neither Millennium nor Mr. Spottiswood are third-party beneficiaries of Mr. Schadewald's contract, so they cannot enforce the provision as to *any* claims against them.

Defendants argue that third parties should be allowed to enforce a jury waiver provision based on principles of estoppel because there are cases allowing third parties to enforce arbitration provisions based, at least in part, on estoppel. This analogy, however, is inapt because "there is a presumption in favor of enforcing arbitration clauses and against enforcing jury waivers." *Quinn Const., Inc. v. Skanska USA Bldg., Inc.*, 2010 WL 4909587, at *7 (E.D. Pa. 2010). Thus, a court's willingness to rely on principles of estoppel for non-party enforcement of an arbitration clause could be driven by the presumption in favor of arbitration, and nothing more. This Court has not applied estoppel to deny a jury demand absent a special pre-existing relationship between the parties, and Defendants' out-of-circuit authorities relying on supposed "intertwined" claims are misplaced, including because they all concern broadly-worded jury trial waivers.[2]

**3. The scope of any waiver does not include tort claims against Mr. Schadewald or any claims against Millennium and Mr. Spottiswood.** The scope of a jury trial waiver is "narrowly construed." *Rekor Sys., Inc. v. Loughlin*, 2022 WL 3138942 at *5 (S.D.N.Y. 2022). Where, as here, the jury trial waiver is for claims "arising out of" a contract, the Court "narrowly construe[s]" that language "to ***exclude tort claims***." *In re MF Glob. Inc.*, 496 B.R. 315, 321 (S.D.N.Y. 2013) (emphasis added).[3] *Rekor* is instructive—there, the parties' agreement stated: "Each party hereto waives, to the fullest extent permitted by applicable Law, any right it may have to trial by jury in respect of any Proceeding ***arising out of this Agreement*** or the Transaction." *Id.*

---

[2] As discussed below (*see infra* Part I.3), the jury waiver in the Schadewald IP Agreement (for claims "arising out of" the contract) is ***narrow***, whereas the waivers in the cases relied on by Defendants are ***broad***. In *Penn Nat'l Mut. Cas. Ins. Co. v. IPSCO Steel (Ala.), Inc.*, 2009 WL 10695238, at *1, *3 (S.D. Ala. 2009) the waiver covered claims "under, ***related to*** or by virtue of this Agreement," and the contract was an essential element of the counterclaims; here, Jane Street has independent bases for its claims outside of breach of the Schadewald IP Agreement (*e.g.*, the Spottiswood Agreement, the DTSA, and New York law). And in *In re DaimlerChrysler AG Secs. Litig.*, 2003 WL 22769051, at *2-4 (D. Del. 2003), the waiver covered claims "arising out of ***or in connection with*** this Agreement," the non-signatories were agents of the signatories, and the claims arose out of the "major transaction contemplated by" the agreement itself.

[3] *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007) ("arising out of" does not "encompass[] all claims that have some possible relationship with the contract, including claims that may only 'relate to,' or be 'associated with,' or 'arise in connection with' the contract."); *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001) ("arising out of" indicates causal connection: "[t]o 'arise' out of means 'to originate from a specified source'").

\*3 (emphasis added).  Judge Liman nonetheless found that the plaintiff's tort claims **did not** fall under the jury trial waiver; rather, it reached only claims "alleging a breach of the employment agreements themselves" because "tort claims do not find their legal basis in the employment agreements [but rather in] New York law." *Id.* at \*9.  In contrast, "courts in this Circuit have interpreted more expansive contractual provisions than the 'arising under' language—*i.e.*, the broader 'arising out of *or relating to*' language—to encompass tort claims." *Id.* (emphasis added, quotations omitted); *see also In re MF Glob.*, 496 B.R. at 322 ("While the Trustee's tort claims at issue arguably 'relate to' the [agreements], they do not 'aris[e] under' them").[4]

