## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JANE STREET GROUP, LLC, <br><br> *Plaintiff*, <br><br> *v.* <br><br> MILLENNIUM MANAGEMENT LLC, DOUGLAS SCHADEWALD, and DANIEL SPOTTISWOOD, <br><br> *Defendants*. | Case No. 24-CV-02783 <br> Hon. Paul A. Engelmayer <br><br> ██████████ |

## DEFENDANTS DOUGLAS SCHADEWALD AND DANIEL SPOTTISWOOD'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendants Douglas Schadewald ("Schadewald") and Daniel Spottiswood ("Spottiswood" and together with Schadewald, "Individual Defendants"), by and through counsel, respond to the Amended Complaint of Plaintiff Jane Street Group, LLC ("Jane Street") and assert affirmative defenses against Jane Street. Unless expressly admitted, all allegations in the Amended Complaint are denied.

### NATURE OF THE ACTION

1.      The first paragraph of the Amended Complaint describes Jane Street's lawsuit and requires no response.

2.      Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 2 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants state that during their employment they did not hear others within Jane Street refer to "the Trading Strategy" for the India options market as described in the Amended Complaint and deny the allegations concerning the alleged "Trading Strategy." Individual Defendants admit that they are former employees of Jane Street.

3.      Individual Defendants admit the first sentence of paragraph 3 and deny the second sentence of paragraph 3.

4.      Denied.

5.      Individual Defendants state that the alleged "Trading Strategy" and "particular trading methodologies" referred to in paragraph 5 are too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy" and "particular trading methodologies."

6.      Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 6 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."

7.      Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 7 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."   Individual Defendants admit Schadewald entered into the Confidentiality and Intellectual Property Agreement with Jane Street dated December 22, 2023 ("Schadewald IP Agreement") and Spottiswood entered into the Confidentiality and Intellectual Property Agreement with Jane Street dated August 17, 2020 ("Spottiswood IP Agreement"), and respectfully refer to those agreements for a full statement of their terms.  Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 concerning Jane Street's confidentiality agreements with other employees.

8.      Individual Defendants deny the allegations in the first sentence of paragraph 8. Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 8, and thus, deny the same.

9.      Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first and fourth sentences of paragraph 9.   Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 9 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy." Individual Defendants admit that Schadewald was hired with a start date of February 12, 2024, and Spottiswood with a start date of February 28, 2024.  Individual Defendants admit that in the course of their work with Millennium, they ████████████ of options on exchanges in India.

10.      Individual Defendants deny the allegations in the first sentence of paragraph 10. Individual Defendants lack knowledge or information sufficient to form a belief as to the allegations in paragraph 10 concerning Millennium's knowledge, but admit that they notified Millennium of their continuing obligations to Jane Street.

11.      Denied.

12.      Individual Defendants admit that Jane Street does not typically impose non-compete agreements on its employees, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12, and thus, deny the same.

13.      Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first three sentences of paragraph 13, and thus, deny the same, and deny the remainder of paragraph 13.

14.     Denied.

15.     Denied.

## **THE PARTIES**

16.     Individual Defendants admit that Jane Street is a global trading firm in the financial services industry and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 16.

17.     Individual Defendants admit that Millennium is an investment management firm and hedge fund and lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 17.

18.     Individual Defendants deny that Schadewald is a current employee of Millennium and admit the remaining allegations of paragraph 18.

19.     Individual Defendants deny that Spottiswood currently resides in Hong Kong and that he is a current employee of Millennium and admit the remaining allegations in paragraph 19.

## **JURISDICTION AND VENUE**

20.     Paragraph 20 contains conclusions of law to which no response is required.  To the extent a response is required, Individual Defendants deny the allegations in paragraph 20.

21.     Paragraph 21 contains conclusions of law to which no response is required.  To the extent a response is required, Schadewald admits that he resides in New York, and respectfully refers to the Schadewald IP Agreement for a full statement of its terms and contents.

22.     Paragraph 22 contains conclusions of law to which no response is required.  To the extent a response is required, Individual Defendants admit that they are former employees of Jane Street, entered into the Schadewald IP Agreement and Spottiswood IP Agreement with Jane Street, and deny the remainder of paragraph 22.

23.     Paragraph 23 contains conclusions of law to which no response is required.  To the extent a response is required, Individual Defendants admit that Schadewald resides in New York, respectfully refer the Court to the Schadewald IP Agreement and Spottiswood IP Agreement for a full statement of their terms and contents, and deny the remainder of paragraph 23.

## FACTUAL ALLEGATIONS

24.     Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24, except admit that Jane Street employs researchers, engineers, and traders.

25.     Individual Defendants admit the first two sentences of paragraph 25, except deny that "trading strategies" are the only way "it is possible to gain an edge on competitors in the marketplace."  Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the third and fourth sentences of paragraph 25.

26.     Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26, and thus, deny the same.

27.     Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27, and thus, deny the same.

28.     Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28, and thus, deny the same.

29.     Individual Defendants admit that they were typically required to scan security badges to enter or exit Jane Street's physical offices and that their Jane Street e-mail accounts were password-protected, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 29, and thus, deny the same.

30.     Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30, and thus, deny the same.

31.     Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31, and thus, deny the same, except admit they are aware of a small number of Jane Street employees devoting a portion of their time to trading options on exchanges in India before Individual Defendants became significantly involved in this business.

32.     Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32, and thus, deny the same, except admit they are aware of a small number of Jane Street employees devoting a portion of their time to manual and algorithmic trading of options on exchanges in India before Individual Defendants became significantly involved in this business.

33.     Individual Defendants deny the allegations in paragraph 33, except admit they are aware of a small number of Jane Street employees devoting a portion of their time to manual and algorithmic trading of options on exchanges in India before Individual Defendants became significantly involved in this business.

34.     Individual Defendants state that the alleged "understanding and insights" "potential opportunities," and "trading concepts" in paragraph 34 are too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations in paragraph 34.

35.     Individual Defendants state that the alleged "trading concepts" and "algorithmic and trading research and analysis" in paragraph 35 are too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the same, except admit they are aware of a small number of Jane Street employees devoting a portion of their time to trading options on exchanges in India before Individual Defendants became significantly involved in this business.

36.     Individual Defendants state that the alleged in paragraph 36 "program of ███████████████████," "highly confidential knowledge of market modeling developed by dozens of traders and researchers over more than a decade," "identified latent inefficiencies," and the alleged "2023 Trading Investigation" are too vague and ambiguous to permit Individual Defendants to factually respond.  Individual Defendants admit that between approximately ███████████████, primarily Mr. Spottiswood and to a lesser extent, others at his trading desk, ████████████████████████████████████████, and otherwise deny paragraph 36.

