**By ECF**

Hon. Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, New York 10007

>   Re;  *Jane Street Group, LLC v. Millennium Management LLC, at al.*, **No. 1:24-cv-02783-PAE – Proposed Protective Order**

Dear Judge Engelmayer:

We write on behalf of defendants Douglas Schadewald and Daniel Spottiswood (the "Individual Defendants") and Millennium Management LLC ("Millennium," and, together with the Individual Defendants, "Defendants") in the above-referenced action with respect to the protective order for this case, which the Court ordered the parties to file by May 22, 2024.  D.I. 88.  As described herein, the parties have been unable to agree on one aspect of the proposed protective order and respectfully seek the Court's assistance.  Defendants' proposed protective order is attached hereto as Exhibit A.

Until an hour before this letter was due to be filed, the parties had agreed on a two-tiered protective order but disagreed on who would be permitted access to information designated with the higher tier.  At 10:49p.m., Jane Street sent a new, three-tiered proposal that does nothing to mitigate the prejudice of their proposal and actually widens the gap between the parties.  Far from adopting standard confidentiality provisions typical to this jurisdiction, as the Court suggested at the parties' last conference (May 16, 2024 Conference Tr. at 14:21-15:10), Jane Street's three-tiered proposal is a bespoke and uncommonly prejudicial approach to what should be a straightforward exercise.

Defendants believe that certain limited client representatives, including the Individual Defendants, should be permitted access to all documents and information produced in this case for purposes of conducting the litigation.  Plaintiff Jane Street seeks to entirely forbid the Individual Defendants' and Millennium's access to huge swaths of discovery that ***only Jane Street*** will produce by incorporating a third tier of "outside counsel only."  Jane Street's eleventh-hour proposal defines the outside-counsel-only tier broadly to include any information that "describes trade secrets" or "contains competitively sensitive … business information related to trade secrets."  It is difficult to fathom what information is not subsumed by this definition given Jane Street's expansive and amorphous descriptions of its alleged "trade secrets" to date.  *See* D.I. 28 ¶ 46 ("As far as I can tell, the 'Trading Strategy' they claim would cover <u>any type of options trading in India</u>.").  Any pretense that Jane Street would employ the higher tier designation judiciously has already been laid to rest—Jane Street has confirmed that it intends to use its highest designation even for its Court-ordered (D.I. 88) disclosure of the trade secrets at issue in this case, such that the Individual Defendants and Millennium's designees would not even be put on notice of what they're litigating over.  Moreover, since only Jane Street has repeatedly taken incredibly overexpansive positions, discovery from Millennium would presumptively be subject to a lower standard of protection.

***The Individual Defendants***.  Jane Street's request to prohibit Individual Defendants from accessing discovery information—including information as critical as the very trade secret(s) they are accused of having taken—serves no legitimate purpose, deprives Individual Defendants of fair notice and

1

their ability to effectively defend this case, and impinges on their outside counsel's ethical obligation to inform and advise their clients.

Jane Street initiated this action alleging a vague "Trading Strategy" that, as its counsel professed to the Court, is within Individual Defendants' brains by virtue of their work for Jane Street. D.I. 67 at 7:10-21 ("[A]s a result of them being involved in that group of people and this particular project, they know what the strategy is"), and 19:24-25:14 (trading strategy was "in his brain, this is not something he needed to walk out the door with and steal some code. In his brain, he knew what signals to trade on."). Jane Street's claims are entirely founded on this premise. Now, Jane Street makes the senseless assertion that the very trade secrets that already exist "in [Individual Defendants'] brain[s]" are too competitively sensitive to be disclosed to Individual Defendants. Nor is there any competitive sensitivity that would justify excluding Individual Defendants from anticipated fact discovery from Jane Street concerning the existence or contours of the alleged trade secret, or other matters. As Plaintiff acknowledges, they were intimately involved in (and in fact, led) the group responsible for Jane Street's trading in this market.[1]

Jane Street's position also deprives Individual Defendants of fair notice. During the hearing on its motion for a temporary restraining order, Jane Street's counsel offered a specific definition of the trade secrets at issue so that Defendants would have fair notice. D.I. 67 at 21:19-22:1 ("THE COURT: In other words, if [the TRO motion] were granted, you would presumably under seal provide something with much more definition so that there would be fair notice. MS. BROWN: We could do that, your Honor."). Now, Jane Street would deprive Individual Defendants of that information. Notice is no idle concern—without disclosure, "[t]he defendant has no way to know—short of guessing—exactly what information is claimed as a trade secret, and thus has no way of arguing that such information was publicly available or not entitled to trade secret protection." *Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 270 (S.D.N.Y. 2021). Individual Defendants' ability to defend themselves is prejudiced if they are unable to provide counsel with their own factual understanding in respect of the accusations being leveled against them and the information being disclosed by their former employer in discovery[2]. If Jane Street has its way, the Individual Defendants will be prevented from informed participation in assisting counsel, preparing a defense and directing strategy. *See Water Tree Ventures, LLC v. Giles*, 2019 WL 13162408, at *3-4 (N.D. Fla. Apr. 26, 2019) ("It is unreasonable for Plaintiff to allege Defendants misappropriated information, then deny Defendants access to the information allegedly misappropriated."). In short, Jane Street's proposal would relegate Individual Defendants to spectators in their own defense.

