UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE STREET GROUP, LLC,<br><br>                          Plaintiff,<br><br>                -v-<br><br>MILLENNIUM MANAGEMENT LLC, *et al.*,<br><br>                          Defendants. | 24 Civ. 2783 (PAE)<br><br>OPINION & ORDER |

PAUL A. ENGELMAYER, District Judge:

Plaintiff Jane Street Group, LLC ("Jane Street") moves to strike several of defendants'

affirmative defenses under Federal Rule of Civil Procedure 12(f).  For the reasons that follow,

the Court grants Jane Street's motion in part and denies it in part.

I.       **Background**

A.       **Factual Background**

The Court recounts only the limited background necessary to resolve the pending motion.

Jane Street is a global proprietary trading firm that specializes in quantitative trading

strategies.  In 2023, after years of research, Jane Street developed a proprietary trading strategy

(the "Trading Strategy") for trading options in India. Dkt. 64 ("First Amended Complaint" or

"FAC") ¶¶ 56–57.  Jane Street alleges that the Trading Strategy is highly confidential and

provides it with a significant competitive advantage in the marketplace. *See id.* ¶¶ 52–60.

Defendants Douglas Schadewald and Daniel Spottiswood (the "individual defendants")

are former Jane Street employees who were involved in researching, developing, and

implementing Jane Street's proprietary trading strategies, including the strategy at issue in this

case. *Id.* ¶¶ 61, 66, 96, 98.  Both Schadewald and Spottiswood signed Confidentiality and

Intellectual Property Agreements (the "IP Agreements") with Jane Street.  Each agreement

contains provisions aimed at protecting Jane Street's confidential information. *Id.* ¶¶ 70–89, 106–12.

In February 2024, Schadewald and Spottiswood left Jane Street to join defendant Millennium Management LLC ("Millennium"), a competitor firm. *Id.* ¶ 124. Shortly thereafter, Jane Street claims, it came upon evidence indicating that defendants were using Jane Street's Trading Strategy. *See id.* ¶¶ 140–48. Jane Street alleges that its profits from the Trading Strategy have declined precipitously as a result of defendants' trades. *See id.* ¶ 60.

### B.    Procedural History

On April 10, 2024, Jane Street commenced this action, initially seeking both injunctive relief and monetary damages. Dkt. 1. Jane Street asserted claims for (1) violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 *et seq.*, (2) misappropriation of trade secrets under New York law, (3) breach of contract against the individual defendants, (4) tortious interference with contract against Millennium, (5) unjust enrichment, and (6) unfair competition.

On April 19, 2024, after a hearing, the Court denied Jane Street's application for a temporary restraining order. Dkt. 67 (transcript). On April 26, 2024, Jane Street filed the FAC, withdrawing its request for injunctive relief but maintaining its claims for monetary damages. Dkt. 64.

On May 10, 2024, defendants filed Answers with affirmative defenses and counterclaims. Dkts. 72 (Millennium), 74 (individual defendants). On May 31, 2024, Jane Street moved to dismiss defendants' counterclaims and to strike several affirmative defenses. Dkt. 92. On June 3, 2024, the Court *sua sponte* granted defendants leave to amend their affirmative defenses and set a briefing schedule for any renewed motion to strike. Dkt. 95.

On June 10, 2024, defendants filed amended affirmative defenses. Dkts. 103 ("Millennium Aff. Def."), 106 ("Individual Defendants Aff. Def."). Millennium maintained all

nine of its original affirmative defenses; the individual defendants maintained 17 of their 21 original defenses. These defenses include, among others, unclean hands, waiver, estoppel, unenforceability of contracts, and unjust enrichment.

On June 19, 2024, Jane Street moved to strike several of the amended affirmative defenses. Dkt. 119 ("Pl. Br."). On June 26, 2024, defendants opposed Jane Street's motion. Dkt. 131 ("Def. Br."). On July 1, 2024, Jane Street filed a reply. Dkt. 137 ("Pl. Reply Br.").

The case is currently proceeding on an expedited discovery schedule, with substantial completion of document production due by July 31, 2024, and the close of fact discovery set for September 30, 2024. Dkt. 88.

## II.    Applicable Legal Standards

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Federal courts have discretion in deciding whether to grant motions to strike." *Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 423 (S.D.N.Y. 2019). "Motions to strike affirmative defenses under Rule 12(f) are generally disfavored." *Adidas Am., Inc. v. Thom Browne, Inc.*, 629 F. Supp. 3d 213, 219 (S.D.N.Y. 2022).

When assessing whether to strike an affirmative defense, the Court must consider first whether the affirmative defense satisfies the pleading requirements in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), recognizing that "applying the plausibility standard to any pleading is a 'context-specific' task." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 97–98 (2d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679). Second, the Court must consider whether "there is no question of law which might allow the defense to succeed," because an affirmative defense "should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *Id.* at 98. Third, the

Court must assess the degree to which "the moving party . . . is prejudiced by the inclusion of the defense," keeping in mind that "[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation." *Id.* at 98–99.

