UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE STREET GROUP, LLC,

                                 Plaintiff,

                    -v-

MILLENNIUM MANAGEMENT LLC, *et al.*,

                                 Defendants.

24 Civ. 2783 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

Plaintiff Jane Street Group, LLC ("Jane Street") moves to dismiss defendants'

counterclaims under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the

Court grants Jane Street's motion.

I.      **Background**

        A.      **Factual Background**

        The Court recounts only the limited background necessary to resolve the pending motion.

        Jane Street is a global proprietary trading firm that specializes in quantitative trading

strategies. In 2023, after years of research, Jane Street developed a proprietary trading strategy

(the "Trading Strategy") for trading options in India. Dkt. 64 ("First Amended Complaint" or

"FAC") ¶¶ 56–57. Jane Street alleges that the Trading Strategy is highly confidential and gives

it a significant competitive advantage in the marketplace. *See id.* ¶¶ 52–60.

        Defendants Douglas Schadewald and Daniel Spottiswood (the "individual defendants")

are former Jane Street employees who were involved in researching, developing, and

implementing Jane Street's proprietary trading strategies, including the strategy at issue. *Id.*

¶¶ 61, 66, 96, 98. Both Schadewald and Spottiswood signed Confidentiality and Intellectual

Property Agreements (the "IP Agreements") with Jane Street. Each contains provisions regarding the protection of Jane Street's confidential information. *Id.* ¶¶ 70–89, 106–12.

In February 2024, Schadewald and Spottiswood left Jane Street to join defendant Millennium Management LLC ("Millennium"), a competitor firm. *Id.* ¶ 124. Shortly thereafter, Jane Street claims, it identified evidence indicating that defendants were using Jane Street's Trading Strategy. *See id.* ¶¶ 140–48. Jane Street alleges its own profits from the Trading Strategy have declined precipitously as a result of defendants' trades. *See id.* ¶ 60.

**B.    Procedural History**

On April 10, 2024, Jane Street commenced this action against defendants, initially seeking both injunctive relief and monetary damages. Dkt. 1. Jane Street asserted claims for (1) violations of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 *et seq.*, (2) misappropriation of trade secrets under New York law, (3) breach of contract against the individual defendants, (4) tortious interference with contract against Millennium, (5) unjust enrichment, and (6) unfair competition.

On April 19, 2024, after a hearing, this Court denied Jane Street's application for a temporary restraining order. Dkt. 67 (transcript). On April 26, 2024, Jane Street filed a First Amended Complaint, withdrawing its request for injunctive relief but maintaining its claims for monetary damages. Dkt. 64.

On May 10, 2024, defendants filed Answers with affirmative defenses and counterclaims. Dkts. 72 (Millennium), 74 ("Individual Defs. Counterclaims"). On May 31, 2024, Jane Street moved to dismiss defendants' counterclaims and to strike several of their affirmative defenses. Dkt. 92. On June 3, 2024, the Court issued an amend-or-oppose order, requiring defendants to either amend their counterclaims or oppose Jane Street's motion by June 21, 2024, warning defendants that "[n]o further opportunities to amend will ordinarily be granted." Dkt. 95.

The individual defendants opted to forgo the opportunity to amend and instead opposed Jane Street's motion. On June 21, 2024, they filed a memorandum of law in opposition to Jane Street's motion. Dkt. 120 ("Individual Defs. Br."). On June 28, 2024, Jane Street filed its reply. Dkt. 134.

Millennium opted to amend its counterclaims. On June 21, 2024, it filed amended counterclaims. Dkt. 122 ("Millennium Amended Counterclaims"). On July 2, 2024, Jane Street filed a renewed motion to dismiss Millennium's counterclaims. Dkt. 139. On July 11, 2024, Millennium opposed Jane Street's motion. Dkt. 144 ("Millennium Br."). On July 15, 2024, Jane Street filed its reply. Dkt. 152.

## II.    Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. These principles equally apply to counterclaims. *See Oneida Indian Nation v. Phillips*, 981 F.3d 157, 165 (2d Cir. 2020).

