Hon. Paul A. Engelmayer
United States District Court
for the Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

October 2, 2024

Re: *Jane Street Group, LLC v. Millennium Management LLC, Douglas Schadewald, and Daniel Spottiswood*, No. 1:24-cv-02783

Dear Judge Engelmayer:

We write on behalf of Defendants Douglas Schadewald ("Schadewald"), Daniel Spottiswood ("Spottiswood," and together with Schadewald, "Individual Defendants") and Millennium (together with Individual Defendants, "Defendants") to seek relief for deficiencies in Jane Street's discovery disclosures. The parties have met and conferred but were unable to resolve their disagreement. *See* Campbell Decl. ¶ 15; Exs. 4, 5, 10-13.

Jane Street launched this action with claims that competition with Defendants had caused its profits to "plummet[]" and that "absent an injunction, Defendants' activities threaten to destroy the value of the Trading Strategy." D.I. 7 at 21, 22. But weeks earlier, Jeff Nanney, the executive who testified in support of Jane Street's TRO motion admitted privately that there was a "very good chance" his "paranoia" about falling profits was a "false alarm," with many benign explanations. Ex. 1. Mr. Nanney told *the Court* a different story; that Jane Street's Trading Strategy was "very likely" to be "severely impaired" without an injunction, citing supposedly "significant[]" trends in Jane Street's profit and loss ("PNL"). D.I. 9 ¶ 30, 32.

Mr. Nanney's reckless allegations were false the moment they were put to paper. Mr. Nanney's April 17 affidavit included PNL data up to April 12. *Id*. ¶ 19. But in the trading days Jane Street omitted (April 15-16), Jane Street's India options team made ▮▮▮▮▮▮▮▮▮▮▮ — bringing Jane Street's profits for just the first half of April above what it made in the entire month of March. Exs. 2, 3. And the day before ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Jane Street's India options traders had their **best day yet**, making nearly ▮▮▮▮▮▮▮▮▮▮. Ex. 2. April would be Jane Street's best month ever in this market, netting Jane Street ▮▮▮▮▮▮▮▮▮▮. *Id*. It is thus clear why Jane Street withdrew its demand for injunctive relief to moot the speedy preliminary injunction hearing schedule set by the Court. D.I. 65. Jane Street had nothing to gain from a prompt litigation—its highly publicized complaint had smeared Defendants' reputation and warned other employees from leaving, and plainly Defendants were not inhibiting Jane Street's profits. Indeed, Jane Street's profits have not tapered off since. Jane Street's May and June profits were ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ respectively, including a new single-day profits record of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 2. April through June have been more profitable than any other three-month period in Jane Street's history in this market, despite this Court denying the TRO motion and the Individual Defendants continuing to trade.

In light of these recent revelations, Defendants have once again asked Jane Street to rectify its deficient Response to Defendants' damages interrogatory. Ex. 4. Jane Street has refused. Ex. 5. Instead, Jane Street appears intent on stringing along its frivolous case to improperly intimidate

competitors, the Individual Defendants, and its employees. The Court should grant the Motion.

## I. Jane Street Must Supplement Its Response To Interrogatory No. 3.

Jane Street's initial disclosures provided Defendants with no information regarding Jane Street's theory of damages, listing boilerplate categories of damages and deferring any disclosure of amounts or methods of calculation to expert discovery. Ex. 6 at 10-11. Defendants then served an interrogatory seeking this information (Interrogatory 3, Ex. 7 at 7). Plaintiffs in this district are required to provide a computation of damages at the outset of discovery.[1] Damages disclosures "must be sufficiently specific that the opposing party has some basis to calculate the damages claimed against it." *Max Impact, LLC v. Sherwood Grp., Inc.*, 2014 WL 902649, at *5 (S.D.N.Y. Mar. 7, 2014). Jane Street initially gave the same deficient Response as in its Initial Disclosures. Ex. 8 at 10. After months of correspondence, three meet and confers, and two amendments to its response, the Response still vaguely asserts that Jane Street may claim as compensatory damages "its lost profits, lost customers, lost goodwill and reputational damage, and lost business or lost business opportunities" but does not articulate a theory or calculation of damages. Ex. 9 (Second Supplemental Responses and Objections, the "Response") at 14.

### A. Jane Street Must Withdraw Its Lost Profits Claim—Or Disclose A Methodology

Jane Street's Response lists various boilerplate damages categories, but only attempts to describe a rough methodology for one category, lost profits. Jane Street intends to assert that it suffered lost profits based on a comparison of its PNL in the periods before and after Defendants' departure from Jane Street. Ex. 9 at 15. But now that Jane Street has disclosed that its profits have ***increased*** in recent months, this basic methodology shows that Jane Street ***has suffered no damages at all***. Accordingly, Jane Street must make a choice: it must drop its claim for lost profit damages or supplement its interrogatory to disclose the method by which it intends to calculate those damages so that Defendants "ha[ve] some basis to calculate the damages claimed against [them]." *Max Impact*, 2014 WL 902649, at *5-6.

