*Highly Confidential – Attorneys' Eyes Only*

## quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

October 7, 2024

Hon. Paul A. Engelmayer
United States District Court for the Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

Re:   *Jane Street Group, LLC v. Millennium Mgmt. LLC*, No. 1:24-cv-02783 (S.D.N.Y.)

Dear Judge Engelmayer:

Jane Street submits this opposition to Defendants' Motion [Dkt. 209], which asks the Court to compel Jane Street to supplement its damages disclosures, or alternatively to sanction Jane Street with an order precluding certain categories or amounts of damages. Mot. at 3. In violation of Individual Rule 2(C), Defendants filed this motion without conferring in person or by telephone with Jane Street. After Jane Street responded to Defendants' demands by letter on September 13, 2024 [Dkt. 210-5], Defendants neither responded to Jane Street's letter nor raised this issue again, instead filing their Motion three weeks later with the Court. If Defendants had conferred, they would have learned that an order requiring Jane Street to supplement its damages disclosures is not necessary because Jane Street already intends to supplement its disclosures with information obtained through Defendants' document productions, which should be substantially complete on October 15, 2024. Therefore, Defendants' request for an order is moot and should be denied. If Defendants believe any issues remain after reviewing Jane Street's supplemental disclosure, they can bring those issues to the Court at that time. In addition, given that Jane Street has already supplemented its interrogatory responses twice, and intends to do so again promptly, there is no reason to entertain Defendants' request for sanctions under Rule 37, which should also be denied.[1]

Rather than trying to address an issue where the parties truly are at impasse, Defendants' Motion appears targeted to garnering media attention, with false and irrelevant allegations about Jane Street's damages. Indeed, Defendants devote the entire first page of their 3-page Motion to baselessly accusing Mr. Nanney (Jane Street's executive) of making false statements when none of those statements are contained in the disclosures at issue. In doing so, Defendants grossly mischaracterize Mr. Nanney's email to claim it states that he thought "falling profits was a false alarm" (Mot. at 1), when the full context of the email clearly reveals Mr. Nanney's concern that "it seems very possible that a competitor has become active. [W]e need to think about changes to our strategy in response." [Dkt. 210-1 at 9]. Also, at that time, in considering market activity, Mr. Nanney was not aware that Mr. Schadewald was actively deceiving Jane Street about his trading plans in Asia. *See, e.g.,* Ex. 1 (Mr. Schadewald confessed: "I'm not telling people my main focus is Asia. … I don't want people figuring out what I'm mainly doing."). Mr. Nanney was also unaware that Mr. Schadewald had told his new manager, Michael Asmar, that he "[w]ill compete with his old friends at Jane Street if [he] comes here ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"
Ex. 2 at 3. In addition, although Defense counsel represented at the TRO hearing that Defendants'

---

[1]   Although Defendants' motion should be denied on the papers, should the Court have concerns, Jane Street requests an informal conference given the scope and significance of the relief requested.

P&L was only $4 million as of April 19, 2024—implying that was a reliable indicator of relevant profits—only eleven days later the P&L was ███ times that amount, and by ██████████, it was ███ times that amount. The P&L increasing quickly by an order of magnitude was entirely consistent with Defendants' plan to move as quickly as possible. Mr. Schadewald bragged to others at Millennium about how quickly he was able to get his India desk running, thanks to the benefit of Jane Street's trade secrets: "My boss said I shattered the record for fastest launch in options lol." Ex. 3 at 3; *see also* Ex. 4 at 3 ("I set the [M]illennium record for fastest launch."). With the benefit of Defendants' document productions, and having more information now available to it, Jane Street intends to promptly supplement its damages disclosures.

**1.    Jane Street's Damages-Related Discovery Responses Were Sufficient**

Rule 26(a)(1)(A) requires parties to exchange as part of their initial disclosures, among other material, "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). Courts have recognized, however, that where damages are complex and require expert testimony, "the damages calculations need not be produced with the plaintiff's Rule 26(a)(1) [initial] disclosures and may be produced as part of the party's Rule 26(a)(2) [expert] disclosures." *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, 2006 WL 1520227, at *1 (S.D.N.Y. June 1, 2006); *see also* TRADE SECRET JUDICIAL GUIDE ("GUIDE") at § 6.4.1 (6-3) ("Initial damages disclosures [] typically describe only the types of damages sought [] and defer disclosure of documents, explanation of theories and amounts, and other evidence to a later date."). Consistent with this standard, Jane Street's initial disclosures identified the types of damages sought (*e.g.*, "compensatory damages, exemplary damages, punitive damages, consequential damages" [Dkt. 210-6 at 10]), and stated that Jane Street will provide an "expert damages report in accordance with the Court's" Scheduling Order. [*Id*. at 10-11].