The Agreement provides that the parties will arbitrate "any matter arising out of" the Agreement (§7), unless: (i) a party is pursuing injunctive relief (*id.* at §8); or (ii) there is a single proceeding against both a signatory party and non-party (*id.* at §10), in which case they can proceed in court but waive a right to jury trial for any claims "arising out of" or "under" the IP Agreement (*id.* at §9-10).  Because the only claim that can arise out of (or under) the IP Agreement is a breach of contract claim, the contractual waiver of a right to jury trial is necessarily limited to a claim against Mr. Schadewald for breach of the IP Agreement.  *Id.* at §9.  As discussed above, waivers for claims "arising out of" an agreement should be "narrowly construed to exclude tort claims." *In re MF Glob.*, 496 B.R. at 321.  Thus, Jane Street did not waive its right to a jury trial for any tort claims against Mr. Schadewald or any claims against Millennium and Mr. Spottiswood.

Defendants err in contorting §10 of the IP Agreement into a universal waiver of the right to a jury trial for all claims against anyone.  Defendants' argument is belied by the fact that if Jane Street had sued only Mr. Schadewald in this action (pursuing injunctive relief, per §8), then under §9 the jury waiver would apply only to the breach of contract claim against Mr. Schadewald (because it "aris[es] out of" the Agreement) but not the remaining DTSA and tort claims.  Defendants illogically interpret §10 to mean that if the same claims are brought in federal court, but claims against a non-party are added, then Jane Street has waived all jury trial rights, even for tort claims against Mr. Schadewald—rights that Jane Street indisputably has in the absence of the non-party claims.  This nonsensical result cannot be derived from the language in §9-10.  Moreover, §10 makes clear that it only applies in situations where the parties "have a dispute under this Agreement"—*i.e.*, a breach of contract dispute already exists—in which case the non-party dispute can proceed in the same action.  The proper reading of §10, therefore, is that Mr. Schadewald and Jane Street acknowledge their waiver of a jury trial for the claim "arising out of"

---

[4]  Defendants' cases are inapposite because they involve jury waiver provisions with a scope broader than "arising out of" the contract, and otherwise are not consistent with the language used in the Schadewald IP Agreement. *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 686-87 (S.D.N.Y. 2018) ("***relating in any way*** to this … agreement"); *Leav v. Weitzner*, 268 A.D. 466, 467 (N.Y. App. Div. 1944) ("any matters arising out of ***or in any way connected*** with this lease"); *Borden, Inc. v. Manhattan Mag., Inc.*, 1995 WL 640588 (S.D.N.Y. Oct. 31, 1995) (similar); *Narayanan v. Sutherland Glob. Holdings Inc.*, 2023 WL 415096, at \*4 (W.D.N.Y. Jan. 26, 2023) (similar); *Gunn v. Palmieri*, 589 N.Y.S.2d 577 (1992) (similar).  The exception, *O'Brien v. Moszynski*, 101 A.D.2d 811 (2d Dept. 1984), involved a jury waiver as to a claim of fraudulent inducement, *i.e.*, it pertained to the agreement, and even that was later repudiated.  *Ambac Assurance Corp. v. DLJ Mortg. Cap., Inc.*, 102 A.D.3d 487 (1st Dept. 2013) (reversing trial court ruling relying on *O'Brien* to enforce jury waiver).

3

or "under" the agreement (*i.e.*, breach of contract claim), but not for all other claims that may be brought in a single proceeding against all parties.

**4. Defendants have not established Jane Street intentionally or knowingly waived its jury trial rights.** The right to a jury is "fundamental" and "its protection can only be relinquished knowingly and intentionally" through an express stipulation. *Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977). Jury trial waivers must be "clear and unequivocal," cannot be "informal[]," and should "never … be lightly inferred." *Tray-Wrap, Inc. v. Six L's Packing Co.*, 984 F.2d 65, 68 (2d Cir. 1993). "[T]he party seeking to enforce the jury waiver clause bears the burden of showing that the waiver was knowing and voluntary." *Stephens Inc. v. Flexiti Fin. Inc.*, 2019 WL 2725627, at *8 (S.D.N.Y. 2019) (quotation marks and citation omitted). Defendants have not met their burden. There is no indication of Jane Street's intentional, knowing, or unequivocal waiver of a jury trial for any *tort* claims against Mr. Schadewald. Further, the agreement Jane Street entered into with Mr. Spottiswood [Dkt. 57-2] has no jury trial waiver, and Jane Street has no contract with Millennium at all.