37.     Individual Defendants state that the alleged "Trading Strategy" and "2023 Trading Investigation" referred to in paragraph 37 are too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy" and "2023 Trading Investigation." Individual Defendants are also presently unaware of the source or context of the sentence fragments allegedly attributed to Mr. Spottiswood or other unnamed Jane Street employees and thus lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the statements in paragraph 37.   Individual Defendants admit that between approximately ███████████████, primarily Mr. Spottiswood and to a lesser extent, others at his trading desk, ████████████████████████████████████████, and admit that they are aware that others within Jane Street had previously ████████████ ████████████████████████████████████████████ ████, and otherwise deny paragraph 37.

38.     Individual Defendants admit that between approximately ██████████████, primarily Mr. Spottiswood and to a lesser extent, others at his trading desk, ████████████████████

████████████████████████████████████.  Individual Defendants state that the

alleged "2023 Trading Investigation" is too vague and ambiguous to permit Individual Defendants

to factually respond; to the extent a response is required, Individual Defendants deny the

allegations concerning the alleged "Trading Strategy."

39.     Denied.

40.     Individual Defendants admit that between approximately ████████████████

████, primarily Mr. Spottiswood and to a lesser extent, others at his trading desk, v███████

████████████████████████████████.  Individual Defendants state

that the alleged "2023 Trading Investigation," "certain signals and strategies," "methods of

analyzing and interpreting those signals," "heuristic methods to characterize and predict market

conditions and corresponding trading opportunities" and use of "algorithmic and machine learning

techniques to determine and refine the relevant heuristics"—are all too vague and ambiguous to

permit Individual Defendants to factually respond; to the extent a response is required, Individual

Defendants deny the allegations in paragraph 40.   Individual Defendants further deny the

allegation that "Jane Street could trade profitably based on these predictions" to the extent the

allegation omits the role of individual trader's skill, particularly as no other trader within Jane

Street was able to match the success Mr. Spottiswood had trading options on exchanges in India.

41.     Individual Defendants state that the alleged "trading strategy" and "heuristics and

methodologies" are too vague and ambiguous to permit Individual Defendants to factually

respond; to the extent a response is required, Individual Defendants deny the allegations in

paragraph 41.

42.     Individual Defendants admit that individuals within Jane Street created a model intended to ███████████████████████████████████ and deny the remainder of paragraph 42.

43.     Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 43 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."

44.     Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 44 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."  Individual Defendants admit that they are aware of ████████ ████████████████████████████████████████████████ ███████████, and denies the remainder of paragraph 44.

45.     Individual Defendants state that the alleged "trading strategy" referred to in paragraph 45 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "trading strategy."  Individual Defendants admit that individuals within Jane Street created a model intended to ███████████████████ in the India options market.

46.     Individual Defendants state that the alleged "Trading Strategy," "heuristics," and "market signals and models" referred to in paragraph 46 are too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy," "heuristics," and "market signals and models."  Individual Defendants admit that Jane Street developed a model

intended to ██████████████████████████████████ in the India options market.

47.     Individual Defendants state that the alleged "Trading Strategy," "latent market inefficiencies," "triggering conditions," and "specific positions" referred to in paragraph 47 are too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy," "latent market inefficiencies," "triggering conditions," or "specific positions." Individual Defendants admit that during 2023, Jane Street continually traded options on exchanges in India.

48.     Individual Defendants state that the alleged "Trading Strategy" and "associated signals and models" referred to in paragraph 48 are too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy" or "associated signals and models." Individual Defendants admit that Jane Street profited significantly from trading in the India options market during 2023 and deny the remainder of paragraph 48.

49.     Individual Defendants state that the alleged "Trading Strategy" and "this effort" referred to in paragraph 49 are too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy" or "this effort."  Individual Defendants admit that at the time of their departures from Jane Street, approximately 20-25 people within Jane Street were involved in Jane Street's trading in the India options market, and deny the remainder of paragraph 49.

50.     Individual Defendants state that the alleged "strategy," "related confidential information," "identification, characterization, validation, and implementation needed" and "latent and valuable opportunity" referred to in paragraph 50 are too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "strategy," "related confidential information," "identification, characterization, validation, and implementation needed" and "latent and valuable opportunity."  Individual Defendants further deny that Jane Street is or ever was the only institutional participant in the India options market or that it was the ███████████████████ ██████████████.

51.     Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51.  Individual Defendants further deny that Jane Street is or ever was the only institutional participant in the India options market or that it was the ███████████████████████████.

52.     Paragraph 52 purports to identify "categories" of alleged trade secrets that were "involved in the development and implementation of the Trading Strategy," which is too vague and ambiguous to permit Individual Defendants to factually respond, and contains no factual allegations to which Individual Defendants can respond.  To the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy," and admit that they are aware of code-named trading strategies ████████████████████████ ████████████████████ but deny that they disclosed, use, or misappropriate them in their work with Millennium.

53.     Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 53 is too vague and ambiguous to permit Individual Defendants to factually respond; to

the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."  Individual Defendants admit that the most profit Jane Street had in one month trading in the India options market while Individual Defendants were at Jane Street was ██████████████████

54.     Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 54 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."  Individual Defendants are also presently unaware of the source or context of the sentence fragments allegedly attributed to Mr. Schadewald and thus lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the statements in paragraph 54.  To the extent a response is required, Individual Defendants deny the allegations of paragraph 54.

55.     Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 55 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."

56.     Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 56 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."  Individual Defendants lack knowledge sufficient to form a belief as to the amount of Jane Street's profits from trading in the India options market from 2018 to 2022.

57.     Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 57 is too vague and ambiguous to permit Individual Defendants to factually respond; to

the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."  Individual Defendants admit that Jane Street's profits from trading in the India options market increased in the second half of 2023 relative to the first half of 2023, averaged ██████████████████████ during August, September, October, and November 2023, ████████████████ in December 2023, and ███████████████ in January 2024.

58.    Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 58 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."

59.    Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 59 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."  Individual Defendants deny that they misappropriated Jane Street's intellectual property or trade secrets.

60.    Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 60 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."  Individual Defendants also lack knowledge sufficient to form a belief as to the truth of the allegations concerning the profitability of Jane Street's trading in the India options market after their departure from Jane Street.  Individual Defendants deny that they have ever traded based on misappropriated Jane Street's confidential information or trade secrets.

61.    Admitted.

62.     Admitted.

63.     To the extent paragraph 63 implies that Schadewald's experience trading in other options markets does not constitute relevant trading experience with respect to the India options market, Schadewald denies paragraph 63.  Schadewald admits that he had not traded in the India options market prior to his employment at Jane Street.