---

[1] Counsel for Jane Street has raised the possibility that source code might be disclosed and could justify a tier that excludes Individual Defendants. Defendants do not yet know whether this will be an area of discovery or will justify exclusion, but the parties jointly (or Jane Street individually) could seek a modification to this protective order should it become necessary.

[2] Before 11p.m. on the night of filing, Jane Street had agreed that a person who had previously "received, possessed, or knew the information" designated as attorneys' eyes only would be permitted to access it. Ex. A ¶ 14(g). Apparently recognizing the hypocrisy of agreeing that a person could receive information they previously "knew" while simultaneously seeking to keep Individual Defendants in the dark as to the alleged trade secrets at issue, Jane Street's eleventh-hour proposal reneges on that agreement and deletes the "knew" clause.

Finally, Jane Street's sweeping exclusion of Individual Defendants from accessing any information it deems to be competitively sensitive inhibits counsel's ability to effectively keep their clients informed and take their direction concerning the litigation. Rules of Professional Conduct 1.2 and 1.4 require counsel to advise their clients sufficiently to allow the client to "make informed decisions" regarding the case, to "abide by a client's decisions concerning the objectives" and "consult with the client as to the means by which they are to be pursued." Disclosure of core information to Individual Defendants is essential to their outside counsel's ability to conduct the representation. *See Gryphon Domestic VI, LLC v. APP Int'l Fin. Co., B.V.*, 28 A.D.3d 322, 326 (2006) (Information "should not be sealed simply to enable one of the parties to retain an advantage … when such sealing prevents counsel from fully discussing with their clients all of the relevant information in the case so as to properly formulate a defense.").

*Millennium*. Access to confidential or highly confidential information may not be "denied solely because of counsel's in-house status." *U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1467 (Fed. Cir. 1984). Rather, the court must first look to whether in-house counsel is involved in "competitive decisionmaking" and then "balance the risk of inadvertent disclosure against the requesting party's need for such information." *See Travel Leaders Grp. Holdings, LLC v. Thomas*, No. 24-CV-1208-LAP, 2024 WL 2058436, at *2 (S.D.N.Y. May 8, 2024) (holding that denying in-house counsel access to highly confidential information "would stymy her ability to consider information relevant to the formulation of case strategy and the facilitation of settlement discussions, and it would impose an unreasonable burden on [party] and its counsel"). A limited number of in-house lawyers are routinely granted access to highly confidential information, even in trade-secret cases in this district. See, e.g., *Nielsen Consumer LLC v. Circana Grp. LP*, No. 1:22-cv-3235-JPO, Dkt. No. 199, at *5 (Nov. 8, 2023).

Here, in a highly complex trade-secret case, designated in-house counsel for Millennium must be given access to Jane Street's highly confidential information, including the identity of Jane Street's trade secret. In order to defend itself against Jane Street's accusations, Millennium's in-house lawyers must be informed of what those accusations actually are, so that Millennium can fruitfully formulate its case strategy and facilitate settlement discussions. Millennium's in-house counsel are not involved in competitive decision-making or trading decisions for Millennium, and any remote theoretical risk of inadvertent disclosure is heavily outweighed by Millennium's need to have its in-house counsel fully involved in the case.

In addition to two designated in-house counsel, Millennium also needs an operational person to assist in the defense since Millennium's in-house lawyers are, by definition, not traders. Thus, Millennium also requests access to highly confidential information, including Jane Street's trade-secret disclosure, by one business professional who is not involved in competitive decision making or trading options in India. Disclosure of designated "ATTORNEY'S EYES ONLY" information to non-lawyer employees is a facet of numerous protective orders in this district, including in cases involving "highly sensitive non-public information" and "trade secrets." *See, e.g., Patriarch Partners Agency Services, LLC v. Zohar CDO 2003-1*, No. 16-cv-4488-VM-KHP, Dkt. No. 76, at *3 (S.D.N.Y. Feb. 13, 2017). Here, this limited disclosure will greatly assist counsel in parsing the language of Jane Street's trade-secret disclosure and comparing that disclosure with Millennium's trading data. Without this synergy, it will be difficult for Millennium to assess its risk and fruitfully prepare its case. Thus, Millennium proposes that each side permit two in-house counsel and one business professional to view highly confidential, attorney's eyes only information, subject to the "Acknowledgement and Agreement to Be Bound" by the protective order.

Respectfully submitted,

| | |
|---|---|
| <u>/s/ Rollo C. Baker</u><br>Rollo C. Baker<br>ELSBERG BAKER & MARURI PLLC<br>One Penn Plaza, Suite 4015<br>New York, NY 10119<br>rbaker@elsberglaw.com<br><br>*Counsel for Defendants*<br>*Douglas Schadewald and*<br>*Daniel Spottiswood* | <u>/s/ Andrew J. Levander</u><br>Andrew J. Levander<br>DECHERT LLP<br>1095 Avenue of the Americas<br>New York, NY 10036<br>andrew.levander@dechert.com<br><br>*Counsel for Defendant*<br>*Millennium Management LLC* |

cc. Counsel of Record via ECF