**III.    Discussion**

Jane Street primarily challenges the sufficiency of three affirmative defenses—unclean hands, waiver, and estoppel. It also challenges the inclusion, as affirmative defenses, of defenses sounding in denial of liability (*e.g.*, failure to state a claim). The Court considers each defense in turn.

**A.    Unclean Hands**

Defendants base their unclean-hands defense on two factual theories. As pled, both fail as a matter of law.

The first theory alleges that Jane Street's purported losses are attributable to its own "highly unusual trading activity" after the individual defendants' departure, not to a misappropriation of Jane Street's trade secrets. Millennium Aff. Def. at 32; Individual Defendants Aff. Def. at 6–7. This theory does not plead the elements necessary for an unclean-hands defense to succeed under New York law.

To prevail on such a defense, defendants must establish that Jane Street is (1) "guilty of immoral, unconscionable conduct" that (2) "is directly related to the subject matter in litigation" and (3) injured the defendants. *Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 122 (S.D.N.Y. 2020). Critically, the doctrine applies only where the plaintiff's misconduct "has [an] immediate and necessary relation to the equity that [the plaintiff] seeks in respect of the matter in litigation." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933); *see also Henderson v. United States*, 575 U.S. 622, 625 (2015) (quoting *Keystone Driller*).

4

No such link has been pled here. The equitable relief sought by Jane Street—the relief that the unclean hands defense seeks to block—would require (1) Millennium to "return or destroy" Jane Street's intellectual property and (2) the individual defendants "to comply with their contractual obligations" under the IP Agreements. FAC at 48. But that relief, as pled, does not have a discernable relationship to Jane Street's trading activity (wise or foolish) after the individual defendants left Jane Street. Defendants do not plead any impropriety in how Jane Street acquired, developed, or disseminated the Trading Strategy, which is the subject matter of this litigation. *See Specialty Minerals, Inc. v. Pleuss-Staufer AG*, 395 F. Supp. 2d 109, 113 (S.D.N.Y. 2005) (alleged misconduct must be "directly related to [plaintiff's] use or acquisition of the right in suit"). Such a factual theory thus cannot support an unclean-hands defense. *See Project Strategies Corp. v. Nat'l Commc'ns Corp.*, 948 F. Supp. 218, 227 (E.D.N.Y. 1996), *aff'd*, 168 F.3d 1320 (Fed. Cir. 1998) ("What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant." (citation omitted)).[1]

Defendants' second theory, as pled, fails for the same reason. They allege that Jane Street brought this lawsuit to chill competition, interfere with defendants' business relationships, and deter its own employees from seeking employment with competitors. Millennium Aff. Def. at 32; Individual Defendants Aff. Def. at 6–7. But "[t]he fact that a party has brought a lawsuit . . . in bad faith[] cannot be the basis of a defense of unclean hands." *Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 275 F. Supp. 2d 506, 518 (S.D.N.Y. 2003). That is "because any

---

[1] To be sure, to the extent Jane Street seeks monetary relief, defendants' allegations as to the reasons why Jane Street's trading was less profitable after the individual defendants left, if established, may bear on causation and damages. But those allegations do not bear on the availability of equitable remedies, which turns on Jane Street's "use or acquisition of the right in suit." *Specialty Minerals*, 395 F. Supp. 2d at 113.

bad faith or inequitable conduct in filing [a] lawsuit" to protect a plaintiff's rights "is unrelated to [the] acquisition or use of" those rights—here, the acquisition or use of Jane Street's intellectual property. *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 429 (S.D.N.Y. 2010). In assessing the validity of defendants' defense, "the Court must focus on alleged inequitable conduct in the gaining or the use of the right being contested, not alleged inequitable conduct" during litigation. *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, 13 F. Supp. 2d 430, 445 (S.D.N.Y. 1998). Defendants have not pled misconduct of that nature.

*Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240 (1933), upon which defendants rely, in fact highlights the deficiencies in their pleadings. There, the Supreme Court upheld an unclean-hands defense where the plaintiff had engaged in unconscionable conduct directly related to the acquisition and maintenance of the patent rights it sought to enforce—namely, suppressing evidence of prior use that could have invalidated its patent. *See id.* at 243–44; *see also Osgood Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285–87 (Fed. Cir. 2011) (discussing *Keystone*). Here, by contrast, defendants have not alleged any misconduct by Jane Street in obtaining or maintaining its alleged trade secrets or confidentiality agreements. On the contrary, defendants' allegations—that Jane Street's recent losses were self-inflicted and that it initiated this litigation in bad faith—do not say anything about Jane Street's underlying rights (or lack thereof) in the Trading Strategy. *Keystone* underscores that the unclean-hands doctrine focuses on a plaintiff's conduct in acquiring or maintaining the rights at issue—and does not arise from disputed assertions in litigation or post-acquisition business conduct. *See Keystone*, 290 U.S. at 247 ("plaintiff did not come with clean hands" given its plan "from the beginning . . . to [fraudulently] obtain" a patent "for use in subsequent infringement suits"). Both of defendants' theories thus fail as a matter of law.