### III.    Discussion

All defendants assert counterclaims for attorneys' fees.  Millennium asserts an additional counterclaim for unfair competition under New York law.  The Court considers each counterclaim in turn.

### A.    Attorneys' Fees

All defendants counterclaim for attorneys' fees under the Defend Trade Secrets Act ("DTSA").  The individual defendants counterclaim for attorneys' fees under provisions of the IP Agreements.

### 1.    DTSA

Under the DTSA, if a plaintiff's "claim of . . . misappropriation is made in bad faith," the Court may "award reasonable attorney's fees to the prevailing party."  18 U.S.C. § 1836(b)(3)(D).  All defendants seek a declaratory judgment that Jane Street brought its DTSA claim in bad faith such that they are entitled to attorneys' fees.  Individual Defs. Counterclaims ¶¶ 35–39; Millennium Amended Counterclaims ¶¶ 64–74.

This counterclaim fails because there is no stand-alone cause of action for attorneys' fees under the DTSA.  Because the Declaratory Judgment Act does not provide litigants with a cause of action, a party seeking a declaratory judgment must identify "a substantive claim of right" to the relief sought.  *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993).  And the vast majority of courts to have considered the question have held that the DTSA's attorneys' fees provision provides defendants with a potential remedy, not a stand-alone cause of action. *See, e.g.*, *R.J. Heating Co. v. Rust*, 22 Civ. 710 (CEF), 2024 WL 1307114, at *6–7 (N.D. Ohio Mar. 27, 2024) (dismissing counterclaim for attorneys' fees under the DTSA); *Elias Indus. v. Kissler & Co.*, No. 20 Civ. 1011 (CCW), 2022 WL 911759, at *6–7 (W.D. Pa. Mar. 29, 2022) (same); *Allstate Life Ins. Co. v. Mota*, No. 21 Civ. 908 (LJL), 2021 WL 5166819, at *6

(S.D.N.Y. Nov. 5, 2021) (same); *Cap. Inventory, Inc. v. Green*, No. 20 Civ. 3224 (LMM), 2021 WL 9938794, at \*7 (N.D. Ga. June 15, 2021) (same).[1]

  That result makes sense given the DTSA's text and structure. The relevant section of the DTSA, § 1836(b), is divided into three key subsections. The first, § 1836(b)(1), creates a private right of action for trade-secret misappropriation. The second, § 1836(b)(2), provides for special procedures as to the seizure of property to prevent the dissemination of a trade secret. The third, § 1836(b)(3), outlines the various forms of relief available under the DTSA. The next section of the DTSA, § 1836(c), establishes federal jurisdiction over such actions. The provision for attorneys' fees is found in subsection (3), "Remedies," specifically at § 1836(b)(3)(D). This placement is significant. By including the fee-shifting provision in the "Remedies" subsection, Congress evidently intended it to be a potential form of relief, not an independent basis for a claim. This is reinforced by the language of § 1836(b)(3)(D) itself, which states that "a court may, if a claim of . . . misappropriation is made in bad faith . . . award reasonable attorney's fees to the prevailing party." The use of "may," and the reference to a pre-existing "claim of misappropriation," indicate that this is a discretionary remedy available after the resolution of an underlying misappropriation claim, not a freestanding cause of action.[2]

---

[1] The cases that defendants cite in response are not to the contrary. They state that there is no "dispositive jurisprudence on the issue," but go no further. *Ruby Slipper Café, LLC v. Belou*, No. 18 Civ. 1548 (BWA), 2019 WL 1254897, at \*13 (E.D. La. Mar. 19, 2019); *see also* Individual Defs. Br. at 11–12 (arguing that the "proper procedure for seeking fees" is "unclear"); Millennium Br. at 8–10 (arguing that Millennium has asserted "its entitlement to attorneys' fees at the earliest possible stage," given federal courts' "inconsistent approaches to the question of what procedure a party should follow").