If Jane Street does not withdraw its lost profits theory, its Response must disclose the source and method of calculating its PNL figures and any resultant alleged damages. The Response cites to a single daily PNL figure but fails to disclose how those figures were computed, including which strategies those profits and losses arise from, whether they represent gross revenues or are net of costs, and the computation of any costs. Jane Street has also refused to disclose the source of these PNL figures. Jane Street states that they are "*aggregated* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮…*" (emphasis added). Ex. 9 at 17-18. In other words, Jane Street's stated PNL figures apparently represent an "aggregation" of profits from ***all*** strategies in its Indian options trading, whether or not at issue in this case. It also does not disclose what portion of those profits are attributable to each of the *twenty-three* different purported trade secrets it claims. D.I. 147-8. Some of these purported trade secrets rely on complex algorithms that use reams of computer code and data—which Jane Street has already admitted the Individual Defendants did not take. D.I. 67 at 8:24-9:-6. Jane Street must disclose its damages calculations so Defendants can assess the

---

[1] *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) ("by its very terms, Rule 26(a) … requires a 'computation' [of any category of damages], supported by documents."); Local Civ. R. 33.3(a).

damages arising from each purported trade secret at issue. *See Max Impact*, 2014 WL 902649, at *6 (disclosure "inadequate because it failed to disclose how Sherwood derived the profit margin it used to calculate lost profits, *i.e.*, Sherwood failed to provide a calculation or formula through which the figures were derived.").

Jane Street claims that Defendants are not entitled to this fundamental discovery almost six months into this litigation because damages will be subject to "expert analysis" and it needs to "analy[ze] Millennium's documents and trading data." Ex. 5 at 1. But a party is "not excused from complying with Rule 26(a)(1)(A)(iii) simply because computing the alleged damages may be difficult" or because "it has not fully investigated the case … or because another party has not made its disclosures." *Lawrence v. Goals Aesthetic & Plastic Surgery*, 2024 WL 3742398, at *7 (S.D.N.Y. Aug. 9, 2024); *see also Design Strategy*, 469 F.3d at 295. Jane Street is a sophisticated trading firm, and has represented that it had suffered and would suffer extraordinary damages from Defendants' continued competition in the India options market. Jane Street cannot now plead ignorance as to how it plans to show that very fact. See *Barnes ex rel. United States v. HealthNow N.Y. Inc.*, 2024 WL 3819408, at *2 (W.D.N.Y. Aug. 14, 2024) (plaintiff must disclose "the best information then available to it concerning" its damages claim during document discovery); *Tovar Snow Pros., Inc. v. ACE Am. Ins. Co.*, 2021 WL 4745376, at *4 (N.D. Ill. Oct. 12, 2021) ("[C]ourts have repeatedly held that plaintiffs are able to provide some computation of damages prior to obtaining expert witnesses.").

### B. Jane Street Must Withdraw or Supplement Its Other Categories of Damages

Jane Street's Response is deficient in other ways. It has refused to supplement its Response with any detail on how it might calculate the compensatory damages it claims for "developing its trade secrets," refusing to provide even basic information about how much it cost to develop each trade secret or how those costs are calculated—despite that information being within Jane Street's sole possession. Ex. 9 at 15, 18. Jane Street has also failed to provide any calculation or amount for its other damages theories, which supposedly include "lost customers, lost goodwill and reputational damage, and lost business or lost business opportunities," "unjust enrichment," "reasonable royalty," and "consequential damages." *Id.* at 14-6, 18. Jane Street's disclosure of "reasonable royalty" and "consequential damages" consist of recitations of certain elements of those doctrines and a bare assertion that "losses that Jane Street has incurred as a result of trading halts" may constitute a form of consequential damages. *Id*. at 16. Such vague responses fall far from satisfying Jane Street's obligation to calculate damages and to "disclose to the other parties the best information then available to it concerning [those] claim[s]." *Lawrence*, 2024 WL 3742398, at *7; *see also Tovar Snow Pros.*, 2021 WL 4745376, at *5 (response that consequential damages will be determined by an expert is inadequate because "unless this allegation is purely speculative, [plaintiff] must have some information concerning what extra costs it incurred...").

Jane Street should be compelled immediately to amend its initial disclosures and Response to (a) identify the sources and formulas for calculating PNL figures for each of the 23 claimed trade secrets; (b) withdraw its demand for "lost profits" damages or disclose the estimate and method of calculating any such alleged damages based on the best information now available to it; and (c) withdraw any claim for non-"lost profits" damages or provide a genuine disclosure of the estimate and method of calculating these categories of damages. The Court should not countenance such gamesmanship particularly in light of the belated disclosure of PNL figures.

3

Respectfully submitted,

| | |
|---|---|
| */s/ Brian R. Campbell* | */s/ Andrew J. Levander* |
| Brian R. Campbell | Andrew J. Levander |
| ELSBERG BAKER & MARURI PLLC | DECHERT LLP |
| One Penn Plaza, Suite 4015 | 1095 Avenue of the Americas |
| New York, NY 10119 | New York, NY 10036 |
| bcampbell@elsberglaw.com | andrew.levander@dechert.com |
| | |
| *Counsel for Defendants* | *Counsel for Defendant* |
| *Douglas Schadewald and* | *Millennium Management LLC* |
| *Daniel Spottiswood* | |