Local Civil Rule 33.3 contemplates that initial interrogatories may seek a "computation of each category of damages alleged." Given the stage of the case, the required disclosure is for damages "only by category," without further particularization. *Reed v. Friedman Mgt. Corp.*, 2015 WL 5008629, at *6 (S.D.N.Y. Aug. 24, 2015); *see also Convolve, Inc. v. Compaq Computer Corporation*, 223 F.R.D. 162, 173-74 (S.D.N.Y. 2004) ("Particularly in advance of an exchange of expert reports, the purpose of damages interrogatories is not to inquire into every specific factual detail that a party will rely on …."). Jane Streets' First and Second Supplemental Responses to Interrogatory No. 3 satisfy this standard. [Dkt. 210-9 at 12-18]. As Jane Street has consistently made Defendants aware, damages in this case are highly complex and will be subject to expert analysis and opinion. *See* Jane Street's Initial Disclosures [Dkt. 210-6 at 10-11] and Responses to Rog. No. 3 [Dkt. 210-9 at 12-17]. Indeed, as explained by Paul Wazzan, Ph.D., an economist and Jane Street's damages expert, a calculation of damages will require "extensive data analysis and a thorough understanding (and a potential step by step tracing) of highly complex option market transactions numbering in the ***millions*** for ***both*** Jane Street ***and*** Millennium." Decl. of P. Wazzan ¶4.[2] Given the need for expert analysis, Jane Street's response provided the best information available to it, including, for example, that it "may measure its actual losses based on lost profits to the extent caused by Defendants" and disclosing Jane Street's estimated "monthly profits from

---

[2] Defendants have hamstrung Jane Street's damages analysis by first producing their "trading data" without the critical information of whether a particular order was a "buy" or a "sell"—and then waiting three weeks to rectify the deficient production. Dkt. 210-13 at 4.

or relating to the Trading Strategy from January 2018 through June 2024." [Dkt. 210-9 at 14, 17][3] Underscoring the need for expert discovery for damages in this case, Jane Street's traders are not privy to Defendants' trading data and P&L information, given the competitively sensitive nature of this type of data, and thus have been unable to perform their own calculation of damages with the benefit of that information.

The demands in Defendants' Motion go far beyond what is required under Rule 33.3 (and beyond what Defendants' requests actually ask for), seeking information that could only be sought in a contention interrogatory, such as the "formula" underlying Jane Street's P&L data, a disaggregation of P&L data by algorithmic and non-algorithmic profits, and a breakdown of damages for each of Jane Street's 23 trade secrets on a secret-by-secret basis. Mot. at 2. These demands are premature and should be denied at this stage of the case. *See New Haven Temple SDA Church v. Consol. Edison Corp.*, 1995 WL 358788, at *5 (S.D.N.Y. June 13, 1995) (finding interrogatory premature where it "is more in the nature of a contention interrogatory with respect to plaintiff's theory of damages").

## 2. There Is No Basis To Order Jane Street To "Withdraw" Its Damages Claims

Under Local Rule 33.3, after a plaintiff provides a computation of damages based on information that is reasonably available, it can then later update, change, or modify that computation based on information learned in fact and expert discovery. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, 2009 WL 1422743, at *2 (S.D.N.Y. 2009) (permitting supplemental response after documents are produced "that enable [plaintiff] to more precisely compute its damages"). Defendants seek to turn the disclosure rules on their head to argue that after an initial computation of damages is provided, a plaintiff must be locked into that methodology and calculation for the duration of the case—regardless of what is learned in fact and expert discovery. It is not surprising that there is no case law to support that proposition. Jane Street is permitted to, and intends to, update its damages disclosures. Defendants' request for a sanction under Rule 37 that would order Jane Street to "withdraw" its lost profits and all other damages claims should be denied. The Second Circuit has identified four factors to be considered in determining whether preclusion is an appropriate sanction for a party's failure to comply with its disclosure obligations, and none of those support preclusion here. *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). As explained, discovery from Defendants and expert analysis are necessary for Jane Street to further supplement its disclosures, and Defendants will not be prejudiced in obtaining disclosure of information that is otherwise already in their possession or through expert discovery. Also, because "preclusion of evidence is a harsh remedy," it "should be imposed only in rare situations." *Ritchie Risk–Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012)(citation omitted). In sum, Defendants cite no authority that would support an order to compel Jane Street to "withdraw" its damages claims. Given Jane Street's intention to supplement its disclosures, the Motion should be denied.

---

[3] Defendants' argument that Jane Street "has suffered no damages at all" (Mot. at 2) is disingenuous. Jane Street has consistently told Defendants that lost profits will be subject to expert analysis—not just a simple comparison of Jane Street's P&L numbers. Also, it is elementary that a plaintiff can suffer lost profits even when profits have increased because, absent Defendants' conduct, profits could have increased even more.

*Highly Confidential – Attorneys' Eyes Only*

Respectfully submitted,

*/s/ Deborah K. Brown*
Deborah K. Brown
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010

*Attorney for Plaintiff Jane Street Group, LLC*

4