## II. PROPOSED SCHEDULE ASSUMING A JURY AND NON-JURY TRIAL

*First*, regardless of which issues the Court ultimately finds to be triable by jury vs. bench, there is no reason for the Court to deviate from its template case management order, as proposed by Jane Street on April 26, 2024. Dkt. 65-1. This schedule allows the parties to conduct fact and expert discovery in a comprehensive yet efficient manner, and proceed to a full trial on the merits in the first half of 2025. Any issues for which the Court will act as factfinder can be addressed at the final pre-trial conference and in the proposed joint pre-trial order.

*Second*, significantly, Defendants do not attempt to meet any legal standard to justify their "expedited schedule." Defendants cite "scrutiny" and "disrup[tion]" to their business to demand this deviation from normal practice, but that is arguably true in every lawsuit. Defendants cannot satisfy any (let alone all four) of the required factors under *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) to justify expedition, including, *e.g.*, irreparable injury, where Defendants already argued (in connection with the TRO hearing) that any harm here is monetary. Further, Defendants' collective filing of four counterclaims and 30 affirmative defenses—each of which Jane Street is entitled to respond to and pursue discovery regarding—confirms this dispute implicates complex, fact-bound determinations that are not amenable to expedition. *See* Dkt. 72 pp. 30-33 & ¶¶ 63-76 (Millennium); Dkt. 74 pp. 33-35 & ¶¶ 35-51 (Schadewald & Spottiswood). The unreasonableness of expedition is especially striking in light of the breadth of Defendants' previewed discovery requests, which will require producing ***billions*** of line items of trade order and activity information and corresponding expert review.

*Third*, Defendants request "a trial on liability" in November 2024, conceding that a full trial on liability ***and*** damages cannot be heard by November. But a movant "shoulders the heavy burden of establishing that bifurcation is warranted." *In re Lehman Bros. Holdings, Inc.,* 2011 WL 2651812, at *1 (S.D.N.Y. 2011); *Mattsson v. Pat McGrath Cosms. LLC*, 2022 WL 1658516, at *5 (S.D.N.Y. 2022) (denying bifurcation of liability and damages). The party seeking bifurcation must establish, beyond "generalized assertions," that separate trials will further "convenience or avoid prejudice." *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315-16 (S.D.N.Y. 2001). Because proof of liability for theft of Jane Street's trade secrets and confidential information is closely intertwined with Defendants' monetary gains (and thus damages), bifurcation provides no benefit here.

4

### III. MEANINGFUL MUTUAL DISCOVERY CAN OCCUR WHILE JANE STREET FURTHER DEFINES THE TRADE SECRET(S)

In this District, standard practice is that a party seeking particularized disclosures of trade secrets may propound an interrogatory for such information. This makes sense—neither the FRCP nor Local Rules single out trade secret cases as having unique discovery requirements. Thus, the usual course is for a court to compel a plaintiff to particularize its asserted trade secret in response to a discovery demand. *See, e.g., Ferguson v. Ferrante*, 2014 WL 1327968, at *2 (S.D.N.Y. 2014) (compelling plaintiff to "particularly … identify the allegedly stolen trade secrets" in response to interrogatories); *Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 819-20 (S.D.N.Y. 2008) (granting **plaintiff's** motion to compel discovery into defendant's alleged misappropriation **before** being required to "to identify the precise trade secrets it is alleging were misappropriated."); *Xerox Corp. v. Int'l Bus. Machs. Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974) (requiring plaintiff to "identify in detail the trade secrets and confidential information alleged to have been misappropriated" after "nearly a year of pre-trial discovery").[5]