64.     Schadewald admits that he was involved in aspects of researching, developing, and implementing trading strategies at Jane Street, some of which may have been proprietary. Schadewald denies that all such trading strategies were proprietary to Jane Street.

65.     Schadewald admits that, at various points in time, he had access to some of Jane Street's research and analysis and interacted with some of Jane Street's researchers, engineers, and traders on a day-to-day basis and attended senior staff meetings concerning the implementation of some trade strategies.  Schadewald denies the remainder of paragraph 65.

66.     Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 66 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."

67.     Admitted that Schadewald verbally provided notice to Jane Street on February 5, 2024, and otherwise denied.

68.     Schadewald admits that he received the amount alleged and refers to the February 7, 2024 separation letter for a full statement of its contents, and otherwise denied.

69.     Schadewald admits that he executed and agreed to be bound by confidentiality agreements with Jane Street, and refers to those agreements for a full statement of their terms.

Individual Defendants lack knowledge or information sufficient to form a belief as to Jane Street's intentions in respect of those agreements.

70.     Individual Defendants admit the first two sentences of paragraph 70.  Individual Defendants state that the agreements speak for themselves and refer to those agreements for a full statement of their terms; to the extent a response is required, Individual Defendants deny the third sentence of paragraph 70.

71.     Paragraph 71 states a legal conclusion to which no response is required.  To the extent that the response is required, Individual Defendants refer to the Schadewald IP Agreement for a full statement of its terms.

72.     Paragraph 72 states a legal conclusion to which no response is required.  To the extent that the response is required, Individual Defendants refer to the Schadewald IP Agreement for a full statement of its terms.

73.     Admitted.

74.     Individual Defendants admit that paragraph 74 contains an incomplete portion of § 1.1 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

75.     Individual Defendants admit that paragraph 75 contains an incomplete portion of § 1.2 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

76.     Individual Defendants admit that paragraph 76 contains an incomplete portion of § 1.3 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

77.     Individual Defendants admit that paragraph 77 contains an incomplete portion of § 2.1 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

78.     Individual Defendants admit that paragraph 78 contains an incomplete portion of § 2.2 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

79.     Individual Defendants admit that paragraph 79 contains an incomplete portion of § 2.2 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

80.     Individual Defendants admit that paragraph 80 contains an incomplete portion of § 2.4 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

81.     Individual Defendants admit that paragraph 81 contains an incomplete portion of § 2.6 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

82.     Individual Defendants admit that paragraph 82 contains an incomplete portion of § 2.6 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

83.     Individual Defendants admit that paragraph 83 contains an incomplete portion of § 2.6 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

84.     Individual Defendants admit that paragraph 84 contains an incomplete portion of § 4.1 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

85.     Individual Defendants admit that paragraph 85 contains an incomplete and partially inaccurate portion of § 6 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

86.     Individual Defendants admit that paragraph 86 contains an incomplete portion of § 8 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

87.     Individual Defendants admit that paragraph 87 contains an incomplete portion of § 8 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

88.     Individual Defendants admit that paragraph 88 contains an incomplete portion of § 8 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

89.     Individual Defendants admit that paragraph 89 contains a paraphrase of § 12 of the Schadewald IP Agreement and refer to that agreement for a full statement of its terms.

16

90.     Paragraph 90 states a legal conclusion to which no response is required.  To the extent that the response is required, Schadewald refers to the Schadewald IP Agreement for a full statement of its terms.

91.     Admitted.

92.     Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 92 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."

93.     Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 93 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."  To the extent Plaintiff relies on the handpicked fragments of a chat between Schadewald and Jeff Nanney from September 2023, Individual Defendants deny that Schadewald referred to the alleged unidentified "Trading Strategy" therein and refer to the cited document for a full statement of its contents.

94.     Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 94 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."  To the extent Plaintiff relies on the handpicked fragments of a chat between Schadewald and Christopher Roberts from March 29, 2023, Individual Defendants deny that Schadewald referred to the alleged unidentified "Trading Strategy" therein, and refer to the cited document for a full statement of its contents.

95.     Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 95 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."  Individual Defendants admit that Schadewald suggested restricting access to the "PNL" for Jane Street's trading in the India options market, which Jane Street otherwise made broadly available to Jane Street employees who had no need of that information in performing their employment responsibilities.

96.     Admitted.

97.     Individual Defendants admit the first sentence of paragraph 97, and admit that Spottiswood was involved in aspects of researching, developing, and implementing trading strategies at Jane Street, some of which may have been proprietary.  Individual Defendants deny that all such trading strategies were proprietary to Jane Street.  Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 97 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."

98.     Individual Defendants admit that, at various points in time, Spottiswood had access to some of Jane Street's research and analysis and interacted with some of Jane Street's researchers, engineers, and traders on a day-to-day basis, and worked closely with Schadewald on various matters while at Jane Street.  Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 98 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."

99.     Admitted.

100.     Individual Defendants refer to the March 20, 2024 separation letter for a full statement of its contents, and otherwise deny the allegations in paragraph 100.

101.     Admitted, and Individual Defendants refer to the March 20, 2024 e-mail for a full statement of its contents.

102.     Individual Defendants admit the first two sentences of paragraph 102.  The third sentence of paragraph 102 contains a legal conclusion to which no response is required.  To the extent that the response is required, Individual Defendants refer to the agreements for a full statement of their terms.

103.     Paragraph 103 contains a legal conclusion to which no response is required.  To the extent that the response is required, Individual Defendants refer to the Spottiswood IP Agreement for a full statement of its terms.

104.     Paragraph 104 contains a legal conclusion to which no response is required.  To the extent that the response is required, Individual Defendants refer to the Spottiswood IP Agreement for a full statement of its terms.

105.     Admitted.

106.     Individual Defendants admit that paragraph 106 contains an incomplete portion of §§ 2.1, 2.5 of the Spottiswood IP Agreement and refer to that agreement for a full statement of its terms.

107.     Individual Defendants admit that paragraph 107 contains an incomplete portion of §§ 2.7, 6.1 of the Spottiswood IP Agreement and refer to that agreement for a full statement of its terms.

108.    Individual Defendants admit that paragraph 108 contains an incomplete portion of §§ 2.1, 4.1 of the Spottiswood IP Agreement and refer to that agreement for a full statement of its terms.

109.    Individual Defendants admit that paragraph 109 contains an incomplete portion of § 4.8 of the Spottiswood IP Agreement and refer to that agreement for a full statement of its terms.