The Court therefore exercises its discretion to strike defendants' unclean-hands defense. Such will streamline the litigation and prevent the imposition of potential undue burdens on Jane Street. *See GEOMC Co.*, 918 F.3d at 98 (affirmative defense "should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims" and the moving party would be "prejudiced by [its] inclusion"). Allowing this legally insufficient defense to stand could needlessly burden Jane Street in a complex case already on an expedited discovery track. *See, e.g., Capri Sun GmbH*, 414 F. Supp. 3d at 435 (striking affirmative defense where "inclusion of the legally insufficient defense would needlessly increase the time and expense of trial or duration and expense of litigation," and plaintiff "would face the burden of additional discovery"); *Coach*, 756 F. Supp. 2d at 425–26 (striking affirmative defense that "fail[ed] as a matter of law" given that its inclusion would "needlessly increase the duration and expense of litigation"); *see also Legal Recovery Assocs. LLC v. Brenes L. Grp., P.C.*, No. 22 Civ. 1778 (ER) (BCM), 2024 WL 1073119, at *5 (S.D.N.Y. Feb. 13, 2024) ("Where, as here, it is clear that an affirmative defense cannot succeed as a matter of law, the Court may presume prejudice flowing from the time and expense required to litigate it."). The Court thus strikes this defense.

**B.     Waiver and Estoppel**

The factual allegations underpinning defendants' waiver and estoppel affirmative defenses are similar. The Court considers them in tandem.

The two defenses have similar elements. To succeed on a defense of waiver, a defendant must show "the voluntary and intentional abandonment of a known right" by the plaintiff. *Nassau Tr. Co. v. Montrose Concrete Prod. Corp.*, 56 N.Y.2d 175, 184 (1982); *see also Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 111–12 (2d Cir. 2014). To succeed on a defense of estoppel, a defendant must show that the plaintiff "misled [him] into acting upon the belief that . . . enforcement [of a particular right] would not be sought." *Nassau Tr. Co.*, 56

N.Y.2d at 184 (citation omitted). "[E]quitable estoppel is an extraordinary remedy" that "should be invoked sparingly and only under exceptional circumstances." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 507 F. Supp. 3d 490, 507 (S.D.N.Y. 2020) (internal quotation marks omitted).

Defendants' waiver and estoppel defenses are premised on the same core allegations—that Jane Street opted not to execute non-compete agreements with the individual defendants, told the individual defendants they were not bound by non-compete agreements, and has publicly advertised that it does not use non-compete agreements. In defendants' view, Jane Street has thereby waived any right to enforce any non-compete restrictions, and should be estopped from advancing in litigation an interpretation of the IP Agreements that would create a non-compete restriction. Millennium Aff. Def. at 33; Individual Defendants Aff. Def. at 4.

These allegations are legally insufficient to support either a waiver or estoppel defense. First and foremost, Jane Street is not seeking to enforce a non-compete agreement in this action. Rather, it alleges breach of confidentiality provisions in the IP Agreements, and misappropriation of trade secrets. FAC ¶¶ 171–236. Relevant to the waiver defense, defendants have not alleged any facts supporting the proposition that Jane Street intentionally relinquished its rights under the IP Agreements. *Cf. Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (2006) ("[W]aiver . . . must be based on a clear manifestation of intent to relinquish a contractual protection." (cleaned up)). Relevant to the estoppel defense, they have not alleged any misrepresentation by Jane Street regarding these specific obligations. That an employer chooses not to restrict an employee's ability to work for a competitor does not logically imply that the employer intends to allow the employee to take and use the employer's confidential information. Jane Street's stance towards non-compete agreements cannot

reasonably be construed as a decision to abandon all protections for its confidential information
and trade secrets, or as a misrepresentation upon which defendants could reasonably rely
regarding their confidentiality obligations.  Absent factual allegations that Jane Street
"conceal[ed] or misrepresent[ed]" particular facts in its discussions with defendants, defendants'
waiver and estoppel defenses, as pled, must fail.  *Ambac Assurance Corp. v. U.S. Bank Nat'l
Ass'n*, 632 F. Supp. 3d 517, 548 (S.D.N.Y. 2022); *see also, e.g.*, *Coach*, 756 F. Supp. 2d at 426–
28 (striking waiver and estoppel defenses where defendants failed to plead "any facts
supporting" the inference that plaintiffs "intentionally relinquished any rights").