[2] The structure of the DTSA mirrors that of other federal statutes as to which fee-shifting provisions have been interpreted as remedies rather than independent causes of action. For example, courts have uniformly held that similar fee-shifting provisions in the Patent Act and the Copyright Act do not create separate causes of action. *See, e.g., Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 643–45 (S.D.N.Y. 2018) (Patent Act); *Arista Recs. LLC v.*

The Court thus grants Jane Street's motion to dismiss defendants' DTSA-related counterclaims. To the extent defendants ultimately prevail in this action, they will be at liberty to move under Federal Rule of Civil Procedure 54(d) for an award of attorneys' fees.

### 2. IP Agreements

The IP Agreements provide that the prevailing party in any action brought under the Agreements shall be entitled to recover attorneys' fees. Dkt. 8, Ex. 1 at 10; *id.*, Ex. 2 at 10. The individual defendants seek a declaratory judgment that they are the prevailing parties under their respective contracts with Jane Street and are thus entitled to attorneys' fees. Individual Defs. Counterclaims ¶¶ 40–51.

This counterclaim must be dismissed as premature. Under Rule 54(d), "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." The individual defendants argue, in effect, that their claim is one "for a contractual 'legal right,'" such that the issue "must be submitted to the jury as an element of damages." Individual Defs. Br. at 10. But that is incorrect. The cases that the individual defendants cite in support of that proposition— most prominently, *Town of Poughkeepsie v. Espie*, 221 F. App'x 61 (2d Cir. 2007)—involved claims for attorneys' fees that went to the litigation's underlying merits, and thus had to be decided at trial. In *Town of Poughkeepsie*, for instance, the defendant did not seek attorneys' fees as a prevailing party—instead, the defendant sought attorneys' fees pursuant to the parties' purchase agreement, which indemnified him for fees related to the sale of a parcel of land. *See Town of Poughkeepsie v. Espie*, 402 F. Supp. 2d 443, 446–50 (S.D.N.Y. 2005) (factual background of case); *see also Town of Poughkeepsie*, 221 F. App'x at 61. As such, courts have

---

*Usenet.com., Inc.*, No. 07 Civ. 8822 (HB), 2008 WL 4974823, at *4–5 (S.D.N.Y. Nov. 24, 2008) (Copyright Act).

often distinguished "between claims for attorney's fees based on 'prevailing party' contractual provisions, which generally may be raised in a postjudgment motion (because only then can the prevailing party be determined), and claims for attorney's fees based on other types of contractual provisions, which generally must be proved at trial." *Lifespan Corp. v. New England Med. Ctr., Inc.*, No. 06 Civ. 421 (JNL), 2011 WL 3841085, at *5 (D.R.I. Aug. 26, 2011) (cleaned up); *see also 405 Sullivan Ave. Indus. LLC v. Kuhns Fam. Properties, LLC*, No. 23 Civ. 240 (SVN), 2023 WL 4491745, at *6 n.3 (D. Conn. July 12, 2023) (referencing this distinction). Because the individual defendants' attorneys' fees claim is "collateral to the merits of the breach of contract claim made by the plaintiff[]"—that is, it is "independent of the remedy for the alleged breach"—the claim is appropriately brought under Rule 54(d)(2), rather than as a counterclaim. *Terra Energy & Res. Techs., Inc. v. Terralinna Pty. Ltd.*, No. 12 Civ. 1337 (KNF), 2014 WL 5690416, at *4 (S.D.N.Y. Nov. 5, 2014).

The Court thus grants Jane Street's motion to dismiss the individual defendants' IP Agreement counterclaims.

### B.    Unfair Competition

Millennium asserts a counterclaim for unfair competition under New York law. It alleges that Jane Street's "sole purpose in bringing this case" was "to hurt Millennium's business and reputation," and that its actions "demonstrate malicious or fraudulent interference with the good will Millennium has worked hard to achieve." Millennium Amended Counterclaims ¶ 76.