Courts regularly reject demands that a plaintiff particularize its trade secrets before discovery commences. In *Bytemark, Inc. v. Xerox Corp.*, 2022 WL 120980 (S.D.N.Y. 2022), where a defendant refused to produce **any** discovery until the plaintiff first served a particularized disclosure of the trade secret at issue, Judge Gardephe noted the case was "in its very early stages" and ruled that "Plaintiff is not required—as a prerequisite for obtaining relevant discovery from Defendants—to identify its trade secrets with the specificity that Defendants demand." *Id.* at *5 (citation omitted); *see also DFW Dance Floors LLC v. Suchil*, 2023 WL 1805848, at *2 (N.D. Tex. 2023) (rejecting demand for particularization: "there is no indication that interrogatories would fail to elicit the desired information"). Rather, "[c]ases involving trade secrets claims follow the normal procedures set by the Federal Rules," *Uni-Sys., LLC v. U.S. Tennis Ass'n*, 2017 WL 4081904, at *4 (E.D.N.Y. 2017), and courts resist pre-discovery identification "unless the defendant proves that ordinary discovery procedures are inadequate," *Varsity Gay League LLC v. Nichols*, 2023 WL 4033948, at *1 (N.D. Tex. 2023).

Defendants make no showing to justify abandoning the normal course of discovery. Because discovery should commence on a mutual basis without "prerequisites" by either party for obtaining relevant information, *Bytemark*, 2022 WL 120980, at *5, there is no reason why Defendants cannot participate immediately in their discovery obligations by producing relevant information on matters such as information relating to Mr. Schadewald's and Mr. Spottiswood's retention by Millennium, hiring terms, and work being performed there; their compliance with their IP Agreements; and Millennium's tortious interference. Finally, Jane Street has already agreed to provide a trade secret disclosure by responding to an interrogatory seeking such information, notwithstanding Local Rule 33.3. Such an approach is both reasonable and sufficient here, thus Plaintiff respectfully requests that the Court reject Defendant's incredible demand of a pre-discovery disclosure within "two business days" of the May 16 conference.

---

[5] Defendants' citation to *Xerox* supports Jane Street, as the order for a particularized disclosure came after nearly one year of discovery. *Id.* at 371-72. In *MSCI Inc. v. Jacob*, 945 N.Y.S.2d 863, 864 (Sup. Ct. N.Y. Cnty. 2012), the plaintiff was ordered to reasonably particularize its trade secrets ***during***, not before, discovery.

## DEFENDANTS' STATEMENT

I. **Jane Street Has Waived Any Right To A Jury Trial In This Proceeding**

As master of its complaint, Jane Street elected to join Schadewald, Spottiswood, and Millennium as defendants and assert related claims against each in a single, consolidated proceeding in this Court. Jane Street was only able to sidestep the mandatory arbitration clause in the Schadewald IP Agreement (D.I. 8-1, the "Agreement") by relying on a narrow carveout for this type of "Consolidated Court Proceeding," which Jane Street itself wrote into the Agreement.[6] But in that *very same provision*, Jane Street "irrevocably waive[d] any and all right to trial by jury in any such proceedings." Having affirmatively invoked the Consolidated Court Proceeding provision and relied on the Agreement to allege its claims, Jane Street is bound by its voluntary, knowing, and intentional waiver of a jury trial in this proceeding.

### A. The Agreement Prohibits Jane Street from Asserting a Jury Demand for Any Claims in This Proceeding

Federal courts will enforce a party's contractual waiver of its right to a jury trial "if it is made knowingly, intentionally, and voluntarily." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007). To determine whether a jury waiver meets these criteria, and is therefore enforceable, courts in this district consider "(1) the negotiability of contract terms and negotiations between the parties concerning the waiver provision; (2) the conspicuousness of the waiver provision in the contract; (3) the relative bargaining power of the parties; and (4) the business acumen of the party opposing the waiver." *Clarex Ltd. v. Natixis Sec. Americas LLC*, 2013 WL 6189260, at *1 (S.D.N.Y. Nov. 25, 2013). Where enforceable, contractual jury waivers are construed literally. *Id.*; *see also Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 686 (S.D.N.Y. 2018).