110.    Individual Defendants admit that paragraph 110 contains an incomplete portion of § 8 of the Spottiswood IP Agreement and refer to that agreement for a full statement of its terms.

111.    Individual Defendants admit that paragraph 111 contains an incomplete portion of §§ 1, 8 of the Spottiswood IP Agreement and refer to that agreement for a full statement of its terms.

112.    Individual Defendants admit that paragraph 112 paraphrases § 10 of the Spottiswood IP Agreement and refer to that agreement for a full statement of its terms.

113.    Paragraph 113 contains a legal conclusion to which no response is required.  To the extent that the response is required, Individual Defendants refer to the Spottiswood IP Agreement for a full statement of its terms.

114.    Admitted.

115.    Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 115 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."

116.    Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 116 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the

alleged "Trading Strategy."  To the extent that Plaintiff relies on the handpicked fragments of a chat between Schadewald and Spottiswood from September 8, 2023, Individual Defendants deny attribution of the quoted words to Spottiswood and deny that those words referred to the alleged unidentified "Trading Strategy," and refer to the cited document for a full statement of its contents.

117.    Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 117 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."  To the extent that Plaintiff relies on the handpicked fragments of a chat between Spottiswood and his former colleagues at Jane Street from March 2023, Individual Defendants deny that those words referred to the alleged unidentified "Trading Strategy," and refer to the cited document for a full statement of its contents.

118.    Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 118 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."  Individual Defendants are also presently unaware of the source or context of the sentence fragment allegedly attributed to Mr. Spottiswood and thus lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning the statements in paragraph 118.  To the extent a response is required, Individual Defendants deny the allegations of paragraph 118.

119.    Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 119 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."

120.     Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 120, but state that they notified Millennium of their obligations under Schadewald IP Agreement and Spottiswood IP Agreement respectively.

121.     Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 121.

122.     Individual Defendants admit that they left Jane Street in the first two months of 2024 to work with Millennium and deny the remainder of paragraph 122.

123.     Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 123 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."

124.     Individual Defendants admit the first sentence of paragraph 124 and that they started with Millennium soon after leaving Jane Street, and deny the remainder of paragraph 124.

125.     Individual Defendants admit that Schadewald negotiated an offer with Millennium prior to accepting it, and provided notice to Jane Street upon resignation, and deny the remainder of paragraph 125.

126.     Individual Defendants deny that Schadewald had "conversations [with] his colleagues at Jane Street" concerning his compensation with Millennium, but admits that in the course of a conversation concerning Schadewald's intention to resign from Jane Street, Sandor Lehoczky of Jane Street asked Schadewald what compensation Millennium had offered, and Schadewald responded with the approximate amount alleged in paragraph 126.

127.     Denied

128.     Denied.

129.     Denied.

130.     Admitted.

131.     Denied.

132.     Denied.

133.     Individual Defendants admit that they and Millennium each received Jane Street's notice letter dated April 3, 2024, and refer to those letters for a full statement of their contents. Individual Defendants deny the remainder of paragraph 133.

134.     Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of Jane Street's allegations concerning its state of mind, and deny that Jane Street made any "reasonable request" or that they have "capitaliz[ed] on Jane Street's intellectual property and trade secrets."

135.     Individual Defendants admit that they, through their counsel, responded to Jane Street on April 5, 2024, and deny the remainder of paragraph 135.

136.     Admitted.

137.     Denied that Individual Defendants' response contained the quoted phrase as alleged in paragraph 137.

138.     Denied.

139.     Schadewald admits that he began work with Millennium in February 2024 and denies the remainder of paragraph 139 of the Amended Complaint.

140.     Denied.

141.     Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of allegations concerning Jane Street's trading profits after their resignation.

142.     Denied.

143.    Denied.

144.    Denied.

145.    Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 145 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."  Individual Defendants admit the remainder of paragraph 145.

146.    Individual Defendants admit that Spottiswood started his work with Millennium shortly after his resignation from Jane Street to work with Schadewald, and deny the remainder of paragraph 146 of the Amended Complaint.

147.    Admitted.

148.    Admitted.

149.    Denied.

150.    Admitted.

151.    Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 151 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."  Paragraph 151 also states a legal conclusion to which no response is required.  To the extent a response is required, Individual Defendants deny paragraph 151.

152.    Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of Jane Street's allegation that Jane Street observed "a new competitor" in the India options market in mid-February, and thus, deny the same.

153.    Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of Jane Street's allegations in paragraph 153, and thus, deny the same.

154.    Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of Jane Street's allegations concerning Jane Street's interactions with a third-party broker, but deny that ███████████████████████ Jane Street's trading.

155.    Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of Jane Street's allegations in paragraph 155, and thus, deny the same.

156.    Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of Jane Street's allegations in paragraph 156, and thus, deny the same.

157.    Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of Jane Street's allegations in paragraph 157, and thus, deny the same.

158.    Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of Jane Street's allegations in paragraph 158, and thus, deny the same.

159.    Denied.

160.    Denied.

161.    Individual Defendants lack information sufficient to form a belief as to the truth of the allegations in paragraph 161, but state that they notified Millennium of their obligations under Schadewald IP Agreement and Spottiswood IP Agreement respectively.

162.    Denied.

163.    Denied.

164.    Individual Defendants state that the alleged "intellectual property and trade secrets" referred to in paragraph 164 are too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations.

165.    Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 165 is too vague and ambiguous to permit Individual Defendants to factually respond;

to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."  Individual Defendants deny the remainder of paragraph 165.

166.    Individual Defendants lack knowledge or information sufficient to form a belief as to the truth of Jane Street's allegations in the first three sentences of paragraph 166, and deny the allegations in the fourth and fifth sentences of paragraph 166.

167.    Denied.

168.    Denied.

169.    Denied.

170.    Denied.

## FIRST CAUSE OF ACTION

171.    Individual Defendants repeat and restate all of the preceding responses as if fully set forth herein.

172.    Paragraph 172 states a legal conclusion to which no response is required; to the extent a response is required, it is denied.

173.    Paragraph 173 states a legal conclusion to which no response is required; to the extent a response is required, it is denied.

174.    Paragraph 174 states a legal conclusion to which no response is required; to the extent a response is required, Individual Defendants refer to the Schadewald IP Agreement for a full statement of its terms.

175.    Denied.

176.    Denied.

177.    Denied.

178.    Denied.

## **SECOND CAUSE OF ACTION**

179.    Individual Defendants repeat and restate all of the preceding responses as if fully set forth herein.

180.    Paragraph 180 states a legal conclusion to which no response is required; to the extent a response is required, it is denied.