      Second, with respect to estoppel specifically, the individual defendants have not alleged
facts showing how they changed their position to their substantial detriment in reliance on Jane
Street's alleged representations.  That these defendants left Jane Street to work for Millennium
does not constitute detrimental reliance, because Jane Street is not seeking to prevent them from
working for Millennium.  Rather, Jane Street alleges they breached specific confidentiality
obligations and misappropriated trade secrets in the course of their new employment.  Nor do the
individual defendants allege that Jane Street hid the terms of the IP Agreements from them.  *Cf.
Babitt v. Vebeliunas*, 332 F.3d 85, 94 (2d Cir. 2003) ("The part[y] asserting estoppel must show
with respect to [it]sel[f] . . . lack of knowledge and of the means of knowledge of the true facts
. . . .").  Nor do they allege that Jane Street had an affirmative duty to inform them that their
future options trades might be scrutinized.  *Cf. Kosakow v. New Rochelle Radiology Assocs.,
P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) (silence only a basis for estoppel where defendant had "a
legal duty to speak").  Defendants' estoppel defense fails on this additional ground.  *See Coach*,
756 F. Supp. 2d at 426–27 (striking estoppel defense where defendants failed to plead facts

supporting inference that they "relied, to their detriment or otherwise, on any conduct" by plaintiffs).

The Court therefore exercises its discretion to strike these affirmative defenses, because, as pled, they fail as a matter of law. *See GEOMC Co.*, 918 F.3d at 98. As with the unclean-hands defense, inclusion of these defenses may impose unwarranted burdens on Jane Street by opening up otherwise irrelevant subjects for discovery. *See Capri Sun GmbH*, 414 F. Supp. 3d at 435; *Coach*, 756 F. Supp. 2d at 425–26; *Legal Recovery Assocs. LLC*, 2024 WL 1073119, at *5. The Court thus grants Jane Street's motion to strike defendants' waiver and estoppel defenses.

### C.    Denial-of-Liability Defenses

Jane Street finally moves to strike 18 defenses that it contends are denials of liability improperly packaged as affirmative defenses. These include failure to state a claim, failure to identify trade secrets, failure to allege disclosure or misappropriation, unjust enrichment, unenforceability of contracts, no injury or damages, and no vicarious liability or joint and several liability.[2]

The Court agrees that many of these defenses appear to be simple denials of elements of Jane Street's claims rather than proper affirmative defenses. However, striking these defenses is unlikely to streamline the proceedings in any meaningful way. Courts in this District often decline to strike such defenses because they are "analogous to a general denial [of liability] and [their] inclusion, although likely redundant, does not prejudice plaintiffs." *Coach*, 756 F. Supp. 2d at 432 (collecting cases). The parties and the Court will be capable, as litigation progresses, of distinguishing between true affirmative defenses and denials of liability. Indeed, litigating

---

[2] The Court includes in this category two defenses the parties separately litigated—unjust enrichment and unenforceability of contracts—because defendants concede that each merely denies liability. Def. Br. at 15 (unjust enrichment), 16–17 (unenforceability of contracts).

this motion—and potential follow-up motions were defendants' defenses re-pled in amended form—would likely consume more time and resources than simply allowing the defenses to stand. And such defenses, by their nature, do not expand the scope of the litigation or impose additional discovery burdens on the plaintiff.

Accordingly, the Court declines to strike the defenses Jane Street has identified as mere denials of liability.[3]

## CONCLUSION

For the foregoing reasons, the Court grants Jane Street's motion in part and denies it in part. Defendants' unclean hands, waiver, and estoppel defenses are struck.[4] The Clerk of Court is respectfully directed to terminate the motion pending at Docket 119.

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: July 10, 2024
       New York, New York

---

[3] The Court similarly declines to strike the individual defendants' reserved defenses. Such "do nothing more than" reserve their right "to seek leave to amend the answer should facts supporting additional affirmative defenses" come to light. *Kochan v. Kowalski*, 478 F. Supp. 3d 440, 455 (W.D.N.Y. 2020).

[4] The Court's decision to strike these defenses is without prejudice insofar as defendants are free to move to amend their answer under Rule 15 if—and only if—facts come to light in the course of discovery that would support these defenses. That is not an invitation to relitigate this ruling. Defendants have already had an opportunity to amend their affirmative defenses in response to Jane Street's motion to strike, Dkt. 95, and may not take "a third bite at the apple to do what they should have done in the first (and second) place," *Paul Rudolph Found. v. Paul Rudolph Heritage Found.*, No. 20 Civ. 8180 (CM), 2022 WL 4109723, at *12 (S.D.N.Y. Sept. 8, 2022). To succeed on a motion for leave to amend, defendants would have to advance new factual theories to support the stricken defenses.