This counterclaim fails as a matter of law. "New York does not recognize bad faith litigation as a type of unfair competition." *Allstate Life Ins. Co.*, 2021 WL 5166819, at *5; *see also Radiancy, Inc. v. Viatek Consumer Prod. Grp., Inc.*, 138 F. Supp. 3d 303, 327 (S.D.N.Y. 2014). Courts in this Circuit have thus uniformly recognized that factual allegations similar to those at issue here—supposedly spiteful litigation brought solely to undermine a competitor—do

not plausibly plead an unfair-competition claim. *See, e.g., Allstate Life Ins. Co.*, 2021 WL

5166819, at \*5–6 (dismissing unfair-competition counterclaim predicated on plaintiff's alleged

"bad faith claim" against defendant "for stealing its trade secrets"); *Bayer Schera Pharma AG v.*

*Sandoz, Inc.*, No. 08 Civ. 3710 (PGG), 2010 WL 1222012, at \*6–8 (S.D.N.Y. Mar. 29, 2010)

(dismissing unfair-competition counterclaim predicated on plaintiff's allegedly "bad faith patent

infringement action"); *CA, Inc. v. Simple.com, Inc.*, 621 F. Supp. 2d 45, 53–54 n.4 (E.D.N.Y.

2009) (dismissing unfair-competition counterclaim predicated on plaintiff's allegedly "bad faith

allegations of [patent] infringement"); *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 886 F. Supp.

377, 384 (S.D.N.Y. 1995) (dismissing unfair-competition claim predicated on defendant's

conduct in initiating allegedly "sham litigation"). Because this counterclaim is, by Millennium's

own admission, based on "Jane Street's purpose, timing, and publicity in bringing this case,"

Millennium Br. at 4; *see also* Millennium Counterclaims ¶¶ 75–79, it must be dismissed.

Given the purposes of the unfair-competition tort, that result makes good sense. The tort

is "broad," Millennium Br. at 3, but it is not limitless. "The central principle underlying a claim

for unfair competition under New York law is that one may not misappropriate the results of the

labor, skill, and expenditures of another." *Link Co. v. Fujitsu Ltd.*, 230 F. Supp. 2d 492, 500

(S.D.N.Y. 2002). The unfair-competition tort is thus designed to prevent a party from unfairly

benefiting from another's work or investment, such as by copying a product design or stealing its

customer lists. *Cf., e.g., Red Mountain Med. Holdings, Inc. v. Brill*, 563 F. Supp. 3d 159, 181

(S.D.N.Y. 2021) (discussing *International News Service v. Associated Press*, 248 U.S. 215

(1918) as an "illustrative example" of unfair competition, in which the International News

Service copied a news bulletin compiled by the Associated Press, and then attempted to undercut

the Associated Press by selling the pirated bulletin). In contrast, bringing a lawsuit—even if

ultimately unsuccessful—does not give the plaintiff possession or use of the defendant's business assets or innovations. The lawsuit may burden the defendant—like any lawsuit does—but it does not transfer the fruits of the defendant's labor to the plaintiff in the way that the tort contemplates. *See Allstate Life Ins. Co.*, 2021 WL 5166819, at *5 (bad-faith litigation does not constitute unfair competition as such litigation does not involve "a benefit or 'property' right belonging to another"). Other remedies exist if a party can establish a lawsuit was brought in bad faith; an unfair competition claim is not one of them. *Cf. CA, Inc.*, 621 F. Supp. 2d at 54 ("The exclusion of bad faith litigation from the ambit of unfair competition makes sense considering the availability of recompense for such conduct in an action for malicious prosecution.").[3]

The Court thus grants Jane Street's motion to dismiss Millennium's unfair-competition counterclaim.

## CONCLUSION

For the foregoing reasons, the Court grants Jane Street's motion. Defendants' counterclaims are dismissed with prejudice, except that defendants are not precluded from pursuing attorneys' fees after the disposition of the claims in this matter. The Clerk of Court is respectfully directed to terminate the motions pending at Dockets 92 and 139.

---

[3] Millennium suggests that its claim separately derives from Jane Street's "communications with the press" related to this lawsuit—specifically, the fact that its public-relations firm provided a copy of the redacted complaint to a reporter at Bloomberg. Millennium Br. at 2, 5. But Jane Street's alleged press strategy does not "misappropriate the results of [Millennium's] labor, skill, and expenditures." *Link Co.*, 230 F. Supp. 2d at 500. This factual allegation thus does not provide a basis for Millennium's unfair-competition counterclaim.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: July 18, 2024
        New York, New York