*The Waiver is Enforceable*. As Schadewald's employer and the drafter of the waiver, Jane Street, a highly sophisticated Wall Street trading firm, cannot genuinely deny that the jury waiver in Section 10 of the Agreement meets the above standard. Jane Street itself alleges that it "required" Schadewald to be bound by this agreement as a condition of employment. D.I. 63, ¶¶ 69, 73. The most Jane Street alleges as to ***Schadewald's*** ability to negotiate is that he "had an opportunity to review … and consult with an attorney before agreeing to [its] terms." *Id.* ¶ 91. Having dictated crystal-clear terms to its employee, Jane Street, an economic powerhouse represented by the most sophisticated of lawyers, cannot now avoid their impact.

*All Claims in This Proceeding are Within the Scope of the Waiver*. Section 10 allows Jane Street to bring its claims against Schadewald in federal court, rather than arbitration, only where it brings a "***single proceeding*** in the same court" against Schadewald and a "non-party who is not subject to arbitration" with whom it "has a related dispute." D.I. 8-1, § 10. In these contractually defined multi-party "Consolidated Court Proceeding[s]," the contracting parties entirely waive their jury rights: "For purposes of this Section [10] … [the parties] each irrevocably waive ***any and all right to trial by jury in any such proceedings***." *Id*. Section 10's broad jury waiver can only be read to mean exactly what it says—that Jane Street waived any and all right to trial by jury in a "Consolidated Court Proceeding,"—*i.e.*, this proceeding. *See Kortright*, 327 F. Supp. 3d 673,

---

[6] Section 8, which allows Jane Street to seek injunctive relief from a court, is inapplicable as Jane Street has withdrawn any demand for injunctive relief in its Amended Complaint. D.I. 8-1, § 8.

686 (S.D.N.Y. 2018) (jury waivers interpreted by their plain language). And where the plain language of a jury waiver extends to an entire proceeding, it is so construed. *Leav v. Weitzner*, 268 A.D. 466, 468 (App. Div. 1944) (applying waiver to all claims against non-signatories).[7]

Jane Street accuses Defendants of "contorting" Section 10, yet Jane Street finds no textual support for its assertion that Section 10 contemplates bifurcated bench and jury trials in Consolidated Court Proceedings. Conversely, Defendants' plain language construction of Section 10 is necessary to "give effect to its purpose and intent" within the Agreement "as a … whole." *Nomura Home Equity Loan, Inc., Series 2006-FM2 v. Nomura Credit & Cap., Inc.*, 30 N.Y.3d 572, 581 (2017).[8] The Agreement expressly contemplates non-contract claims (*see* D.I. 8-1, § 2.6 (state and federal trade secret laws)) and by definition non-contractual claims against non-signatory defendants (*see id.* § 11 (notice to employee's "new employer")). And as a Consolidated Court Proceeding naturally involves overlapping issues of fact and law, a jury waiver as to only some claims and defendants would be inadequate and impractical. Indeed, **all** of Jane Street's claims are premised on the alleged misappropriation of Jane Street's "Trading Strategy" (D.I. 63 ¶¶ 2-3) by all Defendants "jointly" (*id.* ¶ 240) in breach of the Agreement (*id.* ¶¶ 188-189, 196-197, 200-201, 210-211, 214-215, 233, 235)—Jane Street does not articulate **any** issues that would be subject to the jury waiver under its construction. Indeed, Jane Street's atextual interpretation also renders the Section 10 waiver a nullity in light of the separate jury waiver in Section 9 of the Agreement. *Nomura*, 30 N.Y.3d at 581 (2017) ("[A] contract must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect").