181.    Paragraph 181 states a legal conclusion to which no response is required; to the extent a response is required, it is denied.

182.    Paragraph 182 states a legal conclusion to which no response is required; to the extent a response is required, Individual Defendants refer to the Spottiswood IP Agreement for a full statement of its terms.

183.    Denied.

184.    Denied.

185.    Denied.

186.    Denied.

## **THIRD CAUSE OF ACTION**

187.    Individual Defendants repeat and restate all of the preceding responses as if fully set forth herein.

188.    Paragraph 188 states a legal conclusion to which no response is required; to the extent a response is required, it is denied.

189.    Individual Defendants lack information sufficient to form a belief as to the truth of the allegations in paragraph 189, but state that they notified Millennium of their obligations under the Schadewald IP Agreement and Spottiswood IP Agreement respectively.

190.    Denied.

191.    Denied.

192.   Denied.

## FOURTH CAUSE OF ACTION

193.   Individual Defendants repeat and restate all of the preceding responses as if fully set forth herein.

194.   Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 194 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."

195.   Individual Defendants state that the alleged "trading strategy" referred to in paragraph 195 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "trading strategy."

196.   Denied.

197.   Individual Defendants state that the alleged "confidential and proprietary trade secret information" referred to by paragraph 197 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations.

198.   Individual Defendants state that the alleged "confidential and proprietary trade secret information" referred to by paragraph 198 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations.

199.   Individual Defendants state that the alleged "confidential and proprietary trade secret information" referred to by paragraph 199 is too vague and ambiguous to permit Individual

Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations.

200.     Paragraph 200 states a legal conclusion concerning the Schadewald IP Agreement and the Spottiswood IP Agreement to which no response is required; to the extent a response is required, Individual Defendants refer to those agreements for their terms.  Individual Defendants deny the remaining allegations of paragraph 200.

201.     Denied.

202.     Denied.

203.     Denied.

204.     Denied.

205.     Denied.

206.     Denied.

## **FIFTH CAUSE OF ACTION**

207.     Individual Defendants repeat and restate all of the preceding responses as if fully set forth herein.

208.     Individual Defendants state that the alleged "Trading Strategy and related business practices" referred to in paragraph 208 are too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy and related business practices."

209.     Individual Defendants state that the alleged "Trading Strategy" referred to in paragraph 209 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations concerning the alleged "Trading Strategy."

210.     Denied.

211.    Individual Defendants state that the alleged "confidential and proprietary trade secret information" referred to by paragraph 211 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations.

212.    Individual Defendants state that the alleged "Trading Strategy" referred to by paragraph 212 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations.

213.    Individual Defendants state that the alleged "Trading Strategy" referred to by paragraph 213 is too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations.

214.    Paragraph 214 states a legal conclusion concerning the Schadewald IP Agreement and the Spottiswood IP Agreement to which no response is required; to the extent a response is required, Individual Defendants refer to those agreements for their terms.  Individual Defendants deny the remaining allegations of paragraph 214.

215.    Denied.

216.    Denied.

217.    Denied.

218.    Denied.

219.    Denied.

## SIXTH CAUSE OF ACTION

220.    Individual Defendants repeat and restate all of the preceding responses as if fully set forth herein.

221.    Denied.

222.    Denied.

30

223.   Denied.

224.   Denied.

225.   Denied.

226.   Denied.

227.   Denied.

**SEVENTH CAUSE OF ACTION**

228.   Individual Defendants repeat and restate all of the preceding responses as if fully set forth herein.

229.   Denied.

230.   Individual Defendants state that the alleged "confidential information, intellectual property, trade secrets, and business strategies, including the Trading Strategy" referred to in paragraph 230 are too vague and ambiguous to permit Individual Defendants to factually respond; to the extent a response is required, Individual Defendants deny the allegations.

231.   Denied.

232.   Denied.

233.   Denied.

234.   Denied.

235.   Denied.

236.   Denied.

**VICARIOUS LIABILITY / RESPONDEAT SUPERIOR**

237.   Individual Defendants repeat and restate all of the preceding responses as if fully set forth herein.

238.    Paragraph 238 states a legal conclusion to which no response is required; to the extent a response is required, Individual Defendants deny the allegation that they committed any tortious acts.

## JOINT AND SEVERAL LIABILITY

239.    Individual Defendants repeat and restate all of the preceding responses as if fully set forth herein.

240.    Denied.

Individual Defendants deny that Plaintiff is entitled to any of the relief requested in the Amended Complaint.

## AFFIRMATIVE DEFENSES

Individual Defendants have not knowingly and intentionally waived any applicable affirmative defenses and reserve the right to amend their answer and affirmative defenses to raise affirmative defenses in addition to those below as they become known to Individual Defendants through discovery in this matter. Without prejudice to the denials set forth herein, and without admission that they carry the burden of proof on any of the matters set forth below, Individual Defendants asserts the following defenses that preclude and/or bar, in whole or in part, claims asserted by Jane Street in the Amended Complaint:

1. Jane Street has failed to state a claim upon which relief may be granted.

2. Jane Street has failed to identify and describe its alleged trade secrets and confidential information with sufficient specificity or particularity.

3. Jane Street's alleged trade secrets and confidential information are vague and ambiguous and therefore cannot constitute trade secrets or confidential information.

4. Jane Street's alleged trade secrets and confidential information are readily ascertainable; generally known to the public, and/or to persons in the industry in which Jane Street does business; were independently developed by or for Individual Defendants and/or Millennium; and/or constitute general knowledge and skills or experience of Individual Defendants.

5. Jane Street has failed to take adequate steps to protect its alleged trade secrets and/or confidential information, including by failing to implement or enforce confidentiality policies, permitting employees and/or interns to access alleged trade secret or confidential information not necessary to the scope of their responsibilities, and by allowing disclosure or disclosing alleged trade secret or confidential information to third parties or the public.

6. Jane Street's claims are barred by the doctrines of waiver and estoppel in respect of its dealings with Individual Defendants and/or steps taken to protect its alleged trade secrets and/or confidential information.

7. Jane Street has failed to sufficiently allege that Individual Defendants disclosed and/or inappropriately used any alleged trade secrets and/or confidential information.

8. Jane Street has failed to sufficiently allege that Individual Defendants acquired, accessed, viewed, or downloaded any alleged trade secrets and/or confidential information by improper means.

9. Jane Street engaged in inequitable conduct and/or acted with unclean hands, including with respect to its dealings with Individual Defendants and trading activities.