Jane Street's argument that its waiver is limited to claims "arising out of" the Agreement conflates Section 10's exception to mandatory arbitration ("in the event that the parties have a dispute under this Agreement … and a related dispute with a non-party") with language defining the scope of the jury waiver ("**any and all right** to trial by jury **in any such proceedings**"). *Rekor* is thus inapplicable, as the agreement there did not expressly contemplate related tort claims and claims against nonparties, and the jury waiver contained an express scope limitation, "arising out of this Agreement or the Transaction." Section 10's jury waiver is not so limited. Moreover, even applying Jane Street's interpretation, all claims "arise out of" the Agreement because Jane Street alleges contractual breaches as a predicate for its tort claims and that all Defendants are joint tortfeasors. D.I. 63, ¶¶ 188-189, 196-197, 200-201, 210-211, 214-215, 233, 235, 240; *see Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 706 (S.D.N.Y. 2011) (jury waiver for claims "arising out of this Agreement" encompassed tort claims); *Brown v. Cushman & Wakefield, Inc.*, 235 F. Supp. 2d 291, 294 (S.D.N.Y. 2002) (same).[9]

---

[7] *See also Borden, Inc. v. Manhattan Mag., Inc.*, 1995 WL 640588 (S.D.N.Y. Oct. 31, 1995) (citing *Leav*, applying to claims against non-signatories); *Narayanan v. Sutherland Glob. Holdings Inc.*, 2023 WL 415096, at *4 (W.D.N.Y. Jan. 26, 2023) (contract claim "brought the entirety of this action" within the scope of the jury waiver); *Gunn v. Palmieri*, 589 N.Y.S.2d 577 (1992) (applying to claims against non-signatories); *O'Brien v. Moszynski*, 475 N.Y.S.2d 133 (1984) (same).

[8] A contractual waiver's scope is determined under state contract law principles. *Kortright*, 327 F. Supp. 3d at 685. The Agreement is subject to New York law. D.I. 8-1, § 12.

[9] Jane Street also argues that the Court should delay resolution of this issue until after summary judgment and yet another round of briefing on a motion to strike. There is no reason to delay. In

### B. Estoppel Additionally Prohibits Jane Street from Asserting a Jury Demand for Claims Against Spottiswood or Millennium

Moreover, principles of estoppel prohibit Jane Street from relying on the Agreement where it suits its purposes while seeking to disclaim the express jury waiver that it apparently now regrets. It is uncontroversial that where a signatory to a mandatory arbitration agreement seeks to litigate sufficiently "intertwined" issues against both a signatory and a non-signatory, the signatory may be equitably estopped from avoiding arbitration against the non-signatory. *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010). The Second Circuit has drawn from the law of arbitration agreements when rejecting a litigant's effort to set aside a jury waiver it signed. *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 188 (2d Cir. 2007) ("A promise to bring proceedings before a judge, not a jury, is akin to an agreement to arbitrate in that both express the parties' consent as to how to handle differences that may arise."). And although to Defendants' knowledge this Court has not passed on whether estoppel prohibits a signatory from avoiding a jury waiver it signed when bringing intertwined claims against signatory and non-signatory defendants, other federal courts have held that it does in the circumstances present here.

In *Penn National Mutual Casualty Insurance Co. v. IPSCO Steel (Alabama), Inc.*, the District Court held that the counterclaim-plaintiff was estopped from avoiding a jury waiver in a contract it relied on to establish its claim, but which the counterclaim-defendant was not party to. 2009 WL 10695238, at *4-5 (S.D. Ala. Jan. 8, 2009). Here, the nondisclosure restrictions within the Agreement are essential to Jane Street's federal and state law claims against Millennium and Spottiswood. *Supra* p. 7. Similarly, in *In re DaimlerChrysler AG Securities Litigation*, the District of Delaware held that equitable estoppel precluded the plaintiff from "arguing that the jury waiver applies only to certain defendants" because the plaintiff also "alleged that all Defendants acted in concert with each other." 2003 WL 22769051, at *3 (D. Del. Nov. 19, 2003), *aff'd on other grounds*, 502 F.3d 212 (3d Cir. 2007). Just like the plaintiff in *DaimlerChrysler*, Jane Street alleges here that all "Defendants were jointly engaged in the commission of" the alleged misconduct. Having relied on the Agreement and alleged that all Defendants were acting in concert, Jane Street is estopped from now disavowing the jury waiver to which it expressly and intentionally agreed.