10. Jane Street is prosecuting its claims in bad faith and for an improper purpose, including to prevent fair competition in markets in which Jane Street trades, to interfere with Individual Defendants' current employment, and to chill current employees' prospective ability to obtain employment with competitors.

11. Jane Street's cause of action for unjust enrichment is duplicative of its breach of contract and tortious interference claims.

12. Jane Street's claims are barred by a failure of consideration in respect of the Schadewald IP Agreement and Spottiswood IP Agreement.

13. The scope of confidential information under the Schadewald IP Agreement and Spottiswood IP Agreement are so ambiguous, indefinite, and undefined as to be unenforceable.

14. Jane Street's claims are barred by its failure to perform under or satisfy conditions precedent of the Schadewald IP Agreement and/or Spottiswood IP Agreement.

15. Jane Street's claims are barred by the terms of Jane Street's agreements with Schadewald and/or Spottiswood, including provisions acknowledging their extensive prior relevant experience and provisions specifying that Individual Defendants' general skills, knowledge and experience, as well as information publicly available, generally known, or readily ascertainable from public sources, as well as information disclosed by third parties, as well as information known to Individual Defendants prior to their employment by Jane Street do not constitute confidential information.

16. Jane Street has not sustained any injury or damages as a result of any act or conduct by Individual Defendants.

17. Jane Street's claims are barred, in whole or in part, by its failure to mitigate damages.

18. Jane Street's claims are barred by the relevant statutes of limitations.

19. Jane Street's claims are barred by laches.

20. The damages Jane Street seeks, if awarded, would result in unjust enrichment to Jane Street.

21. Jane Street's claims for punitive damages are barred on the grounds that Individual Defendants' actions were not fraudulent, malicious, oppressive, wanton, or reckless, and Individual Defendants acted in good faith.

## **INDIVIDUAL DEFENDANTS' PRAYER FOR RELIEF**

Individual Defendants respectfully request that the Court:

I. Dismiss Jane Street's Amended Complaint in its entirety, with prejudice.

II. Find that Jane Street brought its trade secret misappropriation causes of action in bad faith and award Individual Defendants their attorneys' fees and costs under 18 U.S.C. § 1836.

III.    Find that Individual Defendants were the prevailing parties in this action and award Individual Defendants their attorneys' fees and costs under the Schadewald IP Agreement and the Spottiswood IP Agreement.

IV.    Award such other and further relief as this Court deems just and proper.

## COUNTERCLAIMS

Defendants/Counterclaim-Plaintiffs Douglas Schadewald ("Schadewald") and Daniel Spottiswood ("Spottiswood"), by and through their undersigned counsel, hereby counterclaim against Plaintiff/Counterclaim-Defendant Jane Street Group, LLC ("Jane Street") as follows:

## NATURE OF THE CLAIMS

1.      Schadewald and Spottiswood assert these claims to recover their attorney's fees, costs, and expenses in connection with this action from Jane Street pursuant to Section 2 of the Defend Trade Secrets Act and their contracts with Jane Street.

2.      Schadewald and Spottiswood are traders who formerly worked for Jane Street. Over roughly half a decade, Schadewald and Spottiswood and the teams they led made more than ███████████ trading for Jane Street.  Schadewald and Spottiswood's consistent success—first, trading S&P 500 options, and then trading options on exchanges in India—made them two of Jane Street's top traders.

3.      At the end of 2023, following the most successful year of their respective careers at Jane Street, Schadewald and Spottiswood were disappointed by Jane Street's decisions on their compensation and opportunities for advancement.  As a result, Schadewald and Spottiswood left Jane Street and found positions as a senior portfolio manager and an associate portfolio manager, respectively, with an affiliate of Millennium Management LLC ("Millennium").

4.      In response to Schadewald and Spottiswood finding employment at another firm, Jane Street initiated this proceeding.  Jane Street filed a complaint against Schadewald and Spottiswood on April 12, 2024, seeking temporary and injunctive relief as well as damages.  The complaint, which was covered in the press before Schadewald and Spottiswood even received it from Jane Street, levies serious accusations against Schadewald and Spottiswood and very publicly calls into question their honesty and integrity.

5.      Four days later, on April 16, Jane Street filed an emergency motion with this Court seeking a temporary restraining order to impede Schadewald and Spottiswood's trading with Millennium.  The parties submitted four witness declarations, eighteen exhibits, three legal briefs, and held oral argument before the Court on April 19.

6.      The Court denied Jane Street's motion for a temporary restraining order in its entirety.  Schadewald and Spottiswood therefore prevailed against Jane Street with respect to the emergency relief Jane Street demanded.

7.      On April 26, Jane Street abandoned its demand for any other form of injunctive relief, unilaterally amending its complaint to withdraw any and all demands for injunctive relief against Schadewald and Spottiswood, including its demand for a permanent injunction. Schadewald and Spottiswood have therefore also prevailed with respect to all injunctive relief Jane Street sought when it initiated this proceeding.

8.      Jane Street's claims are meritless, but they send a message.  Jane Street's most valuable employees will understand that, should they take a position with a competitor, they must account for the likelihood that Jane Street will sue them—even if they never agreed to any non-compete agreement.  Jane Street's meritless claims also chill Schadewald's and Spottiswood's ability to perform their job for their new employer and compete in the markets in which Jane Street operates.  Jane Street's claims are brought in bad faith.

9.      Schadewald and Spottiswood demand their reasonable attorney's fees from Jane Street pursuant to the Defend Trade Secrets Act of 2016 and their costs and expenses (including attorney's fees) from Jane Street pursuant to their contracts with Jane Street.

## PARTIES

10.      Counterclaim-Plaintiff Schadewald is a natural person.

11.      Counterclaim-Plaintiff Spottiswood is a natural person.

38

12.     Counterclaim-Defendant Jane Street Group, LLC, is a trading firm with its principal place of business in New York, New York.  Jane Street is a Delaware limited liability company.

### JURISDICITON AND VENUE

13.     This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331 and 1367 because this action arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.*, and because the state law counterclaims are part of the same case or controversy as the federal law claims and counterclaims in this action.

14.     This Court also has subject matter jurisdiction because these counterclaims arise out of the same transactions or occurrences that are the subject of Jane Street's claims.

15.     Personal jurisdiction over Jane Street is proper because it has consented to the personal jurisdiction of this Court by commencing this action as set forth in its Amended Complaint. This Court also has general personal jurisdiction over Jane Street because Jane Street's principal place of business is in New York.  Additionally, Jane Street submitted to the personal jurisdiction of the courts of the state of New York and the United States District Court for the Southern District of New York, including by commencing a Consolidated Court Proceeding in this Court. Schadewald IP Agreement §§ 9, 10.