## II. A Bench Trial on Liability Should Take Place This Year

Defendants respectfully submit that the case should remain on an expedited schedule. Assuming the case is not resolved on a motion for judgment on the pleadings, a fact hearing set

---

*Taupita*, this Court deferred a motion to strike to allow for discovery and motions for summary judgment where the waiver did not plainly contemplate claims against non-signatories and ***all*** defendants were non-signatories with uncertain standing to enforce the agreement. Here, it is unlikely that summary judgment will moot this issue by resolving all but the one claim against one defendant that Jane Street concedes the jury waiver applies to. Moreover, no disputed factual issues exist—the jury waiver is enforceable as Jane Street is a sophisticated employer, and the unambiguous language of the jury waiver can be interpreted as a matter of law. Finally, the orderly scheduling of trial in this case depends on the jury waiver question: *e.g.*, whether direct witness examinations are to be conducted by affidavit or live questioning and whether trial can be reasonably held on nonconsecutive days will impact the length and scheduling of trial. It will also impact pretrial activities such as *voir dire*, mock jury exercises, and jury instructions.

for the spring of 2025 would be unfair to Defendants, because their trading activities will remain under unwarranted scrutiny for the duration of the case and their business will be disrupted by virtue of this litigation.

Bifurcation of the case into a liability and damages phase, with the Court determining liability later this year, thus serves the purposes set forth in FRCP 42(b).  *See Intell. Prop. Dev. Corp. v. UA-Columbia Cablevision of Westchester, Inc., No. 94 CIV. 6296 (SS),* 1995 WL 81276, at *1 (S.D.N.Y. Feb. 28, 1995) (bifurcating case where damages evidence was "largely financial whereas liability evidence [wa]s largely technical").  Here, the liability phase will concern the existence of any trade secret and whether Defendants use it to trade options.  Jane Street's suggestion that proof of liability for theft of Jane Street's trade secrets is closely intertwined with Defendants' monetary gains makes little sense—if Defendants have earned their profits honestly (which they have), then there will be no need for a damages phase.

Defendants acknowledge that, having still not received the trade secret disclosure from Jane Street, a fact hearing during the week of July 15 does not seem likely.  Assuming the Court's availability, Defendants submit that a trial on liability taking place in mid-November 2024 would provide a timeline that accommodates Defendants' desire to clear their names in expedited fashion without prejudicing either side's ability to develop its case. The proposed timeline below accommodates both a fact hearing heard only by the Court and a fact hearing with both a Court and jury.

1. Proposed protective order: May 15, 2024
2. Trade Secret Disclosure: May 20, 2024 (+ 2 business days from Conference)
3. FRCP 26(a)(1) Initial Disclosures: June 6, 2024
4. Substantial Completion of Document Production: July 17, 2024
5. Complete Fact Discovery: August 16, 2024
6. Complete Expert Discovery: September 30, 2024
    (a) Plaintiff's Expert disclosures: August 21, 2024
    (b) Defendants' Expert disclosures: September 11, 2024
7. Trial scheduled for November 12-15 (second week of November) with potential jury selection, subject to Court's availability.
    (a) Joint Pre-Trial Order: 2 weeks before trial
    (b) List of Trial Cross-Examination Witnesses: 1 week before trial
    (c) Final Pre-Trial Conference: 1 week before trial

### III. Meaningful Discovery Cannot Occur Before Jane Street Further Defines the Trade Secret(s) It Alleges Are at Issue in This Case