16.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because Jane Street's principal place of business is within this District, because a substantial part of the events giving rise to the claims against Jane Street occurred within this District, and because Jane Street initiated this action this Court.  Additionally, through its agreement with Schadewald, Jane Street consented to venue in this Judicial District, including by commencing a Consolidated Court Proceeding in this Court.  Schadewald IP Agreement §§ 9, 10.

## FACTS

17.     Schadewald was employed by Jane Street from October 1, 2018, to February 5, 2024.

18.     Spottiswood held a college internship at Jane Street during the summer of 2018 and was subsequently employed by Jane Street from August 17, 2020, to February 23, 2024.

19.     Jane Street and Schadewald entered into the Confidentiality and Intellectual Property Agreement ("Schadewald IP Agreement") on or about December 22, 2023.

20.     In the Schadewald IP Agreement, Jane Street agreed that "in any action brought pursuant to this Section 8," concerning actions for injunctive relief, the prevailing party is entitled to recover their costs and expenses:

> [Schadewald] and [Jane Street] further agree that the prevailing party in any action brought pursuant to this Section 8 shall be entitled to recover all costs and expenses (including attorneys' fees) incurred in connection with the enforcement of its or their rights hereunder. If a party prevails on some, but not all issues, the court shall apportion such fees and costs between the parties.

Schadewald IP Agreement § 8.

21.     Jane Street and Spottiswood entered into the Confidentiality and Intellectual Property Agreement ("Spottiswood IP Agreement") in August 2020.

22.     In the Spottiswood IP Agreement, within a section titled "Enforcement," Jane Street agreed that the prevailing party is entitled to recover their costs and expenses:

> [...] Employee hereby agrees to indemnify and hold harmless the Company from and against any damages incurred by the Company as assessed by a court of competent jurisdiction as a result of any breach of this Agreement by Employee. The prevailing party shall be entitled to reasonable attorney's fees and costs, whether or not such costs are allowable as costs under applicable law. If a party prevails on some, but not all issues, the court shall apportion such fees and costs between the parties.

Spottiswood IP Agreement § 8.

23.     Schadewald and Spottiswood had significant success while employed by Jane Street.  They and the teams they led generated profits of approximately ██████████████ for Jane Street.  In December 2022, ████████████████████████████████████████ ████████████████████████████████████████.  When Schadewald departed, Jane Street's *de facto* CEO texted Schadewald to tell him that "your impact on the firm was huge and I don't know how we can fill the gap left."

24.     In early 2023, Schadewald and Spottiswood became involved in Jane Street's India options trading.  Spottiswood moved to Hong Kong to focus primarily on this business.  Over the course of 2023, Schadewald and Spottiswood led the growth of this business from a relatively small operation at the beginning of the year to a much larger, much more profitable operation for Jane Street by the end of the year.

25.     2023 was the most successful year of Schadewald's and Spottiswood's careers at Jane Street.  But Jane Street, as a business philosophy, ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████.  Schadewald and Spottiswood were naturally disappointed with Jane Street's compensation decisions delivered during their 2023 year-end performance reviews and felt that they were not given a clear path to advancement within Jane Street and that their contributions to the firm were being undervalued.

26.     Schadewald and Spottiswood each began interviewing with peer trading firms with philosophies that would better align with their goals.  Spottiswood had never agreed to any non-compete agreement that would prohibit him from looking elsewhere for immediate employment in the same markets that he traded in while at Jane Street.  Schadewald, as a more senior employee,

41

had previously agreed to a noncompete agreement; by the terms of that agreement it expired in 2022.  Before Schadewald left Jane Street, he confirmed with Jane Street's head of Human Resources that his noncompete obligations had sunsetted and were no longer in effect.

27.     Both Schadewald and Spottiswood were therefore fully within their rights to obtain employment at another firm and trade in the same markets that they had traded at Jane Street.

28.     Schadewald and Spottiswood began work with Millennium on February 5 and February 28, 2024, respectively.

29.     Schadewald and Spottiswood's departure to work for a competitor presented Jane Street with a dilemma.  Schadewald and Spottiswood were responsible for vast profits to Jane Street and would not be easily replaced, as its CEO had acknowledged.  Not only did Jane Street now face additional competition in the relevant market from highly skilled traders, it faced the threat of additional employee defections.  Jane Street markets itself as being unique in not requiring its employees to sign noncompete agreements; at the same time, ███████████████████ █████████████████████████████████.  On information and belief, Jane Street was concerned that it would be faced with the threat of similar departures from high-performing traders unless Jane Street gave them a new reason not to leave Jane Street for a competitor firm.

30.     So on April 12, 2024, Jane Street filed a complaint against Schadewald, Spottiswood, and Millennium, alleging theft of Jane Street's purported trade secrets.  Jane Street's complaint is light on substance but heavy on redactions (which it has since insisted that Schadewald and Spottiswood apply to their filings as well) presumably to create the public misimpression that Schadewald and Spottiswood, together with Millennium, might plausibly have taken Jane Street's intellectual property.  Jane Street's most fundamental allegations—that Schadewald and Spottiswood misappropriated Jane Street's trade secrets, and that they delivered them to Millennium for

a payoff—are mere "information and belief" allegations.  Am. Compl. ¶¶ 3, 4, 11, 60, 128, 129, 138, 149, 160, 169, 175, 183, 190, 205, 218.

31.     On April 16, 2024, Jane Street filed a motion for a temporary restraining order against Schadewald, Spottiswood, and Millennium.  The Court considered the parties' four fact declarations, 18 exhibits, and three legal briefs and heard oral argument on April 19, 2024.  At the conclusion of the hearing, the Court denied Jane Street's motion for a temporary restraining order in its entirety.  Schadewald and Spottiswood therefore were the prevailing parties with respect to Jane Street's demand for emergency injunctive relief.

32.     Jane Street's submissions in support of its motion described the alleged trade secret with even less specificity than its already vague complaint.  Where Jane Street's complaint at least made one oblique reference to seven code-named strategies—none of which Schadewald or Spottiswood employ in their work with Millennium—its motion papers and supporting fact declaration made no mention of these code-named strategies at all, and instead described the alleged trade secret in terms that could apply to almost any trading in options on exchanges in India.  And despite claiming in open court that Jane Street *could* describe the trade secret, Jane Street, now a month later, still refuses to do so.  Jane Street's persistent refusal to identify the supposed trade secret leads to only one conclusion—Jane Street cannot identify any trade secret that Schadewald and Spottiswood allegedly misappropriated.