Meaningful discovery cannot take place before Jane Street further defines the trade secrets at issue in this case.  Because Plaintiff's claims all center on Defendants' alleged misappropriation

9

of Jane Street's trade secrets, Jane Street's disclosure of the trade secrets will govern the litigation going forward. Two states—California and Massachusetts—require pre-discovery identification of trade secrets by statute, and the "'growing consensus' is for courts to require pre-discovery (or at least early-in-discovery) identification of trade secrets." *See* Peter Menell, et al., *Trade Secret Case Management Judicial Guide*, FED. JUD. CTR. (2023) (collecting cases). And New York state courts and courts in this district agree with the early disclosure rule. *See, e.g.*, *MSCI Inc. v. Jacob*, 945 N.Y.S.2d 863, 865 (2012) ("Upon consideration of the case law cited by plaintiffs, the court is persuaded that the law requires that a trade secret plaintiff identify trade secrets with reasonable particularity early in the case."); *see also id.* (citing *Xerox Corp. v. IBM Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974) ("The burden is upon the plaintiff to specify [the alleged trade secrets], not upon the defendant to guess at what they are. . . . Clearly until this is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not; and it is doubtful whether [defendant] can undertake a meaningful discovery program. . . .")).

Setting aside any dispositive motion that Defendants may make after the disclosure, Jane Street's disclosure of its trade secrets with reasonable particularity will define the boundaries of proportionate and reasonable discovery consistent with Rule 26. Once the disclosure is made, Defendants anticipate the parties will be able to better tailor their discovery demands and responses, and also negotiate more precise search terms and document custodians. And having charged into court with great fanfare but without defining its supposed trade secrets and without any evidence of misappropriation, Plaintiff cannot be heard to complain that it is somehow unfair to it to particularize what this case is really about. In contrast, the unfairness to Defendants from the vague nature of Jane Street's allegations is easily illustrated. The Amended Complaint alleges that Defendants are trading in the same market where Jane Street employs the Trading Strategy. Without greater definition of that "strategy," the parties will exchange document demands for all activity in the market, which will result in many false hits because other teams at Millennium, through traders having no connection with Schadewald or Spottiswood, conduct other trading in this market. Even if the parties then engage in a meet and confer and later agree to narrow their demands following disclosure of the Trading Strategy, Defendants will have spent huge numbers of hours and incurred significant expenses reviewing documents with false hits, so as to be prepared for document production.

Further, as referenced in Defendants' prior letter (D.I. 61), the early disclosure of the trade secrets will limit possible gamesmanship with respect to Millennium's trading data. Defendants deserve to know exactly what they are accused of misappropriating before they are forced to incur significant discovery expenses to mount their own defense. This case has now been going on for more than a month, and Defendants still do not know what the "Trading Strategy" means even though Plaintiff informed the Court at the TRO hearing that it could readily identify the alleged trade secrets at the heart of this case. Apr. 19, 2024 Hr'g Tr. 21:23-22:1, 22:12-13. Defendants therefore respectfully request that the Court order Jane Street to identify its trade secrets within two business days of the May 16, 2024 conference.

Respectfully submitted,

| | | |
|---|---|---|
| */s/ Deborah K. Brown* | */s/ Andrew J. Levander* | */s/ Rollo Clyde Baker, IV* |
| Deborah K. Brown | Andrew J. Levander | Rollo Clyde Baker, IV |
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | DECHERT LLP | ELSBERG BAKER & MARURI PLLC |
| 51 Madison Ave., 22nd Floor | 1095 Avenue of the Americas | One Penn Plaza, Suite 4015 |
| New York, NY 10011 | New York, NY 10036 | New York, NY 10119 |
| deborahbrown@quinnemanuel.com | andrew.levander@dechert.com | rbaker@elsberglaw.com |
| | | |
| *Counsel for Plaintiff Jane Street Group, LLC* | *Counsel for Defendant Millennium Management LLC* | *Counsel for Defendants Douglas Schadewald and Daniel Spottiswood* |