33.     On April 26, 2024, one week after the Court's decision denying Jane Street's motion for a temporary restraining order, Jane Street amended its complaint to withdraw its demand for any further injunctive relief, including its prior demand for a permanent injunction.  Jane Street abandoned its demand so that it could forestall trial on its own claims, which the Court had set for

July 2024.  Schadewald and Spottiswood have therefore entirely prevailed on Jane Street's demand for injunctive relief.

34.     Jane Street's delay is telling.  The objectives of chilling competition in the markets Schadewald and Spottiswood trade in, chilling competition among firms for skilled employees, and sending a message to high-skilled employees that departures to a competitor will be met with legal action even in the absence of any noncompete agreement—are better served by leaving a pending lawsuit hanging over Schadewald and Spottiswood's head than by holding a trial that will fully and finally adjudicate the claims against Schadewald and Spottiswood.  Jane Street's claims against Schadewald and Spottiswood—based on a nonexistent trade secret and irresponsible and unfounded allegations of misappropriation—are quintessential bad faith.

### FIRST CAUSE OF ACTION

**Declaration of Bad Faith Claim of Misappropriation
Under Defendant Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(D)
(by Schadewald and Spottiswood Against Jane Street)**

35.     Schadewald and Spottiswood repeat and reallege each and every allegation set forth above as if set forth at length herein.

36.     On April 12, 2024, Jane Street initiated this proceeding asserting, *inter alia*, claims against Schadewald and Spottiswood for misappropriation of trade secrets under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq*.

37.     As described above, Jane Street's claims of misappropriation against Schadewald and Spottiswood are meritless and brought in bad faith, are without factual support, and are prosecuted for illegitimate reasons.

38.     Jane Street's baseless allegations in support of its claim of trade secret misappropriation have harmed Schadewald and Spottiswood by tarnishing their reputations and harming

their current business.  Defending against these baseless claims, including Jane Street's unmerito-rious motion for a temporary restraining order, has imposed and will continue to impose substantial costs, including reasonable attorney's fees.

39.     Schadewald and Spottiswood are entitled to a declaratory judgment under 28 U.S.C. § 2201 that Jane Street has brought its trade secret misappropriation claims in bad faith. As the prevailing parties, Schadewald and Spottiswood are entitled to an award of their reasonable attorney's fees incurred in defending against Jane Street's baseless claims, as provided by 18 U.S.C. § 1836(b)(3)(D).

### SECOND CAUSE OF ACTION

**Declaration of Prevailing Party Under Schadewald IP Agreement
And Entitlement To Costs And Expenses, Including Attorney's Fees
(By Schadewald Against Jane Street)**

40.     Schadewald repeats and realleges each and every allegation set forth above as if set forth at length herein.

41.     The Schadewald IP Agreement is a valid contract between Schadewald and Jane Street containing an enforceable prevailing parties provision.

42.     Schadewald has fully performed his obligations under the Schadewald IP Agreement.

43.     As described above, the Schadewald IP Agreement provides that "the prevailing party in any action brought pursuant to this Section 8 shall be entitled to recover all costs and expenses (including attorneys' fees) incurred in connection with the enforcement of its rights or their rights hereunder."

44.     Jane Street's baseless allegations in support of this action have harmed Schadewald by tarnishing his reputation and harming his current business.  Defending against these baseless

claims, including Jane Street's unmeritorious motion for a temporary restraining order, has imposed and will continue to impose substantial costs, including reasonable attorney's fees.

45.     Schadewald is entitled to a declaratory judgment under 28 U.S.C. § 2201 that Schadewald is the prevailing party under the Schadewald IP Agreement with respect to Jane Street's claims against him in this action.  As the prevailing party, Schadewald is entitled to an award of all costs and expenses, including attorney's fees, incurred in connection with defending against Jane Street's baseless claims.

### THIRD CAUSE OF ACTION

**Declaration of Prevailing Party Under Spottiswood IP Agreement**
**And Entitlement To Costs And Expenses, Including Attorney's Fees**
**(By Spottiswood Against Jane Street)**

46.     Spottiswood repeats and realleges each and every allegation set forth above as if set forth at length herein.

47.     The Spottiswood IP Agreement is a valid contract between Spottiswood and Jane Street containing an enforceable prevailing parties provision.

48.     Spottiswood has fully performed his obligations under the Schadewald IP Agreement.

49.     As described above, the Spottiswood IP Agreement provides that "[t]he prevailing party shall be entitled to reasonable attorney's fees and costs, whether or not such costs are allowable as costs under applicable law."

50.     Jane Street's baseless allegations in support of this action have harmed Spottiswood by tarnishing his reputation and harming his current business.  Defending against these baseless claims, including Jane Street's unmeritorious motion for a temporary restraining order, has imposed and will continue to impose substantial costs, including reasonable attorney's fees.

51.     Spottiswood is entitled to a declaratory judgment under 28 U.S.C. § 2201 that Schadewald is the prevailing party under the Spottiswood IP Agreement with respect to Jane Street's claims against him in this action.  As the prevailing party, Spottiswood is entitled to an award of all costs and expenses, including attorney's fees, incurred in connection with defending against Jane Street's baseless claims.

## PRAYER FOR RELIEF

WHEREFORE, Defendants-Counterclaim Plaintiffs Schadewald and Spottiswood respectfully request that the Court enter judgment in their favor and against Jane Street as follows:

I.      For a judgment that Jane Street brought its trade secret misappropriation causes of action in bad faith under 18 U.S.C. § 1836, and that as prevailing parties under the DTSA, Schadewald and Spottiswood are entitled to an award of their reasonable attorney's fees incurred in defending against Jane Street's bad faith claims of trade secret misappropriation;

II.     For a judgment that Schadewald is the prevailing party in this action pursuant to the Schadewald IP Agreement, and that as the prevailing party, Schadewald is entitled to an award of all costs and expenses incurred in connection with defending Jane Street's claims in this action;

III.    For a judgment that Spottiswood is the prevailing party in this action pursuant to the Spottiswood IP Agreement, and that as the prevailing party, Spottiswood is entitled to an award of all costs and expenses incurred in connection with defending Jane Street's claims in this action;

IV.     Award such other and further relief the Court deems just and proper.

Dated:      May 10, 2024                    **ELSBERG BAKER & MARURI PLLC**
            New York, New York

                                            By:     */s/ Rollo C. Baker*
                                                    Rollo C. Baker
                                                    David Elsberg
                                                    Vivek Tata
                                                    Brian Campbell
                                                    Nicholas Martin

                                            *Attorneys for Defendants Douglas*
                                            *Schadewald and Daniel Spottiswood*